## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| TQ DELTA, LLC, | ) | C.A. No. 13-cv-1835-RGA |
|      Plaintiff, | ) | **FILED UNDER SEAL** |
| v. | ) | |
| | ) | |
| 2WIRE, INC., | ) | |
|      Defendant. | ) | |
| _____ | ) | |
| | ) | |
| TQ DELTA, LLC, | ) | C.A. No. 13-cv-1836-RGA |
|      Plaintiff, | ) | **FILED UNDER SEAL** |
| v. | ) | |
| | ) | |
| ZHONE TECHNOLOGIES, INC., | ) | |
|      Defendant. | ) | |
| _____ | ) | |
| | ) | |
| TQ DELTA, LLC, | ) | C.A. No. 13-cv-2013-RGA |
|      Plaintiff, | ) | **FILED UNDER SEAL** |
| v. | ) | |
| | ) | |
| ZYXEL COMMUNICATIONS, INC. | ) | |
| and ZYXEL COMMUNICATIONS | ) | |
| CORPORATION, | ) | |
|      Defendants. | ) | |

**PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR CLARIFICATION
REGARDING ALLEGATIONS OF A LAW FIRM CONFLICT OF INTEREST AND
ANSWERING BRIEF IN RESPONSE TO BROADCOM'S MOTION TO DISQUALIFY**

**<u>CONFIDENTIAL PURSUANT TO THE PROTECTIVE ORDER</u>**

Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 North Market Street, 12th Floor
Wilmington, Delaware  19801
(302) 777-0300
(302) 777-0301 (Fax)
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Peter J. McAndrews (admitted *pro hac vice*)
Timothy J. Malloy (admitted *pro hac vice*)
Thomas J. Wimbiscus (admitted *pro hac vice*)
Sharon A. Hwang (admitted *pro hac vice*)

Paul W. McAndrews (admitted *pro hac vice*)
Anna M. Targowska (admitted *pro hac vice*)
MCANDREWS, HELD & MALLOY, LTD.
500 West Madison Street, 34th Floor
Chicago, Illinois  60661
(312) 775-8000
(312) 775-8100 (Fax)
pmcandrews@mcandrews-ip.com

Attorneys for Plaintiff,
TQ Delta, LLC

## TABLE OF CONTENTS

I.    INTRODUCTION ...........................................................................................................1

II.   COUNTERSTATEMENT OF THE FACTS ...................................................................2

III.  LEGAL STANDARDS...................................................................................................4

IV.  ARGUMENT..................................................................................................................5

     A.     Broadcom's Motion Lacks Foundation ...............................................................5

     B.     Broadcom's Proffered Excuse Is Nonsensical and Lacks Support in Both Law And Fact................................................................................................9

     C.     Broadcom's Proffered Excuse Is Inconsistent With The Record .........................11

           1.     Broadcom's 2013 Letter to Delgiorno - Asserting Conflict Because TQ Delta's Claims "Implicate Broadcom Components"............................................................................................11

           2.     Broadcom Declined TQD's Invitation to Access Its Claim Charts in 2013 ...........................................................................................12

           3.     Broadcom's Authorization of Confidential and "Commercially Sensitive" DSL Chip Information to McAndrews.....................................................................................12

           4.     Broadcom Concedes Knowledge in 2013 of a Potential McAndrews Conflict......................................................................................12

     D.     Broadcom's Case Law is Inapposite—Addressing Voluntary Consent Versus Involuntary or Implied Waiver ...................................................13

     E.     Broadcom Fails To Distinguish the Cited Case Law On Waiver .........................13

     F.     Broadcom Fails To Show a Substantial Related Prior Representation....................................................................................................15

     G.     Balancing Of The Equities Weigh Against Disqualification...............................19

     H.     Broadcom Overreaches In The Remedy Sought.................................................20

V.   CONCLUSION ...........................................................................................................20

# TABLE OF AUTHORITIES

**CASES**

*Asyst Techs., Inc. v. Empak, Inc.,*
   962 F.Supp. 1241 (N.D. Ca. 1997) ...................................................................... 18

*Biax Corp. v. Fujitsu Computer Sys. Corp.,*
   No. 2:06-CV-364, 2007 WL 1466638 (E.D. Tex. May 16, 2007) .............................. 15, 18

*Brown v. Blue Cross & Blue Shield of Florida, Inc.,*
   No. 11-80390-CIV, 2011 U.S. Dist. LEXIS 153156 (S.D. Fla. Aug. 8, 2011) .................. 6

*Carlyle Towers Cond'm Ass. v. Crossland Savings,*
   944 F. Supp. 341 (D.N.J. 1996) ............................................................................ 4

*Conley v. Chaffinch,*
   431 F. Supp. 2d 494 (D. Del. May 17, 2006) ...................................................... 4, 5, 10, 14

*Eastman Kodak Co. v. Kyocera Corp.,*
   No. 10-CV-6334CJS, 2012 U.S. Dist. LEXIS 132436 (W.D.N.Y. Sept. 17,
   2012) ............................................................................................................ 6

*Exco Res., Inc. v. Milbank, Tweed, Hadley & McCloy LLP (In re Enron Corp.),*
   2003 U.S. Dist. LEXIS 1442 (S.D.N.Y. Feb. 3, 2003)......................................... 20

*Fujitsu Ltd. v. Netgear Inc.,*
   620 F.3d 1321 (Fed. Cir. 2010) ...................................................................... 10, 15

*In re Nat' I Century Fin. Enters., Inc.,*
   No. 2:03-md-1565, 2010 U.S. Dist. LEXIS 39524 (S.D. Ohio 2010).................................. 5

*Int'l Longshoremen's Ass'n, Local Union 1332 v. Int'l Longshoremen's
   Ass'n,*
   909 F. Supp. 287 (E.D. Pa. 1995) .................................................................. 5, 13

*Intellectual Ventures I LLC v. Checkpoint Software Techs. Ltd.,*
   C.A. No. 10-1067-LPS, 2011 U.S. Dist. LEXIS 154921 (D. Del. June 30,
   2011) ............................................................................................................ 19

*Javorski v. Nationwide Mutual Insurance Co.,*
   C.A. 3:06-CV-1071, 2006 U.S. Dist. LEXIS 81490 (M.D. Pa. Nov. 6,
   2006) ............................................................................................................ 5, 13

*Liberate Techs., LLC v. Worldgate Comm'ns, Inc.,*
   133 F. Supp. 2d 357 (D. Del. 2001)............................................................... 14

*Moyroud v. Itek Corp.,*
   528 F. Supp. 707 (S.D. Fla. 1981) .................................................................. 18

*Reliant Pharms., Inc. v. Par Pharms., Inc.*,
  C.A. No. 06-774-JJF, 2008 U.S. Dist. LEXIS 33461 (D. Del. Apr. 23,
  2008) .......................................................................................................................... 6

*Sauer Inc. v. Honeywell Bldg. Sols. SES Corp.*,
  No. 3:08-92, 2012 WL 364050 (W.D. Pa. Feb. 2, 2012) ................................................... 14

*SEC v. Tang*,
  831 F.Supp. 2d 1130 (N.D. Cal. 2011) ........................................................................ 5, 14

*Secure Axcess, LLC v. Dell Inc.*,
  No. 6:11-CV-338, 2012 U.S. Dist. LEXIS 61152 (E.D. Tex. Feb. 23,
  2012) .......................................................................................................................... 18

*Selby v. Revlon Consumer Prods. Corp.*,
  6 F. Supp. 2d 577 (N.D. Tex. 1997) (D.I. 144 at 18)......................................................... 13

*Sonos, Inc. v. D & M Holdings Inc.*,
  C.A. No. 14-1330-RGA, 2015 U.S. Dist. LEXIS 119718 (D. Del. 2015) ...................... 4, 9

*Talecris Biotherapeutics, Inc. v. Baxter Int'l Inc.*,
  491 F. Supp. 2d 510 (D. Del. 2007)....................................................................... 6, 17, 19

*Thorner v. Sony Computer Entertainment America, Inc.*,
  C.A. No. 09-1 894-GEB, 2009 WL 4041624 (D.N.J. 2009) ............................................. 4

## I.      INTRODUCTION

Broadcom delayed raising an alleged conflict for two years. During that time, TQ Delta invested thousands of McAndrews' attorney hours developing TQ Delta's case.[1] Broadcom proffers as an excuse a nonsensical distinction between "standards-based" and "product-based" infringement claims that lacks support in law.  Infringement, even if "standards-based," gives rise to adversity because only products can infringe, not standards documents.

Broadcom's new excuse also lacks support in fact, as it is flatly inconsistent with years of Broadcom conduct beginning in 2013 when it learned of McAndrews' representation of TQ Delta.

And in 2014, Broadcom gave permission for certain defendants to produce to McAndrews confidential information concerning Broadcom DSL chips. (Ex. C.) The Court need look no further than this conduct to conclude that Broadcom's excuse is unsupportable.

In addressing the legal standard governing waiver, Broadcom incorrectly relies on cases dealing with "consent" (sometimes referred to as voluntary waiver) instead of involuntary or implied waiver due to inaction. Broadcom fails to distinguish relevant cases cited by TQ Delta.

---

[1] McAndrews has prepared thousands of pages of initial infringement contentions, reviewed tens of thousands of pages of documents, analyzed over 5000 pages of invalidity contentions, taken depositions, conferred with technical and damages consultants, and developed a close working relationship with TQ Delta, experts and others.

[2] All emphasis herein is added unless otherwise indicated.

[3] Exhibits A-J refer to those attached to the Declaration of Paul W. McAndrews, D.I. 134.

Broadcom also fails to show a conflict. The Dreux declaration presents vague and unsupported hearsay, lacks any foundation, and is entitled to no weight. (The Kitchen declaration fares no better.) ███████████████████████████████████████████████

███████████████████████████████████████████████████████████████ Nor do the declarations identify any confidential information relevant for use in this case.

Finally, a weighing of the equities militates against disqualification. Any disruption of the attorney-client relationship at this stage of the proceedings—27 months after Broadcom knew of the adversity—would severely prejudice TQ Delta's ability to prosecute these cases. Broadcom's dilatory tactics and changing positions even further weigh against disqualification.[4]

## II.     COUNTERSTATEMENT OF THE FACTS

For 23 months **Broadcom failed to indicate that McAndrews had a conflict**:

**Nov. 4, 2013 – TQ DELTA'S COMPLAINTS:**  TQ Delta, with McAndrews identified as lead counsel, files complaints for patent infringement against Broadcom's customers.  Broadcom admits knowing about the suits when they were filed. (*See* Ex. L.)



**Nov.  15,  2013** –

(Ex. A.)

---

[4] ███████████████████████████████████████████████████████████

███████████████████████████████████████████████ This untoward tactic would have continued but for the filing of TQ Delta's motion for clarification.

**March 6, 2014** – 

**July 24, 2014** – **BROADCOM GRANTS MCANDREWS ACCESS TO BROADCOM DSL CHIP INFORMATION, BUT RAISES NO CONFLICT:** Broadcom gave permission to produce to McAndrews "commercially sensitive" Broadcom DSL chip documents. (Ex. C ("To be clear, these are Broadcom's requirements…."). ) No conflict is raised by Broadcom.

**August 26, 2015** – **BROADCOM INTERVENES IN A DISCOVERY DISPUTE, BUT RAISES NO CONFLICT:** Broadcom urged this Court to force McAndrews to seek further Broadcom DSL chip documents directly from Broadcom through a subpoena—citing only Rule 45 protections for relevance and burden. (Exs. D, E.) Again, Broadcom mentions no conflict.

**October 19, 2015** – **23 MONTHS AFTER LEARNING OF MCANDREWS' ADVERSE REPRESENTATION, BROADCOM FINALLY OBJECTS TO MCANDREWS' INVOLVEMENT AS SUBPOENA COUNSEL:** Broadcom first raises the issue of a conflict against McAndrews, yet provides no specific bases for its objection other than the parties' long relationship. Broadcom does not object to McAndrews' representation of TQ Delta generally in these matters, but only to McAndrews role as counsel on the subpoenas to Broadcom. (Ex. F.)

**October 22, 2015** – **MCANDREWS REQUESTS SPECIFICS:** McAndrews inquires about Broadcom's bases for asserting an ethical conflict and any reason for the two-year delay. (P.W. McAndrews Dec., Ex.. K.)



## III.    LEGAL STANDARDS

The applicable legal standards are set forth in TQ Delta's opening memorandum.  Of note here, the party seeking disqualification must "show clearly that 'continued representation would be impermissible.'" *Sonos, Inc. v. D & M Holdings Inc.*, C.A. No. 14-1330-RGA, 2015 U.S. Dist. LEXIS 119718, at *4 (D. Del. Sept. 9, 2015). "Disqualification of counsel is a drastic measure which courts should hesitate to impose except when absolutely necessary." *Thorner v. Sony Computer Entm't Am., Inc*., C.A. No. 09-1 894-GEB, 2009 U.S. Dist. LEXIS 108422, at *16 (D.N.J. Nov. 20, 2009) (quote omitted).  Efforts to disqualify counsel are treated cautiously by courts because such motions "have increasingly been used as one weapon in the litigation arsenal." *Carlyle Towers Cond'm Ass. v. Crossland Savings,* 944 F. Supp. 341 (D.N.J. 1996).

"[A] finding [of waiver] is justified . . . when a former client was concededly aware of the former attorney's representation of an adversary but failed to raise an objection promptly when

he had the opportunity." *Javorski v. Nationwide Mut. Ins. Co.*, C.A. 3:06-CV-1071, 2006 U.S. Dist. LEXIS 81490, at *22 (M.D. Pa. Nov. 6, 2006). A "[party who] knowingly refrains from asserting [conflict] is deemed to have waived that right." *SEC v. Tang*, 831 F.Supp. 2d 1130, 1144 (N.D. Cal. 2011); *Conley v. Chaffinch*, 431 F. Supp. 2d 494, 499-500 (D. Del. 2006) (denial of motion to disqualify in view of "almost nine months" delay); *In re Nat' I Century Fin. Enters., Inc.*, No. 2:03-md-1565, 2010 U.S. Dist. LEXIS 39524, at *41 (S.D. Ohio 2010) ("If [the movant] had genuine concerns regarding whether confidences would be shared with plaintiffs' counsel, it would have acted immediately. No reasonable person would have waited [five months]").

Involuntary or implied waiver, at issue in the present case and, for example, *Javorski, Conley, Tang, and Nat'l Century,* must be distinguished from cases of "consent" (or voluntary waiver). *See Int'l Longshoremen's Ass'n, Local Union 1332 v. Int'l Longshoremen's Ass'n*, 909 F. Supp. 287, 292 (E.D. Pa. 1995) (heading "C": "**Blackwell did not Consent;**" "Rule 1.9 excuses conflicts of interest where the 'client **consents** after disclosure…'").

Broad generalizations about the substantial relatedness of subject matter are insufficient. *See, e.g., Biax Corp. v. Fujitsu Computer Sys. Corp.*, No. 2:06-CV-364, 2007 U.S. Dist. LEXIS 35770 (E.D. Tex. May 16, 2007) (representations not substantially related merely because both involved "server architecture"). *See also infra* at 17-18.

## IV.   ARGUMENT

### A.   Broadcom's Motion Lacks Foundation

Broadcom's failure to support its allegations with competent evidence dooms its motion. At the heart of the matter ███████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████ This unsupported hearsay lacks any foundation

whatsoever.

█████████████████████████████████

█████████████████████████████████ Nor is there any testimony as to how these patents "relate"

to the inventions of the asserted patents. █████████████████████████

███████████████████████████████████████

Broadcom bore the burden of coming forward with competent, non-hearsay evidence supported by adequate foundation. Its conclusory declaration statements that lack foundation and otherwise violate the Federal Rules of Evidence should be ignored. *See, e.g., Brown v. Blue Cross & Blue Shield of Florida, Inc.*, No. 11-80390-CIV, 2011 U.S. Dist. LEXIS 153156, at *13-14 (S.D. Fla. Aug. 8, 2011) (motion to disqualify denied: "[A] declaration or affidavit may only be considered to the extent that it is based on personal knowledge. *** [A]ny statements in Bostwick's Declaration that violate the Federal Rules of Evidence or are otherwise improper will be disregarded by this Court."); *Eastman Kodak Co. v. Kyocera Corp.*, No. 10-CV-6334CJS, 2012 U.S. Dist. LEXIS 132436, at *29 (W.D.N.Y. Sept. 17, 2012) (attorney's affidavit, which alleged "in conclusory terms only" that moving party's employees had provided party's "confidential information" to challenged expert without supporting affidavits from the actual employees to whom the expert allegedly provided the information in question, was found to be insufficient to support expert's disqualification).

Further, reliance on vague and unsupported allegations is insufficient to "clearly show that continued representation would be impermissible." *See Talecris Biotherapeutics, Inc. v. Baxter Int'l Inc.*, 491 F. Supp. 2d 510, 515 n.2 (D. Del. 2007). It is improper to draw inferences

from unsupported allegations when assessing the existence of a substantial relationship. *See Reliant Pharms., Inc. v. Par Pharms., Inc.*, C.A. No. 06-774-JJF, 2008 U.S. Dist. LEXIS 33461, at *8 (D. Del. Apr. 23, 2008) (denying disqualification where there was no "concrete evidence"). Broadcom's motion should be denied for this reason alone.

The declarations are deficient for what they do not show.



Broadcom also chose to rely upon a smattering of generalized assertions and irrelevancies. McAndrews has specifically responded to each of them:



---

[5] Declarations: Malloy ¶¶3-5; McAndrews, P. J. ¶¶3-5; Wimbiscus ¶¶3-5; Hwang ¶¶3-4; Scharff ¶¶3-5; McAndrews, P.W. ¶¶3-5; Targowska ¶¶3-5; Tomsa ¶¶3-4.
[6] Declarations: Malloy ¶9; McAndrews P. J. ¶9; Wimbiscus ¶10; Hwang ¶8; Scharff ¶9; McAndrews, P. W. ¶9; Targowska ¶9; Tomsa ¶8.

[REDACTED]

- There is no showing of any communication to McAndrews of any confidential Broadcom information that could be detrimental to Broadcom in the litigation.

[REDACTED]

---

[7] Declarations: Malloy ¶7; McAndrews, P. J. ¶7; Wimbiscus ¶8; Hwang ¶6; Scharff ¶7; McAndrews, P. W. ¶7; Targowska ¶7; Tomsa ¶6.

[8] Declarations: Malloy ¶8; Winslade ¶9; McAndrews, P. J. ¶8; Wimbiscus ¶9; Hwang ¶7; Scharff ¶8; McAndrews, P.W. ¶8; Targowska ¶8; Tomsa ¶7.

[9] [REDACTED]

 That is why the party seeking

disqualification must "show clearly that 'continued representation would be impermissible.'"

*Sonos, supra*, at \*4.

**B.**   **Broadcom's Proffered Excuse Is Nonsensical and Lacks Support in Both Law And Fact**

Broadcom tries to shift the blame for its two-year delay to McAndrews and TQ Delta,

arguing that its assessment of the conflict issue turned upon "crucial" knowledge that the

infringement theories were "not purely standards-based." (D.I. 144 at 2.)   But, Broadcom's

distinction between "standards-based" and "product-based" infringement claims lacks support in

both law and fact—

Most notably, Broadcom's proffered excuse for its delay is nonsensical.  An assessment

of conflict does not depend on whether TQ Delta's accusation of infringement is "standards-

based."  Indeed, Broadcom's attempt to articulate a legal basis for its position, buried on page 17

of its brief, is unintelligible word-play. (D.I. 144 at 17

Infringement, even if "standards-based," has **nothing** to do with "one manufacturer's

component being interchangeable with the next." (*See id.*)   **It is the _products_ that infringe, not**

**the standard.**

Stated otherwise, a standard cannot infringe a patent.  Rather, only the implementation of a standard in a device can infringe a patent.  Thus, Broadcom knew that its DSL product implementation was an infringement issue, and that its DSL chip implementations necessarily placed Broadcom's interests adverse to those of TQ Delta, McAndrews' client.

Broadcom attempts to excuse its two-year delay by referencing *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1327 (Fed. Cir. 2010).  But where a claim is based on the implementation of a standard, the Federal Circuit made it clear that "[a]n accused infringer is free to either prove that the claims do not cover all implementations of the standard or to prove that it does not practice the standard."  *Id.  Fujitsu* therefore dictates that the product infringes, not the standard.

In any case, Broadcom cannot excuse its years of delay based on an asserted belief that it was possible that the details of how its products operate might not become an issue the case:

> Conley asserts that she did not learn of the conflict of interest until her deposition. *** because she believed that her disciplinary record was stale and was "not going to come into the case," there was no actual conflict until the defendants questioned her about it during her deposition. (See Tr. at 12:15-13:5.) The court disagrees. As previously discussed, the facts of this case demonstrate that Conley was aware of Liguria's representation of Chaffinch on March 23, 2005, regardless of whether her disciplinary record would become an issue in the litigation.

*Conley v. Chaffinch*, 431 F. Supp. 2d 494, 499-500 (D. Del. 2006).

Broadcom has long known that this case would involve inquiries to Broadcom as to whether its chips were standards compliant and if not, the details as to how the chips operate. A sophisticated company like Broadcom would have readily understood that its DSL chips were at issue in causing the alleged infringement.



Broadcom refused. (Ex. M.) Focused discovery would undoubtedly have shown that Broadcom was in communication about whether its chips implement the standard, or otherwise infringe. In other words, discovery will reveal that Broadcom knew long-ago that its chip implementations were at issue.

If the Court is willing to consider Broadcom's proffered excuse, TQ Delta submits that the Court should draw an adverse inference that Broadcom knew two years ago that the details of its chip implementations were at issue.

**C.   Broadcom's Proffered Excuse Is Inconsistent With The Record**

1.

2.      **Broadcom Declined TQD's Invitation to Access Its Claim Charts in 2013**

(Ex. A.)

3.      **Broadcom's Authorization of Confidential and "Commercially Sensitive" DSL Chip Information to McAndrews**

Broadcom knew over 1 ½ years ago that McAndrews was seeking confidential "core technical" DSL chip documents.

4.      **Broadcom Concedes Knowledge in 2013 of a Potential McAndrews Conflict**

---

[10]  Compare  Ex.  A

Even under Broadcom's view (which illogically distinguishes "standards-based" from "product-based" infringement claims), Broadcom concedes that it had knowledge of a *potential* conflict in 2013. (D.I. 144 at 17 ("Any **conflict arising** merely **because of a standards-based accusation** [is] concerning …."); Ex. I at 2 ("it initially appeared" that TQ Delta's assertions "might be entirely standards-based" (i.e., might be implementation based)).)

**D.  Broadcom's Case Law is Inapposite—Addressing Voluntary Consent Versus Involuntary or Implied Waiver**

Broadcom argues that there was no waiver because former counsel needed to disclose (work product) details to Broadcom "so that it could appreciate the conflict." (D.I. 144 at 18.) But, the record undeniably shows that Broadcom had knowledge of adversity that it now asserts is a conflict with McAndrews. Broadcom takes out of context cited cases that concern an issue of "consent," which is sometimes referred to as *voluntary* waiver, versus *involuntary* (or implied) waiver due to inaction. (D.I. 144 at 18, citing *Int'l Longshoremen's Ass'n,* 909 F. Supp. 287.) But, a review of *Int'l Longshoremen's Ass'n* readily shows that use of the word "waiver" expressly involved an issue of "consent." *Id.* at 292 (heading "C: "**Blackwell did not Consent;**" "Rule 1.9 excuses conflicts of interest where the 'client **consents** after disclosure…'").[11]

**E.  Broadcom Fails To Distinguish the Cited Case Law On Waiver**

Broadcom fails to distinguish TQ Delta's cited cases.  It argues that *Javorski v. Nationwide Mutual Ins. Co.* turned on a "pattern of not objecting."  (D.I. 144 at 17.). But, the court stated that a finding of waiver "is justified...when a former client was concededly aware of the former attorney's representation of an adversary but failed to raise an objection promptly...."

---

[11] Broadcom tacitly concedes that it has taken these cases out of context by its use of a "cf." cite to *Selby v. Revlon Consumer Prods. Corp.*, 6 F. Supp. 2d 577 (N.D. Tex. 1997) (D.I. 144 at 18). The cited passage itself expressly concerned an issue of "consent"—not waiver.

*Javorski,* 2006 U.S. Dist. LEXIS 81490, at *22 (quotation omitted). The court also based its decision on "Defendant's failure to raise Rule 1.9 in any communication on the subject in this action until it filed [its] motion approximately four months after filing this action." *Id.* Broadcom's 27 month delay in presenting its "cross-motion," and its failure to object in 2013, 2014, and most of 2015—constitute waiver.

Broadcom also fails to distinguish *Conley,* 431 F. Supp. 2d 494. (D.I. 144 at 18.)   As Broadcom recognizes, *Conley* stands for the proposition that the Court must "focus on the date when the 'conflict should have been, and was, apparent to [the movant]." Here, Broadcom was admittedly aware in 2013 of the complaints listing McAndrews as lead counsel for TQ Delta and asserted a conflict against other TQ Delta counsel.

Broadcom also fails to candidly distinguish the remaining cases cited by TQ Delta.   It dismisses the importance of the *Sauer Inc. v. Honeywell Bldg. Sols. SES Corp.*, No. 3:08-92, 2012 WL 364050, at *3 (W.D. Pa. Feb. 2, 2012) because the "party admitted to knowing of conflict months before motion filed." And yet, Broadcom has known about *any* alleged conflict for years—not just months.   (Exs. A and M.)   Broadcom argues that *Liberate Techs., LLC v. Worldgate Comm'ns, Inc.*, 133 F. Supp. 2d 357, 358 (D. Del. 2001) is inapposite because the conflict there arose in the context of the enforcement of a settlement. That distinction makes no difference. Of importance is that the movant had been aware of the conflict, but "waited several months to bring this issue to the court's attention. . . ." Here, Broadcom waited over two years.

Finally, Broadcom fails to distinguish *Tang*, stating that the movant there had no standing to raise the issue of a conflict and waited until the eve of trial to raise it. (D.I. 144 at 18.)   But the court focused on the fact that the movant should have known about the conflict a year before its decision and found that "even if the SEC had standing to object, its objection has been waived."

Broadcom identified the alleged conflict in 2013, but waited almost two years to even raise it.

**F.     Broadcom Fails To Show a Substantial Related Prior Representation**

Broadcom mischaracterizes TQ Delta's position as resting on whether the representations

"involve the same patents." (D.I. 144 at 15.) Not so. TQ Delta pointed out that, after years,

Broadcom had made "no showing that any McAndrews attorney received relevant, confidential

and detrimental information," let alone "any of the DSL technology at issue." (D.I. 133 at 17.)



In addressing similar allegations, the court in *Biax* held:

> Sun fails to meet its burden of establishing a substantial relationship between the
> technology involved in WM & A's patent prosecution work and the technology
> involved WM & A's current representation of Biax. Interrupt architecture is a part
> of server technology unrelated to the performance of code registers or parallel
> instruction processing. In addition, Sun has not shown that general discussions
> regarding the architecture of an IO chip and server architecture imputed to WM &
> A any detailed knowledge of code registers or parallel instruction processing.

*Biax Corp.*, 2007 WL 1466638, at *2.  Likewise, there is no adequate showing in this case.





**Cited Case Law.**   As to case law on this issue, Broadcom argues that *Talecris*

*Biotherapeutics,* 491 F. Supp. 2d, at 515 n.2 is off-point because the Court cautioned against

speculating about "unlikely confidences exchanged during a representation that had lasted only 6

months and ended 14 years earlier." (D.I. 144 at 14, n. 7.) But, more to the point, this Court found no disqualifying conflict despite its opinion that, "[t]here is no doubt that the two litigations overlap to some degree." *Id.* at 515 (citing comments to Rule 1.9: "[the] question is whether the lawyer was so involved … that the subsequent representation can be justly regarded as a changing of sides in the matter…..."). And, Broadcom misplaces reliance upon *Asyst Tech*, which, unlike this case, involved attorneys challenging the validity of the same patents they prosecuted and obtained for the former client. *Asyst Techs., Inc. v. Empak, Inc.,* 962 F.Supp. 1241, 1242 (N.D. Ca. 1997). (D.I. 144 at 14.) Broadcom also fails to distinguish *Biax.* 2007 WL 1466638, at *2-3. The court rejected the same type of argument Broadcom makes here, finding no conflict even though the "prior and current representations involve server technology....":

> Sun also argues that confidential information regarding the operation of Sun servers were provided … as part of its prosecution work. In addition, Sun claims that WM & A gained a detailed perspective into Sun's engineering departments which would help Biax*** Sun fails to meet its burden. Sun merely argues that it disclosed confidential information related to its servers without specifically identifying what confidential information was disclosed and how, specifically, any such information is pertinent to this case.

*Id.* Similarly, here, Broadcom failed to even put forth competent evidence—let alone any showing "specifically identifying what confidential information was disclosed and how, specifically, any such information is pertinent to this case." *Id.* Further, Broadcom chose to ignore *Secure Axcess, LLC v. Dell Inc.*, No. 6:11-CV-338, 2012 U.S. Dist. LEXIS 61152, at *10 (E.D. Tex. Feb. 23, 2012)(representations not substantially related merely because both involved "computers communicating over a network.") and *Moyroud v. Itek Corp.*, 528 F. Supp. 707, 708-709 (S.D. Fla. 1981) (allegations that both cases related to photocopier machines and allegedly same design activities held insufficient).

Nor does *EON* support Broadcom's position. (D.I. 144 at 14-15, citing *EON.*) *EON* is inapposite. Unlike this case, "some of the invalidity defenses" in EON may have been "shared

with Latham attorneys." *EON Corp.*, 2012 U.S. Dist. LEXIS 136388, at *4. In *EON*, "two former Latham lawyers [were identified] as <u>potential witnesses</u>." *Id.* at *4. ████████████ ████████████████████████████████████████████████████████████ ████████████████ ████████████████████ Unlike this case (as discussed below), Latham's representation of EON concerned "technology that was similar or the same as the technology that is described in the patent." *Id.* at *3-4. Unlike the two plus years delay here, Latham was involved in the litigation for less than a year when EON filed its motion. *Id.* at *17. Latham's client was one of 17 defendants in a case involving a single patent. *Id.* at *1. ████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████

Broadcom also misplaces reliance on *Intellectual Ventures I LLC v. Checkpoint Software Techs. Ltd.*, No. 10-1067-LPS, 2011 U.S. Dist. LEXIS 154921 (D. Del. June 30, 2011) ("*IV*"). *IV* is inapposite. Broadcom's snippet from the decision (D.I. 144 at 15) simply ignores the Court's analysis. In that case, the Court found that the subject law firm "was involved <u>intimately in every aspect</u> of [non-practicing entity's] IV's <u>formation</u>, patent <u>licensing practices</u>, <u>negotiation of patent licenses</u>, <u>strategies for potential patent litigation</u>, and <u>ways of mitigating the risk of patent litigation</u> …." *Id.* at *34. In other words, counsel represented IV as to the very essence of its existence, from formation to licensing to enforcement. "IV was formed with the legal advice and efforts of WSGR, and the possibility that IV would one day be involved in patent litigation was among the broad topics on which IV relied on WSGR for legal representation." *Id.* at *10. *IV* is not even remotely on point. ████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████

**G.     Balancing Of The Equities Weigh Against Disqualification**

Even in cases of a conflict, "[d]isqualification is not automatic." *Talecris*, 491 F. Supp.

2d at 513. "[T]he court has 'wide discretion' in framing its sanctions to be just and fair to all parties..." *Id.* (citation omitted). Here, the prejudice to TQ Delta would be profound, dramatically setting back its hard fought patent enforcement efforts. *See n.1, supra.* ███████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████ Broadcom's serial and dilatory tactics weigh against disqualification.

*See* n.5, *supra.* ████████████████████████████████████

████████████████████████████████████████████████████████

### H.    Broadcom Overreaches In The Remedy Sought

Even had there been a conflict, Broadcom presents no basis for a total disqualification of McAndrews from all aspects of the cases. ████████████████████████

████████████████████████████████████████ And Broadcom ignores the "commonly used" option for separate "conflicts counsel" for third party discovery. *E.g., Exco Res., Inc. v. Milbank, Tweed, Hadley & McCloy LLP (In re Enron Corp.),* 2003 U.S. Dist. LEXIS 1442 (S.D.N.Y. Feb. 3, 2003). This is done even as to two "current client[s]." Resolving Client Conflicts by Hiring "Conflicts Counsel," 62 Hastings L.J. 677, at *690 (2011). This would obviously be a more just solution.

## V.    CONCLUSION

For the foregoing reasons, TQ Delta's motion should be granted and Broadcom's cross-motion should be denied.

Dated: March 7, 2016

Respectfully submitted,

FARNAN LLP

/s/ Michael J. Farnan
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 North Market Street, 12th Floor
Wilmington, Delaware  19801
(302) 777-0300
(302) 777-0301 (Fax)
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Peter J. McAndrews (admitted *pro hac vice*)
Timothy J. Malloy (admitted *pro hac vice*)
Thomas J. Wimbiscus (admitted *pro hac vice*)
Sharon A. Hwang (admitted *pro hac vice*)
Paul W. McAndrews(admitted *pro hac vice*)
Anna M. Targowska (admitted *pro hac vice*)
MCANDREWS, HELD & MALLOY, LTD.
500 West Madison Street, 34th Floor
Chicago, Illinois  60661
(312) 775-8000
(312) 775-8100 (Fax)
pmcandrews@mcandrews-ip.com

*Counsel for Plaintiff TQ Delta, LLC*