IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

TQ DELTA, LLC,

                Plaintiff;

            v.

2WIRE, INC.,

                Defendant.

Civil Action No. 13-1835-RGA

---

TQ DELTA, LLC,

                Plaintiff;

            v.

ZHONE TECHNOLOGIES, INC.,

                Defendant.

Civil Action No. 13-1836-RGA

---

TQ DELTA, LLC,

                Plaintiff;

            v.

ZYXEL COMMUNICATIONS, INC. and
ZYXEL COMMUNICATIONS
CORPORATION,

                Defendants.

Civil Action No. 13-2013-RGA

## MEMORANDUM OPINION

Brian E. Farnan, Esq., Michael J. Farnan, Esq., Farnan LLP, Wilmington, DE; Peter J.
McAndrews, Esq., Timothy J. Malloy, Esq., Thomas J. Wimbiscus, Esq. (argued), Sharon A.
Hwang, Esq., Paul W. McAndrews, Esq., Anna M. Targowska, Esq., McAndrews, Held &
Malloy, Ltd., attorneys for Plaintiff TQ Delta, LLC.

Jeffrey L. Moyer, Esq., Christine D. Haynes, Esq., Richards, Layton & Finger, P.A., Wilmington,
DE; Amanda Tessar, Esq. (argued), Elizabeth M. Banzhoff, Esq., Perkins Coie LLP, Denver, CO,
attorneys for Non-Party Broadcom Corporation.

September _26_, 2016



**ANDREWS, U.S. DISTRICT JUDGE**

Before the Court are Plaintiff TQ Delta, LLC's Motion for Clarification Regarding

Allegations of a Law Firm Conflict of Interest (D.I. 132)[1] and non-party Broadcom

Corporation's Cross-Motion to Disqualify TQ Delta's Counsel (D.I. 143). In connection with

these motions,[2] TQ Delta and Broadcom have filed four briefs (D.I. 133, 144, 160, 198) and two

supplemental letters (D.I. 212, 224). The Court heard oral argument on April 6, 2016. (D.I.

221). For the reasons that follow, TQ Delta's motion is **GRANTED IN PART** and **DENIED**

**IN PART**, and Broadcom's motion is **DENIED**.

## I. BACKGROUND

Broadcom, a non-party to the above-captioned cases, is a semiconductor chip company

headquartered in Irvine, California, that makes chips for applications including WiFi, Bluetooth,

broadband/DSL, and others. (D.I. 145 at 4). McAndrews, Held & Malloy, Ltd. ("McAndrews")

represented Broadcom from 2003 to 2011, when Broadcom terminated McAndrews'

representation completely. (D.I. 133 at 7; D.I. 144 at 6). "McAndrews handled a wide range of

matters for Broadcom, including major litigations, patent prosecution matters, strategic portfolio

counseling, patent harvesting, due diligence for portfolio acquisition, competitive analysis, and

behind-the-scenes offensive and defensive litigation case support." (D.I. 145 at 4). McAndrews

was involved in prosecuting thousands of Broadcom's U.S. and foreign patents, including

hundreds of Broadcom's U.S. patents relating to digital subscriber line ("DSL") and MoCA

---

[1] All docket citations are to C.A. No. 13-1835, unless otherwise indicated.

[2] TQ Delta has also moved to strike "Appendix A" to Broadcom's reply brief in support of its motion to
disqualify. (D.I. 200). The appendix contains five pages of unsworn attorney argument about the
technical scope of certain Broadcom patents. (*See* D.I. 198, Appendix A). This additional argument
exceeds the 10 pages allotted to Broadcom for its reply brief. (D.I. 150); *see also* D. Del. L.R.
7.1.3(a)(4). Therefore, TQ Delta's motion to strike (D.I. 200; C.A. No. 13-1836, D.I. 185; C.A. No. 13-
2013, D.I. 200) is granted, and Appendix A is stricken.

technologies.[3] (D.I. 145 at 4). In connection with its representation of Broadcom, McAndrews communicated regularly with Broadcom's attorneys, engineers, and business personnel and had access to confidential technical documents. (D.I. 145 at 6; D.I. 148 at 5).

McAndrews handled patents covering technology which relates to some of the DSL chips at issue in these cases, specifically BCM6348, BCM6358, and BCM6368. (D.I. 145 at 6). In 2006, as counsel for Broadcom, McAndrews prepared and filed a provisional patent application for DSL technology related to Broadcom's BCM6348 and BCM6358 chips, two of the DSL chips accused of infringement in the underlying infringement litigation. (D.I. 214 ¶¶ 8-12; D.I. 215 ¶¶ 13-24). Another firm filed the subsequent patent applications which claimed priority to the provisional patent which McAndrews filed. (D.I. 215 ¶ 23). In 2006, McAndrews also prepared and filed a patent application for packet size modification technology related to Broadcom's BC6348 chip. (*Id.* ¶¶ 25-34). McAndrews prosecuted that application until 2011. (*Id.*). In 2010, McAndrews prepared and filed a provisional patent application for IP gateway technology related to Broadcom's BCM6358 and BCM6368 chips. (*Id.* ¶¶ 37-44). McAndrews later filed a patent application which claimed priority to that provisional application, but another firm prosecuted that patent. (*Id.* ¶¶ 44-45). In 2007, McAndrews filed a provisional patent application for Ethernet technology related to Broadcom's BCM6368 chip. (*Id.* ¶¶ 47-58; D.I. 215-4 at 2-3). McAndrews later filed a patent application which claimed priority to that provisional application. (D.I. 215 ¶¶ 53-55). In connection with these patent applications, McAndrews received Invention Disclosure Forms. These forms included confidential

---

[3] There are two sets of cases filed by Plaintiff. The above-captioned cases, which constitute the first set, relate to DSL technology. The other set of cases relates to MoCA technology. (*See* Civ. Act. No. 15-611; Civ. Act. No. 15-612; Civ. Act. No. 15-613; Civ. Act. No. 15-614; Civ. Act. No. 15-615; Civ. Act. No. 15-616). While some documents lump together McAndrews' work related to DSL and MoCA technologies, Broadcom only seeks to disqualify McAndrews in the DSL cases. (D.I. 143).

information. Not all of the confidential information ultimately ends up in the resulting patent application. (D.I. 215 ¶¶ 6-7, 10). Additionally, in connection with two of the provisional applications, the inventors provided McAndrews with technical memoranda, which included detailed technical descriptions of the inventions. (*Id.* ¶¶ 16, 39).

In May 2013, McAndrews began representing TQ Delta with respect to the subject matter underlying the present patent litigation. In November 2013, TQ Delta filed complaints alleging that Defendant 2Wire, Inc. infringed nineteen DSL patents and that Defendant Zhone Technologies, Inc. infringed twenty-three DSL patents. (D.I. 1; C.A. No. 13-1836, D.I. 1). The operative amended complaints in the cases against 2Wire and Zhone assert infringement of twenty-four patents by 2Wire and thirty-two patents by Zhone. (D.I. 24; C.A. No. 13-1836, D.I. 6). In December 2013, TQ Delta filed a complaint against Defendants ZyXEL Communications, Inc. and ZyXEL Corporation, alleging infringement of thirty-two DSL patents. (C.A. No. 13-2013, D.I. 1). The asserted patents claim inventions related to DSL technology, which "is used to provide broadband access to data networks, such as the Internet, via copper wires of a local telephone network." (D.I. 24 at 2; C.A. No. 13-1836, D.I. 6 at 2; C.A. No. 13-2013, D.I. 1 at 2). TQ Delta accuses hundreds of the defendants' products of infringing the asserted patents. (D.I. 133 at 8).

On July 24, 2014, Broadcom granted Defendant 2Wire permission to produce in discovery certain sensitive documents concerning Broadcom's chips. (D.I. 134, Ex. C). On August 26, 2015, Broadcom intervened in a discovery dispute, and requested that McAndrews seek any further production from Broadcom through a subpoena. (D.I. 134, Ex. E). On October 16, 2015, McAndrews attempted to serve a subpoena on Broadcom. (*See* D.I. 134, Ex. F). On October 19, 2015, Broadcom objected to the McAndrews subpoena, expressing concern "that

McAndrews . . . intend[ed] to take one step further [from] what ha[d] been an indirect adversity, turning it into a direct adversity to Broadcom, rather than using separate, walled counsel to serve any subpoena on Broadcom . . . ." (*Id.*). Following an exchange of correspondence with Broadcom, McAndrews, on January 26, 2016, moved for clarification, requesting an order that it was entitled to represent TQ Delta. (D.I. 132). On February 19, 2016, Broadcom moved to disqualify McAndrews. (D.I. 143).

McAndrews' work as lead plaintiff's counsel in the above-captioned cases has been substantial, including, as of January 2016, more than 5,000 hours of legal service by more than ten attorneys. (D.I. 133 at 8; D.I. 134 ¶13). The parties have exchanged initial disclosures, served infringement and invalidity contentions, and produced tens of thousands of pages of documents. (D.I. 133 at 8-9). TQ Delta has also deposed 2Wire, Zhone, and ZyXEL Rule 30(b)(6) witnesses regarding identifying sources of proof. (D.I. 133 at 9). The parties have not yet served final infringement and invalidity contentions. (D.I. 232).

## II. LEGAL STANDARD

This Court has summarized the relevant legal principles for determining a motion to disqualify:

> The Court has the inherent authority to supervise the professional conduct of attorneys appearing before it, including the power to disqualify an attorney from a representation. *See United States v. Miller*, 624 F.2d 1198, 1201 (3d Cir. 1980). Motions to disqualify are "generally disfavored" and, therefore, require the moving party to show clearly that "continued representation would be impermissible." *Talecris Biotherapeutics, Inc. v. Baxter Int'l Inc.*, 491 F. Supp. 2d 510, 513 (D. Del. 2007) (internal quotation marks and citations omitted); *see also Conley v. Chaffinch*, 431 F. Supp. 2d 494, 496 (D. Del. 2006) (same). Because "[t]he maintenance of public confidence in the propriety of the conduct of those associated with the administration of justice is so important," however, a court may disqualify an attorney "for failing to avoid even the appearance

of impropriety." *Kabi Pharmacia AB v. Alcon Surgical, Inc.*, 803 F. Supp. 957, 960 (D. Del. 1992).

Attorney conduct is governed by the ethical standards of the court before which the attorney appears. *See In re Corn Derivatives Antitrust Litig.*, 748 F.2d 157, 160 (3d Cir. 1984). The District of Delaware has adopted the Model Rules of Professional Conduct ("M.R.P.C."). *See* D. Del. LR 83.6[(d)]. M.R.P.C. Rule 1.9(a) provides:

> A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

To establish that a representation violates Rule 1.9, four elements must be shown: "(1) the lawyer must have had an attorney-client relationship with the former client; (2) the present client's matter must either be the same as the matter the lawyer worked on for the first client, or a 'substantially related' matter; (3) the interests of the second client must be materially adverse to the interests of the former client; and (4) the former client must not have consented to the representation after consultation." *Apeldyn Corp. v. Samsung Elecs. Co., Ltd.*, 660 F. Supp. 2d 557, 561 (D. Del. 2009).

To determine whether a current matter is "substantially related" to a matter involved in a former representation, and, thus, whether disqualification under Rule 1.9 is appropriate, the Court must answer the following three questions: "(1) What is the nature and scope of the prior representation at issue? (2) What is the nature of the present lawsuit against the former client? (3) In the course of the prior representation, might the client have disclosed to his attorney confidences which could be relevant to the present action? In particular, could any such confidences be detrimental to the former client in the current litigation?" *Satellite Fin. Planning Corp. v. First Nat'l Bank of Wilmington*, 652 F. Supp. 1281, 1283 (D. Del. 1987) (internal quotation marks and citations omitted); *see also Talecris*, 491 F. Supp. 2d at 514.

As the Third Circuit has explained, M.R.P.C. 1.9 exists for the purpose of preventing "even the potential that a former client's confidences and secrets may be used against him," to maintain "public confidence in the integrity of the bar," and to fulfill a client's rightful expectation of "the loyalty of his attorney in the matter for which he is retained." *Corn Derivatives*, 748 F.2d at 162. Therefore, in attempting to determine whether a "substantial relationship" exists, "disqualification is proper when the similarity

6

in the two representations is enough to raise a common-sense inference that what the lawyer learned from his former client will prove useful in his representation of another client whose interests are adverse to those of the former client." *Cardona v. General Motors Corp.*, 942 F. Supp. 968, 973 (D.N.J. 1996) (internal quotation marks and citations omitted). While the party seeking disqualification bears the burden of establishing the existence of a substantial relationship, any doubts about whether disqualification is appropriate should be resolved in favor of the moving party, in order to ensure protection of client confidences. *See INA Underwriters v. Nalibotsky*, 594 F. Supp. 1199, 1207 (E.D. Pa. 1984); *see also Buschmeier v. G & G Invs., Inc.*, 2007 WL 4150408, at *7 (E.D. Pa. Nov. 19, 2007).

. . .

Resolving the question of whether to disqualify counsel requires the Court to "carefully sift all the facts and circumstances." *Nemours Found. v. Gilbane, Aetna, Fed. Ins. Co.*, 632 F. Supp. 418, 428 (D. Del. 1986) (internal citations and quotation marks omitted). Indeed, "whether disqualification is appropriate depends on the facts of the case and is never automatic." *Boston Scientific Corp. v. Johnson & Johnson, Inc.*, 647 F. Supp. 2d 369, 374 n.7 (D. Del. 2009). The required inquiry necessarily involves "a painstaking analysis of the facts." *Satellite Fin. Planning*, 652 F. Supp. at 1283 (internal quotation marks omitted); *see also Carlyle Towers Condo. Ass'n v. Crossland Sav., FSB*, 944 F. Supp. 341, 345 (D.N.J. 1996) ("Disqualification questions are intensely fact-specific, and it is essential to approach such problems with a keen sense of practicality as well as a precise picture of the underlying facts."). Furthermore, the Court approaches motions to disqualify counsel with "cautious scrutiny," mindful of a litigant's right to the counsel of its choice. *Laker Airways, Ltd. v. Pan American World Airways*, 103 F.R.D. 22, 27-28 (D.D.C. 1984).

*Intellectual Ventures I LLC v. Checkpoint Software Techs. Ltd*, 2011 WL 2692968, *4-6 (D. Del.

June 22, 2011).

## III. ANALYSIS

### A. Disqualifying Conflict

Broadcom argues that McAndrews faces a disqualifying conflict as a result of its prior

representation of Broadcom and present representation of TQ Delta in this litigation. (D.I. 144 at

5). There is no dispute that: (1) Broadcom and McAndrews had an attorney-client relationship;

7

(2) McAndrews' work in this case on behalf of TQ Delta is materially adverse to Broadcom; and

(3) Broadcom has not consented to McAndrews' representation of TQ Delta. (D.I. 133 at 7, 9-

10, 18; D.I. 144 at 16). McAndrews and Broadcom disagree regarding whether the present

matters in which McAndrews represents TQ Delta are substantially related to the matters in

which McAndrews represented Broadcom. (D.I. 133 at 19; D.I. 144 at 16). As noted above,

determining whether the present litigation is substantially related to the work done by

McAndrews for Broadcom involves three questions:

> (1) What is the nature and scope of the prior representation at issue? (2) What is the
> nature of the present lawsuit against the former client? (3) In the course of the prior
> representation, might the client have disclosed to his attorney confidences which
> could be relevant to the present action? In particular, could any such confidences
> be detrimental to the former client in the current litigation?

*Satellite Fin. Planning Corp. v. First Nat'l Bank of Wilmington*, 652 F. Supp. 1281, 1283 (D.

Del. 1987) (internal quotation marks and citations omitted); *see also EON Corp. IP Holdings

LLC v. Flo TV Inc.*, 2012 WL 4364244, at \*4 (D. Del. Sept. 24, 2012). "Matters are

'substantially related' for purposes of [Rule 1.9] if they involve the same transaction or legal

dispute or if there otherwise is a substantial risk that confidential factual information as would

normally have been obtained in the prior representation would materially advance the client's

position in the subsequent matter." Model Rules of Prof'l Conduct r. 1.9 cmt. [2]. Whether the

prior representation is substantially related to the later representation therefore depends on the

potentially adverse uses to which the former client's confidential information may be put.

"Adverse use of confidential information is not limited to disclosure. It includes knowing what

to ask for in discovery, which witnesses to seek to depose, what questions to ask them, what lines

of attack to abandon and what lines to pursue, what settlements to accept and what offers to

reject, and innumerable other uses." *Webb v. E.I. Du Pont de Nemours & Co, Inc.*, 811 F. Supp.

158, 160 (D. Del. 1992) (quoting *Ullrich v. Hearst Corp.*, 809 F. Supp. 229, 236 (S.D.N.Y. 1992)). If confidential information learned in the prior representation could be used to the former client's detriment in any of the above ways, the matters are "substantially related." Still, "the court should not allow its imagination to run free with a view to hypothesizing conceivable but unlikely situations in which confidential information 'might' have been disclosed which would be relevant to the present suit." *Talecris Biotherapeutics, Inc. v. Baxter Int'l Inc.*, 491 F. Supp. 2d 510, 515 (D. Del. 2007) (quoting *INA Underwriters v. Nalibotsky*, 594 F. Supp. 1199, 1206 (E.D. Pa. 1984)).

McAndrews' prior representation of Broadcom and its current representation of TQ Delta are substantially related. The substantial relationship between the matters is most clearly demonstrated by the fact that some of the Broadcom DSL patents on which McAndrews worked are related to DSL chips that are accused in the present litigation, including BCM6348, BCM6358, and BCM6368. (D.I. 145 at 6; D.I. 205 at 1 & n.2; D.I. 215). Additionally, Broadcom identified approximately 216 patents and applications in the USPTO database that identify McAndrews as Broadcom's prosecution counsel on their faces and that relate to DSL or MoCA technologies. (D.I. 134, Ex. I at 7, 10-63).

More generally, the substantial scope of McAndrews' representation of Broadcom, which resulted in more than $132,000,000 in billings, D.I. 148 ¶6, suggests that Broadcom may have disclosed to McAndrews confidences that could be relevant to TQ Delta's patent infringement claims against Broadcom's customers. *See Intellectual Ventures*, 2011 WL 2692968, at *10 (stating that the later lawsuit was substantially related to the prior representation because "in a broad way," the later lawsuit implicated the same exact subject matter on which counsel had advised the prior client—"namely, patents and intellectual property rights"); *see also Thorner v.*

Case 1:13-cv-01835-RGA   Document 238   Filed 09/26/16   Page 11 of 17 PageID #: 7644

*Sony Computer Entertainment Am., Inc.*, 2009 WL 4041624, at \*8 (D.N.J. Nov. 20, 2009). Four of the seven McAndrews lawyers who have appeared on the docket in the present litigation as counsel of record on behalf of TQ Delta previously worked on Broadcom matters. (D.I. 148 at 4). McAndrews handled a wide range of matters for Broadcom, including work related to technologies relevant to DSL. (D.I. 145 at 4; D.I. 215). McAndrews communicated regularly with Broadcom's attorneys, engineers, and business personnel and had access to confidential technical documents related to DSL. (D.I. 145 at 6; D.I. 148 at 5; D.I. 215). The accused products in this case are, in large part, products that contain Broadcom's DSL chips and the accused functionalities largely or entirely reside in the DSL chips.

For the reasons above, McAndrews' prior representation of Broadcom and its current representation of TQ Delta are substantially related. McAndrews' representation of TQ Delta in this litigation therefore violates Rule 1.9.

**B. Waiver**

McAndrews argues that Broadcom waived any disqualifying conflict. (D.I. 133 at 16; D.I. 160 at 14). "Waiver is a valid basis for the denial of a motion to disqualify . . . when a former client was concededly aware of the former attorney's representation of an adversary but failed to raise an objection promptly when he had the opportunity." *Sauer Inc. v. Honeywell Bldg. Sols. SES Corp.*, 2012 WL 364050, at \*2 (W.D. Pa. Feb. 2, 2012) (emphasis and internal quotation marks omitted).

> In determining whether a party has waived the right to move for disqualification, courts consider the following factors: (1) the length of the delay in bringing the motion to disqualify; (2) when the movant learned of the conflict; (3) whether the movant was represented by counsel during the delay; (4) why the delay occurred; and (5) whether disqualification would result in prejudice to the nonmoving party. Furthermore, courts should consider whether the movant used the motion to disqualify for tactical purposes.

10

*Id.* (citations omitted).

Broadcom concedes that it was aware of TQ Delta's lawsuits and McAndrews' representation, but argues that it did not appreciate TQ Delta's infringement theories until a January 2016 phone call.[4] Before then, Broadcom believed—based on TQ Delta's pleadings— that TQ Delta's infringement theories were entirely standards-based, and that any discovery as to Broadcom's chips would relate solely to the question of whether Broadcom practiced the accused standards. Before October 16, 2015, when McAndrews asked Amanda Tessar of Perkins Coie LLP whether she could accept service of a subpoena to Broadcom, neither TQ Delta, nor McAndrews, ever contacted anyone at Broadcom about this litigation. (D.I. 149 ¶ 2). In fact, McAndrews apparently made every effort to avoid contacting Broadcom. A reoccurring theme in the discovery conferences that preceded these motions was that Broadcom had the relevant technical information for most of the accused products. TQ Delta delayed attempting to get any of this information directly; it wanted Defendants to get this information from Broadcom. (*See, e.g.*, D.I. 103, 105, 108, 115; *see also* D.I. 63 at 11, 24, 46-47, 49; D.I. 87 at 18-19, 32, 36-38, 44-46; D.I. 158 at 23-24, 28-29, 37).

Broadcom finally appreciated the nature of TQ Delta's allegations on January 26, 2016. During a phone call, "McAndrews for the first time explained that the infringement theories for only approximately 50-75% of the asserted 64 claims were purely standards-based," while "the other 25-50% of the claims" were "based on Broadcom-specific implementations of the standard." (D.I. 149 ¶ 5). This was the moment at which the nature of the conflict was apparent to Broadcom. *See Conley v. Chaffinch*, 431 F. Supp. 2d 494, 499 (D. Del. 2006). Following its

---

[4] This phone call occurred after some correspondence between McAndrews and Broadcom, following McAndrews' request to serve a subpoena on Broadcom. (D.I. 149 ¶¶ 3-5).

11

recognition of the conflict, Broadcom did not delay in filing the present motion. Therefore, Broadcom has not waived the conflict.

Even if Broadcom had waived the conflict that arose from McAndrews' representation of TQ Delta, it did not waive any conflict relating to McAndrews seeking Rule 45 discovery from Broadcom. That is, to the extent Broadcom has waived any conflict of interest, it did not waive the conflict that arose when it received a subpoena from its former counsel. That direct conflict differs in character from the preexisting conflict which related to McAndrews' representation of TQ Delta.

### C. Remedy

While the Court has the power to disqualify attorneys, "the court should disqualify an attorney only when it determines, on the facts of the particular case, that disqualification is an appropriate means of enforcing the applicable disciplinary rule." *Miller*, 624 F.2d at 1201; *see also Elonex I.P. Holdings, Ltd. v. Apple Comput., Inc.*, 142 F. Supp. 2d 579, 583 (D. Del. 2001) (stating that "disqualification is a severe sanction" and "is never automatic"); *Freeman v. Chi. Musical Instrument Co.*, 689 F.2d 715, 721 (7th Cir. 1982) ("[D]isqualification . . . is a drastic measure which courts should hesitate to impose except when absolutely necessary.").

The Third Circuit "has often employed a balancing test in determining the appropriateness of the disqualification of an attorney." *In re Corn Derivatives Antitrust Litig.*, 748 F.2d 157, 162 (3d Cir. 1984); *see also Carlyle Towers Condo. Ass'n, Inc. v. Crossland Sav., FSB*, 944 F. Supp. 341, 345 (D.N.J. 1996) ("The ethical rules should not be blindly applied without consideration of relative hardships."). I will thus consider "several different factors to determine whether, on balance, disqualification . . . is merited." *Intellectual Ventures*, 2011 WL 2692968, at *14. This Court summarized some of the factors weighed by courts in the Third

Circuit: attorney loyalty, prejudice to parties, protection of the integrity of the judicial process, geography, timing of disqualification motion, duration of prior representation, delay, stage of proceedings, whether confidential information from the prior representation had passed to the client, cost to obtain new counsel, complexity of the case, size of the firm, nature and degree of prior involvement, and whether there was any ulterior motive for filing the motion to disqualify. *Id.* (citing *Elonex*, 142 F. Supp. 2d at 583; *Carlyle Towers*, 944 F. Supp. at 348; *Nemours Found. v. Gilbane, Aetna, Fed. Ins. Co.*, 632 F. Supp. 418, 428-30 (D. Del. 1986); *End of Road Tr. v. Terex Corp.*, 2002 WL 242464, at *2 (D. Del. Feb. 20, 2002)).

A "district court has a wide discretion in framing its sanctions to be just and fair to all parties involved." *Miller*, 624 F.2d at 1201. Using separate "conflicts counsel" for third-party discovery is an available option. *See, e.g.*, *High Point SARL v. Sprint Nextel Corp.*, 280 F.R.D. 586, 589-90 (D. Kan. 2012); *In re Enron Corp.*, 2003 WL 223455, at *9 (S.D.N.Y. Feb. 3, 2003).

In these cases, the balance of factors weighs against disqualification. I recognize that McAndrews' relationship with Broadcom was long in its duration and wide in its breadth. Although that representation was substantial, generally speaking, it did not touch the subject matter of these cases to any great extent. That is, while Broadcom has shown that McAndrews' prior representation is substantially related to this litigation, there is a relatively low likelihood that "confidential information that might have been gained in the first representation [may be] used to the detriment of the former client in the subsequent action." *Commonwealth Ins. Co. v. Graphix Hot Line, Inc.*, 808 F. Supp. 1200, 1204 (E.D. Pa. 1992) (quoting *Realco Servs., Inc. v. Holt*, 479 F. Supp. 867, 871 (E.D. Pa. 1979)). This case is, in some ways, analogous to *Biax Corp. v. Fujitsu Computer Systems Corp.*, 2007 WL 1466638, at *2-3 (E.D. Tex. May 16, 2007).

13

There, defendant Sun sought to disqualify its former patent prosecution counsel from representing the plaintiff, Biax. Sun contended that its former counsel had worked on server architectures containing the same "code registers" which were alleged to infringe the patents-in-suit, and further, that those server architectures served as the foundation for the accused products. *Id.* at \*2. The court held that Sun had "fail[ed] to meet its burden of establishing a substantial relationship between the technology [prosecuted by Sun's former counse] . . . and the technology involved [in its] current representation of Biax," as "[i]nterrupt architecture is a part of server technology unrelated to the performance of code registers or parallel instruction processing." *Id.* Further, the court held that Sun had failed to "specifically identify[] what confidential information was disclosed [to Sun's former counsel] and how, specifically, any such information [was] pertinent to th[e] case." *Id.* at \*3. Unlike Sun, Broadcom has shown that confidential information acquired by McAndrews may be of some relevance to this action. Broadcom has not, however, shown that McAndrews has acquired confidential information of such pertinence that McAndrews' continued representation of TQ Delta would unfairly harm Broadcom. *See, e.g.*, *Steel v. Gen. Motors Corp.*, 912 F. Supp. 724, 735 (D.N.J. 1995) ("Disqualification is mandated where the issues between the former and present suits are practically the same or where there is a patently clear relationship between them." (internal quotation marks omitted)).

The stage of the proceedings and their complexity also weigh against disqualification. These cases are, to put it mildly, complex. TQ Delta accuses hundreds of products of infringing up to thirty-two patents covering DSL technology.[5] (D.I. 63 at 26-27). If McAndrews were disqualified, TQ Delta would be prejudiced beyond mere inconvenience. Replacing McAndrews

---

[5] As Plaintiff has also retained McAndrews in the MoCA cases, it is invested in McAndrews beyond the present litigation.

14

and getting new counsel up to speed, would come at a substantial cost—in terms of both time and money. *See Elonex*, 142 F. Supp. 2d at 584. Further, while the end of fact discovery is nowhere in sight, McAndrews has invested considerable time and resources in these cases over the last three years. McAndrews' "extensive familiarity with the factual and legal issues in this complex patent case cannot be overstated." *Elonex*, 142 F. Supp. 2d at 584.

Additionally, and not insignificantly, TQ Delta did not sue Broadcom. Broadcom is not a party. Thus, aside from taking third-party discovery, TQ Delta will not interact with Broadcom at all. (D.I. 134, Ex. F). Thus, there is little concern of divided loyalty, nor the appearance of "switching sides." Further, many of the concerns which ordinarily arise with representations adverse to former clients—such as "knowing what to ask for in discovery, which witnesses to seek to depose, what question to ask them, what lines of attack to abandon and what lines to pursue, what settlements to accept and what offers to reject"—are not present here. *Webb*, 811 F. Supp. at 160 (quoting *Ullrich*, 809 F. Supp. at 236).

I am cognizant of the need to balance "the sacrosanct privacy of the attorney-client relationship (and the professional integrity implicated by that relationship) and the prerogative of a party to proceed with counsel of its choice." *Schiessle v. Stephens*, 717 F.2d 417, 420 (7th Cir. 1983). Here, in light of the entire record, TQ Delta may retain McAndrews as its counsel. With respect to any discovery taken from Broadcom, however, that prerogative is outweighed by the nature of the conflict. Under the circumstances of this case, Broadcom should not be compelled to sit across the table from its former counsel. Accordingly, any discovery from Broadcom must be undertaken by conflicts counsel. I do not, however, at this time, address the exact way in which conflicts counsel will function. That issue has not been fully briefed. If the parties cannot

15

agree upon a satisfactory procedure for the operation of conflicts counsel, they should submit a

status report with their respective proposals and supporting argument.

Therefore, I conclude that disqualification is not the appropriate means of enforcing Rule

1.9(a) of the Model Rules of Professional Conduct.

## IV. CONCLUSION

For the reasons stated above, TQ Delta's motion is **GRANTED IN PART** and **DENIED**

**IN PART**, and Broadcom's motion is **DENIED**.  A separate Order consistent with this

Memorandum Opinion will be entered.