**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| TQ DELTA, LLC, )<br>    Plaintiff, )<br>v. )<br>  )<br>2WIRE, INC., )<br>    Defendant. )<br>_____ ) | C.A. No. 13-1835-RGA<br><br>**JURY TRIAL DEMANDED** |
| TQ DELTA, LLC, )<br>    Plaintiff, )<br>v. )<br>  )<br>ZHONE TECHNOLOGIES, INC., )<br>    Defendant. )<br>_____ ) | C.A. No. 13-1836-RGA |
| TQ DELTA, LLC, )<br>    Plaintiff, )<br>v. )<br>  )<br>ZYXEL COMMUNICATIONS, INC. )<br>and ZYXEL COMMUNICATIONS )<br>CORPORATION, )<br>    Defendant. ) | C.A. No. 13-2013-RGA |

**BROADCOM AND MCANDREWS' JOINT REPORT REGARDING**
**TQ DELTA'S USE OF CONFLICTS COUNSEL FOR BROADCOM DISCOVERY**

INTRODUCTION

On September 26, 2016, the Court ordered that conflicts counsel be used for TQ Delta discovery of Broadcom and asked the parties to confer on a procedure for the operation of conflicts counsel. (D.I. 238 at 10-11.)[1] The Court also directed that Broadcom and McAndrews—if they could not agree on this issue—submit a joint report to the Court with their respective proposals and supporting argument. *Id.* at 15. McAndrews and Broadcom have conferred, but were unable to reach agreement. Therefore, pursuant to the Court's order,

---

[1] All citations to the docket are from C.A. No. 13 -1835-RGA

McAndrews and Broadcom submit this joint report with their proposed proposals attached as Exhibits A and B, respectively.

### I.     TQ DELTA's PROPOSAL:

Consistent with the Court's desire to balance the concerns of Broadcom and also avoiding unfair prejudice to TQ Delta, TQ Delta hereby proposes the following framework for its use of conflicts counsel:

1.  Conflicts counsel (other than the McAndrews firm) will:

    a.  serve the subpoena(s) on Broadcom, receive responsive information, and file any necessary motions to compel compliance with subpoena(s);

    b.  take any necessary deposition(s) of Broadcom; and

    c.  deliver Broadcom documents and Broadcom deposition transcripts and exhibits to the McAndrews firm. For clarity, McAndrews will be allowed to receive Broadcom confidential information from conflicts counsel while discovery of Broadcom is ongoing, but McAndrews may not substantively discuss such information with conflicts counsel until after completion of the depositions of Broadcom pursuant to Rule 45.

2.  McAndrews will not draft the subpoena(s) to be served on Broadcom. For clarity, conflicts counsel may use the subpoenas previously prepared by McAndrews and served on other chip suppliers in drafting the Broadcom subpoena, and McAndrews may provide to conflicts counsel disclosures made by the Defendants that identify the Broadcom chips at issue in the case.

3.  McAndrews will not take the deposition(s) of Broadcom. For clarity, however, conflicts counsel may use the transcripts of depositions taken by McAndrews of other chip suppliers in preparing for any depositions of Broadcom. McAndrews attorneys may not be present at the deposition(s) of Broadcom.

4.  McAndrews will be permitted to discuss non-Broadcom information with conflicts counsel and to provide a general tutorial regarding the patents in suit and infringement contention charts.

5. Conflicts counsel may interact (subject to protective order restrictions) with the experts/consultants working on behalf of TQ Delta in taking discovery of Broadcom; provided, however, that McAndrews has not, and will not until after the Rule 45 subpoenas have been drafted and served on Broadcom, discuss with any experts/consultants who interact with conflicts counsel any Broadcom confidential information regarding Broadcom DSL chips (including Broadcom confidential technical information previously produced to TQ Delta).

6. Upon completion of the depositions of Broadcom pursuant to Rule 45, the McAndrews firm will be permitted to discuss the Broadcom documents and Broadcom deposition transcripts and exhibits with conflicts counsel.

7. McAndrews may use the Broadcom documents and Broadcom deposition transcripts and exhibits it receives from conflicts counsel to prepare and present TQ Delta's case against the Defendants.

8. McAndrews attests to the fact that no attorneys of record on any of the TQ Delta DSL or MoCA litigations (or any attorneys who have or will perform work on the cases) have done any work for Broadcom relating to any of the technologies in either case, even if those technologies are broadly defined as "DSL" and/or "MoCA." Further, McAndrews has implemented an ethical wall so that anyone who performed any work on DSL and/or MoCA for Broadcom may not discuss with any McAndrews attorneys working on the DSL and/or MoCA cases any such matters.

9. McAndrews attests that it has not discussed and will not discuss with conflicts counsel anything relating to Broadcom's document retention policy or document storage system.

10. McAndrews attests that it has not discussed and will not discuss any Broadcom confidential matters with TQ Delta's expert consultants and/or conflicts counsel prior to any deposition of Broadcom should such a deposition be deemed necessary by conflicts counsel.

**Background.** Unlike other cases in which use of conflicts counsel is imposed, the McAndrews firm ("McAndrews") does not have any confidential or privileged information obtained during its prior representation of Broadcom that is relevant to the present dispute or that

would give conflicts counsel a head start on the discovery they will seek from Broadcom. As the Court stated in its order granting in part and denying in part TQ Delta's Motion for Clarification and denying Broadcom's Motion to Disqualify, "there is a relatively low likelihood that 'confidential information that might have been gained in the first representation [may be] used to the detriment of the former client in the subsequent action'" and "Broadcom has not, however, shown that McAndrews has acquired confidential information of such pertinence that McAndrews' continued representation of TQ Delta would unfairly harm Broadcom." (D.I. 238 at 13-14 (citation omitted).[2]) This is particularly so for the McAndrews attorneys working on these cases for TQ Delta, none of whom ever worked on the Broadcom prosecution matters that formed the basis for the Court's opinion.

Given the foregoing, placing restrictions on McAndrews' interactions with conflicts counsel is not necessary. Nevertheless, in the interest of eliminating even an alleged appearance of impropriety, TQ Delta's proposal provides a reasonable framework for working with conflicts counsel. In accordance with TQ Delta's proposed framework, McAndrews (TQ Delta's lead counsel for over three years on these matters) would be precluded from deposing Broadcom witnesses and from discussing Broadcom information with conflicts counsel or expert consultants prior to any such deposition.

McAndrews will maintain an already existing internal ethical wall precluding any McAndrews attorneys who previously worked on any alleged DSL or MoCA matters on Broadcom's behalf from communicating with any McAndrews attorneys working for TQ Delta regarding the litigations or subject matter thereof. (Even if such a wall cannot "preclude" a finding of a conflict in the first instance, it is appropriately considered in fashioning a remedy to protect the interests of TQ Delta and Broadcom.) As discussed during the April 6, 2016 hearing, TQ Delta proposes that McAndrews would receive a "package" of discovery information from TQ Delta's conflicts counsel so that McAndrews could prepare TQ Delta's case without directly

---

[2] McAndrews maintains that, notwithstanding requests to do so, Broadcom failed to provide any evidence that the technology of the subject Broadcom patent applications was ever in fact shown to have been incorporated into any of the accused products.

4

confronting Broadcom. TQ Delta's proposed framework further limits McAndrews' interactions internally, with conflicts counsel, and with expert consultants, so that Broadcom could not possibly be disadvantaged due to McAndrews' prior representation of Broadcom. TQ Delta's framework adequately addresses any legitimate concerns Broadcom may have.

**Problems with Broadcom's Proposal.** Broadcom's proposal would severely handicap TQ Delta—and for no good reason. As the Court has heard from the defendants, Broadcom chips are used in a majority of the accused products in the case. Broadcom's proposal would effectively limit the McAndrews firm and TQ Delta's current experts to preparing and trying only those limited portions of the case directed to the minority of accused products that do not use Broadcom chips. By way of example, under Broadcom's proposal, McAndrews would not even receive discovery taken from Broadcom until after the close of discovery, thereby precluding McAndrews from using its years of knowledge and study to supplement and finalize TQ Delta's infringement contentions, which include hundreds of claim charts originally prepared by McAndrews. This would be highly inefficient and prejudicial to TQ Delta. It would also create confusion and gross inefficiencies if the trials have to be bifurcated into Broadcom and non-Broadcom portions. Broadcom's proposal thus effectively seeks full disqualification of TQ Delta's sole lead counsel to date—a remedy this Court has already determined to be inappropriate.

Moreover, Broadcom states that "[c]onflicts counsel should independently handle all Broadcom discovery, *including discovery regarding Broadcom chips that is taken from Broadcom's customers (i.e., the defendants)*, who are collectively in possession of substantial volumes of information regarding Broadcom's chips." This includes discovery that TQ Delta has already taken and has nothing to do with a direct adversity to Broadcom. And this even seeks to bar use of information that Broadcom years ago authorized its customer-defendants to provide directly to the McAndrews firm. *See Plaintiff's Opening Brief in Support of its Motion for Clarification*, D.I. 132, at p. 5 ("On July 24, 2014, counsel for 2Wire conveyed Broadcom's permission for McAndrews to view core technical documents containing Broadcom confidential

information. (McAndrews Decl., Ex. C).") Again, this goes far beyond the remedy fashioned by the Court, which was to require TQ Delta to use conflicts counsel to take the discovery that required a direct interface with Broadcom.

Broadcom's proposal effectively requires TQ Delta's conflicts counsel to start the proceedings from scratch with respect to products containing Broadcom chips. Conflicts counsel would be screened from the years of hard work already performed on TQ Delta's behalf, and would be prohibited from even speaking with McAndrews until after the close of fact discovery. The two cases cited by Broadcom for the proposition that conflicted counsel should be completely screened from any discovery of the conflicted client were cases in which there was a "current client" relationship. *See e.g., High Point Sarl v. Sprint Nextel Corp.*, 2011 U.S. Dist. LEXIS 4244, at *5 (D. Kan. Jan. 18, 2011) ("although Motorola is a current client of Dechert. . . ."); *Wal-Mart Stores, Inc. v. Vidalakis, 2007 U.S. Dist. LEXIS 99356, at * 10* (W.D. Ark. Dec. 17, 2007) ("While we do believe that Wal-Mart is a current client of the Calfee firm . . . .").

Broadcom's proposal also would preclude TQ Delta's sole trial counsel to date from providing a general (non-Broadcom specific) case tutorial and background information to conflicts counsel. But there is no reasonable basis for this requirement. As the Court stated, "there is a relatively low likelihood that 'confidential information that might have been gained in the first representation [may be] used to the detriment of the former client in the subsequent action'" and "Broadcom has not, however, shown that McAndrews has acquired confidential information of such pertinence that McAndrews' continued representation of TQ Delta would unfairly harm Broadcom." (D.I. 238 at 13-14 (citation omitted).) Broadcom's request to require that any tutorial be presented only by local counsel makes plain that Broadcom's proposal is designed to inflict the maximum (and unnecessary) prejudice on TQ Delta. TQ Delta's local counsel, in its role as such, understandably does not have sufficient knowledge or understanding of the complex technologies and infringement theories to provide a meaningful tutorial.

Without a meaningful tutorial, it would not be sufficient, as Broadcom argues, to simply provide conflicts counsel with access to the preliminary infringement contentions to date.

Indeed, because defendants allegedly do not know how the accused products operate, the infringement contentions to date primarily rest on standards-based reads and independent testing performed by TQ Delta's experts. And McAndrews has studied the technology, claim construction, and infringement issues for years. Dropping conflicts counsel into this case without a meaningful tutorial from lead counsel would set TQ Delta's case preparation back several years.

Broadcom similarly overreaches in seeking to require TQ Delta to search for and retain an entirely new set of experts in these highly technical and specialized subject matters. Again, this request (which was never raised before even though the Court ordered briefing on the issue six months ago) is grossly overreaching. TQ Delta's retained experts are two-steps removed from the attorneys who prosecuted the applications that formed the basis for Broadcom's complaints. Even as to those attorneys, the Court found that "Broadcom has not, however, shown that McAndrews has acquired confidential information of such pertinence that McAndrews' continued representation of TQ Delta would unfairly harm Broadcom." (D.I. 238 at 13-14 (citation omitted).) Beyond that, there was no showing that any possibly relevant information could have gone to TQ Delta's litigation counsel. Indeed, McAndrews implemented an ethical wall between the subject prosecution counsel and the TQ Delta litigation counsel to preclude even such a possibility. Broadcom's argument against the significance of McAndrews' ethical wall suggests that the Court found overlap between the TQ Delta litigation team and attorneys involved in prosecution of Broadcom's purportedly-related patents. This suggestion is incorrect, and there was no such finding.

As for cross-examination of any live Broadcom witness at trial, it is unlikely that would be the case. In any event, Broadcom makes no such commitment nor is there any clarity as to the subject of what any such testimony would be—and how it could possibly relate to the subject matter of the asserted prior McAndrews work. The parties can address any such situation should it, and when, it arises.

Nor is there a justifiable reason to place any limitations on TQ Delta's local counsel. Broadcom is in no way prejudiced by TQ Delta's local counsel continuing in their current role. Indeed, local counsel was not even the subject of Broadcom's underlying motion. And, any concerns can be adequately addressed through the limitations on McAndrews described in TQ Delta's proposed framework.

In sum, Broadcom's proposal is overreaching. It seeks to impose extreme and unnecessary burdens on TQ Delta for the apparent purpose of procuring a litigation advantage in favor of its indirect customer defendants. This is precisely the type of undue prejudice that the Court's remedy was intended to prevent. *See* D.I. 238 at 14-15 ("If McAndrews were disqualified, TQ Delta would be prejudiced beyond mere inconvenience. Replacing McAndrews and getting new counsel up to speed, would come at a substantial cost-in terms of both time and money."). The Court has discretion to fashion an appropriate remedy. In accordance with its exercise of discretion, the Court can consider the fact that McAndrews has studied the technology, claim construction, and infringement issues in these cases for years; implemented an ethical wall between the subject prosecution counsel and the TQ Delta litigation counsel; and all the while "Broadcom has not … shown that McAndrews has acquired confidential information of such pertinence that McAndrews' continued representation of TQ Delta would unfairly harm Broadcom." (D.I. 238 at 13-14 (citation omitted).) TQ Delta's proposal is reasonable and protects the interests of all involved.

## II. BROADCOM'S PROPOSAL:

Before turning to the reasons that support Broadcom's proposal below, and the problems with McAndrews' proposal above, Broadcom first lays out how conflicts counsel would function under its proposal.

### A. Broadcom's Proposal For The Operation Of Conflicts Counsel

Broadcom proposes that, first, McAndrews have no contact with conflicts counsel to ensure that none of the confidential information McAndrews possesses passes from McAndrews

8

to conflicts counsel. *See* D.I. 238 at 8-10 (discussing Broadcom confidential information learned by McAndrews that could potentially be used against Broadcom, stating that "the substantial scope of McAndrews' representation of Broadcom, which resulted in more than $132,000,000 in billings ... suggests that Broadcom may have disclosed to McAndrews confidences that could be relevant to TQ Delta's patent infringement claims against Broadcom's customers"). Conflicts counsel should independently handle all Broadcom discovery, including discovery regarding Broadcom chips that is taken from Broadcom's customers (*i.e.*, the defendants), who are collectively in possession of substantial volumes of information regarding Broadcom's chips. This is the natural consequence of the Court's order disqualifying McAndrews from taking Broadcom discovery.

Second, under Broadcom's proposal, TQ Delta's local counsel would be permitted to have contact with conflicts counsel in the following manner:

- TQ Delta's local counsel may deliver to conflicts counsel a package of case materials that contains only the following:
    a) the operative complaint;
    b) the patents-in-suit;
    c) file wrappers for the patents-in-suit;
    d) TQ Delta's original infringement contentions that were based on publicly-available materials about Broadcom chips;
    e) copies of any subpoenas served on other third-party chip suppliers;
    f) any charts or briefs or other materials submitted to the Court relating to claim construction, and
    g) excerpts of the Defendants' discovery responses that identify the Broadcom chips in the accused customer products.

- TQ Delta's local counsel may provide a technology tutorial to conflicts counsel.

- When conflicts counsel has completed taking discovery from Broadcom, TQ Delta's local counsel may receive from conflicts counsel the documents and deposition testimony regarding Broadcom chips obtained from Broadcom and its customers.

- TQ Delta's local counsel would then deliver the package of materials obtained from Broadcom and its customers to McAndrews.

9

Aside from this contact, conflicts counsel should have no contact with McAndrews or TQ Delta's local counsel. Consistent with the Court's order, McAndrews may use the discovery materials from Broadcom it receives from its local counsel to otherwise prosecute the case against the Defendants (including expert discovery and any dispositive motions practice).

Third, to the extent that conflicts counsel wishes to rely upon the expertise of a technical consultant in connection with the taking of Broadcom discovery (such as to review source code or assist in deposition preparation), conflicts counsel must retain separate experts that have not had contact with McAndrews in regards to this litigation. McAndrews may not interact or contact these experts at any time.

Finally, if Broadcom should appear as a witness at trial, or if questions regarding Broadcom or its chips are asked of any witness at trial (including experts or defense witnesses), conflicts counsel should examine the relevant witnesses and make the relevant arguments.

### B. Broadcom's Proposal Is Necessary To Protect Broadcom, While Still Allowing TQ Delta Sufficient Discovery

The Court has held that McAndrews has violated Rule 1.9 (D.I. 238 at 10) and ordered that McAndrews may not be involved in "any discovery taken from Broadcom." *Id.* at 15. Specifically, the Court held that, in regards to any discovery sought from Broadcom in this matter, the prerogative of TQ Delta to proceed with counsel of its choice is "outweighed by the nature of the conflict." *Id.* at 15. Although the Court ultimately concluded that full disqualification of McAndrews was not merited based largely on its conclusion that Broadcom is not harmed by McAndrews' continued representation of TQ Delta, there can be no question that Broadcom would be harmed by allowing McAndrews to use its extensive knowledge about Broadcom's chips, technologies, systems, documents, and customer relationships in the context of Broadcom discovery.[3] Moreover, McAndrews' unproven and contested protestations above

---

[3] Notably, however, Rule 1.9 "imposes an ethical obligation irrespective of harm." *Securities Inv'r Protec. Corp. v. R.D. Kushnir & Co.*, 246 B.R. 582, 589 (Bankr. N.D. Ill. 2000); *Koch v. Koch Indus.*, 798 F. Supp. 1525, 1535 (D. Kan. 1992) ("Rule 1.9(a), by its terms, is not limited to situations where the former client would be harmed by the possible divulgence of

that it has no Broadcom confidential or privileged information and that there is no attorney overlap at McAndrews should be disregarded. Evidence of such attorney overlap was submitted by Broadcom (*see* D.I. 148 at ¶¶2-3, 5; 148-1) and resulted in the Court already making exactly such a factual finding of overlap (D.I. 238 at 10). Moreover, the suggestion that—after $132 million worth of work—McAndrews has no information about Broadcom simply cannot be credited on its face.

Broadcom's proposal—which does no more than separate McAndrews and its tainted knowledge from conflicts counsel completely—is designed to ensure that Broadcom is not in any way forced to "sit across the table from its counsel" and that the "sacrosanct privacy of the attorney-client relationship" it had with McAndrews is not (consciously or subconsciously, directly or indirectly, purposefully or inadvertently) used against it by McAndrews. *Id.* at 15.

Broadcom's proposal is reasonable and consistent with the standards for conflicts counsel. It is typical that the conflicted law firm will not be able to "take or direct" any discovery from its former client and remain separate from the process until it receives the testimony and documents collected in that discovery. *High Point Sarl v. Spring Nextel Corp.*, CIV.A. 09-2269-CM, 2011 WL 147527, at *3 (D. Kan. Jan. 18, 2011) (Dechert was prohibited from being involved in discovery, but could review the documents after discovery took place); *Wal-Mart Stores, Inc. v. Vidalakis*, 07-0039, 2007 WL 4468688, at *4 (W.D. Ark. Dec. 17,

---

confidential information. It imposes an ethical obligation irrespective of harm."); *Prisco v. Westgate Ent., Inc.*, 799 F. Supp. 266, 271–72 (D. Conn. 1992) ("In sum, Rule 1.9 is not limited to situations where a former client would be harmed by the divulgence of confidential information. The rule 'imposes an ethical obligation irrespective of harm.'"). Additionally, Delaware courts have not traditionally looked to the question of harm even in those cases when they balanced equities of disqualification, instead focusing on issues of waiver, prejudice to the party whose counsel would be disqualified, and delay. *See, e.g.*, *EON Corp. IP Holdings LLC v. Flo TV Inc.*, Cov. No. 10-812-RGA, 2012 WL 4364244 at *5 (Sept. 24, 2012); *Intellectual Ventures I LLC v. Checkpoint Software Techs., Ltd.*, Cov. No. 10-1067-LPS, 2011 WL 2692968 at *14-15 (D. Del. Jun. 22, 2011); *Madukwe v. Delaware State Univ.*, 552 F. Supp. 2d 452, *463-465 (D. Del. 2008). Even the New Jersey case this Court cited regarding harm does not say that harm must be proven, much less that it had not been shown in that case, where counsel was actually disqualified without consideration of the harm question. *See Steel v. Gen. Motors Corp.*, 912 F. Supp. 724, 735 (D.N.J. 1995).

2007) ("[W]e believe that the use of outside, independent counsel to handle the depositions, discovery exchange, and all trial issues involving Wal-Mart is the most reasonable solution."). And, of course, it would be improper for McAndrews to be involved with taking any deposition or trial testimony involving its former client. *See Vidalakis*, 2007 WL 4468688, at *4 (independent counsel must handle "all trial issues" involving former client); *Sykes v. Matter*, 316 F. Supp. 2d 630, 636 (M.D. Tenn. 2004) (conflicts counsel must be "retained to conduct the deposition of [employee of former client] and his examination at trial, if necessary"). This would not require "bifurcation" at trial as TQ Delta contends; Broadcom has made no such suggestion.

Broadcom's proposal is thus supported by case law and eminently appropriate in light of the Court's order that McAndrews is disqualified from being adverse to Broadcom for discovery. It will allow for TQ Delta to get the discovery it needs while providing the minimum protections necessary to ensure that Broadcom is protected from the risk of its former counsel acting adversely to it. TQ Delta's local counsel will be permitted to interact with conflicts counsel, as described above, which will allow for conflicts counsel to get up to speed on the case without further risk to Broadcom.

### C. TQ Delta's Proposal Is Inadequate And Not Supported By The Law

TQ Delta's proposal is insufficient to protect Broadcom and would allow the free flow of information between McAndrews and conflicts counsel, which would defeat the entire purpose of this exercise. As discussed above, McAndrews' claim that it did not obtain any confidential or privileged Broadcom information during its nearly decade-long representation of Broadcom that would help conflicts counsel in seeking discovery from Broadcom cannot be countenanced. There has been no such finding by the Court, and McAndrews has not submitted and cannot submit any unequivocal evidence to prove this. McAndrews appears to base this statement on the Court's comment that there is "a relatively low likelihood that 'confidential information that might have been gained in the first representation [may be] used to the detriment of the former client in the subsequent action.'" D.I. 238 at 13. The Court made this statement, however, both

in the context of concluding that McAndrews "continued representation of TQ Delta" was permissible and without focus on the fact that Broadcom's customers (*i.e.*, the defendants) have significant Broadcom information in their possession regarding the operation of Broadcom chips. *Id.* at 14. Critically, the Court made no finding that it was permissible for McAndrews to be adverse to its former client in non-party discovery. In fact, the Court held the opposite.

McAndrews' proposal would effectively gut the entire purpose of conflicts counsel and allow McAndrews to "pull the strings" for Broadcom discovery. First, McAndrews' proposal would allow McAndrews to directly interact with conflicts counsel before, during, and after discovery is taken from Broadcom. These communications create an impermissible risk that the integrity of the process could be compromised. By speaking with conflicts counsel, McAndrews attorneys would have the opportunity to shape conflicts counsel's ideas about taking discovery from Broadcom, Broadcom's products, Broadcom's technologies, Broadcom's relationships with its customers, and Broadcom's witnesses. McAndrews' suggestion that its communications with conflicts counsel would be limited to "non-Broadcom information" is impossible to police, offers no real protection against deliberate or inadvertent disclosure of information, and invites mischief and games that would have Broadcom information be communicated under the guise of supposedly-generic industry knowledge.

McAndrews complains that Broadcom's proposal would require conflicts counsel to learn the proceedings "from scratch," but that is a gross exaggeration. Broadcom's proposal ***permits*** conflicts counsel to use infringement contentions, claim construction materials, preexisting third-party subpoenas, a technical tutorial presented by TQ Delta's local counsel, and customer discovery responses in crafting discovery to Broadcom. It is not unfair that conflicts counsel should not have access to non-public information already known to McAndrews; that is exactly the consequence of McAndrews' ethical violation—and exactly the square at which unconflicted counsel would have started. TQ Delta also has able Delaware counsel (who has also been involved since the day this case was filed) who is perfectly capable of managing conflicts counsel in the process of taking discovery from a single non-party within the parameters set forth

13

above in Broadcom's proposal. McAndrews is not indispensable to this process, and it is unnecessary for McAndrews to be involved, with the risks that their involvement brings.

Second, McAndrews also refuses to agree that conflicts counsel must conduct any cross-examination of Broadcom witnesses at trial, cross-examine any other witnesses regarding Broadcom information, present Broadcom evidence to the jury, or make related arguments to the jury. This means that McAndrews would be cross-examining its former client (or customers of its former client who are testifying about Broadcom's products), as well as making arguments and inferences to the jury about Broadcom's credibility based on that testimony and other Broadcom evidence. This is improper, and there is no support in the law that McAndrews may "sit across the table" from its former client in this manner. *E.g., Sykes*, 316 F. Supp. 2d at 636 (conflicts counsel must conduct any cross-examination of former client witness at trial). In a similar vein, since McAndrews may not properly examine Broadcom witnesses at trial, conflicts counsel must remain walled off from McAndrews even after the close of discovery, so that it remains untainted and can cross-examine Broadcom at trial. Otherwise, any cross-examination of Broadcom by conflicts counsel would still violate Rule 1.9. *See, e.g., Vidalakis*, 2007 WL 4468688, at *4 (conflicts counsel must handle "all trial issues").

Third, TQ Delta's proposal would allow conflicts counsel to have unfettered contact with McAndrews' expert witnesses. Expert witnesses are held to the same standard as attorneys as part of the adversary process. *Wang Labs., Inc. v. Toshiba Corp.*, 762 F. Supp. 1246, 1250 (E.D. Va. 1991) ("[W]hen experts are retained in connection with litigation, they must operate within the constraints of, and consistent with, the adversary process."). It would be improper for McAndrews' experts—who have already been tainted and whose interactions with McAndrews are cloaked behind of veil of privilege and are impossible for Broadcom to police—to do what McAndrews itself is not permitted to do. Accordingly, any expert witnesses used by conflicts counsel should be walled off and have no past or current contact with McAndrews.

McAndrews argues that the "ethical wall" it previously erected is sufficient to protect Broadcom. As described in detail in the prior briefing, that ethical wall is grossly insufficient.

*See* D.I. 198 at 10. It did not save this Court from finding McAndrews in violation of its ethical obligations, and it should not save them now.

### D.  Conclusion

For these reasons, Broadcom respectfully requests that the Court adopt Broadcom's proposal regarding conflicts counsel, which is supported by the law and necessary to protect Broadcom. The limitations in Broadcom's proposal are reasonable and no more than necessary to ensure protection of Broadcom's information and ensure the integrity of the attorney-client relationship it had with McAndrews. A proposed order adopting Broadcom's position is submitted concurrently.

Dated: October 26, 2016

RICHARDS, LAYTON & FINGER, P.A.

*/s/ Christine D. Haynes*
Jeffrey L. Moyer (#3309)
Christine D. Haynes (#4697)
One Rodney Square
920 N. King Street
Wilmington, DE  19801
(302) 651-7508
haynes@rlf.com

OF COUNSEL:

Amanda Tessar
Perkins Coie LLP
1900 Sixteenth Street, Suite 1400
Denver, CO 80202-5255
(303) 291-2300
ATessar@perkinscoie.com

*Attorneys for Broadcom Corporation*

Respectfully submitted,

FARNAN LLP

*/s/ Michael J. Farnan*
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 North Market Street, 12th Floor
Wilmington, Delaware  19801
(302) 777-0300
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Peter J. McAndrews (admitted *pro hac vice*)
Timothy J. Malloy (admitted *pro hac vice*)
Thomas J. Wimbiscus (admitted *pro hac vice*)
Sharon A. Hwang (admitted *pro hac vice*)
Paul W. McAndrews (admitted *pro hac vice*)
Anna M. Targowska (admitted *pro hac vice*)
MCANDREWS, HELD & MALLOY, LTD.
500 West Madison Street, 34th Floor
Chicago, Illinois  60661
(312) 775-8000
(312) 775-8100 (Fax)
pmcandrews@mcandrews-ip.com

*Counsel for Plaintiff TQ Delta, LLC*