**UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| TQ DELTA, LLC,<br>　　　　Plaintiff,<br>　　v.<br>2WIRE, INC.,<br>　　　　Defendant. | C.A. No. 13-cv-1835-RGA<br><br>**FILED UNDER SEAL** |
| TQ DELTA, LLC,<br>　　　　Plaintiff,<br>　　v.<br>ZHONE TECHNOLOGIES, INC.,<br>　　　　Defendant. | C.A. No. 13-cv-1836-RGA<br><br>**FILED UNDER SEAL** |
| TQ DELTA, LLC,<br>　　　　Plaintiff,<br>　　v.<br>ZYXEL COMMUNICATIONS, INC.<br>and<br>ZYXEL COMMUNICATIONS<br>CORPORATION,<br>　　　　Defendants. | C.A. No. 13-cv-2013-RGA<br><br>**FILED UNDER SEAL** |
| TQ DELTA, LLC,<br>　　　　Plaintiff,<br>　　v.<br>ADTRAN, INC.,<br>　　　　Defendant. | C.A. No. 14-cv-954-RGA<br><br>**FILED UNDER SEAL** |
| ADTRAN, INC.,<br>　　　　Plaintiff,<br>　　v.<br>TQ DELTA, LLC,<br>　　　　Defendant. | C.A. No. 15-cv-121-RGA<br><br>**FILED UNDER SEAL** |

**TQ DELTA'S MOTION TO COMPEL PRODUCTION OF ENGINEERING
DOCUMENTS FROM THIRD-PARTY BROADCOM**

**I.　　INTRODUCTION[1]**

　　　　TQ Delta moves to compel production under subpoenas that Broadcom itself asked this

Court to require TQ Delta to serve. *See* D.I. 92 at 3 ("Rule 45 provides the mechanism for TQ

---

[1] All docket citations are to the docket numbers in C.A. No. 13-cv-1835-RGA.

Delta to seek Broadcom's documents").[2] Specifically, TQ Delta requests that this Court compel Broadcom to produce "Engineering Documents" in advance of its production of source code, which it has committed to producing by (or before) June 3rd. The requested "Engineering Documents" are documents typically used by engineers when working on source code, including while writing, or updating, or troubleshooting it. The subpoenas specifically seek these documents. *See* Ex. A [Subpoena to Broadcom re: 2Wire Prods][3] at 12 (Document Categories 7–9, requesting Software and documents describing or discussing the same); *id.* at 2–3 (defining "Software" to include "Documents used by a programmer in developing software . . ."). The requested documents—regardless of the internal Broadcom nomenclature used to describe them—map out the structure, function, and history of the source code. They are designed to save countless programmer hours from being spent searching for relevant code. Broadcom would not have its engineers work on code without these reference documents, which is why they undoubtedly exist. And finding these documents should not prove difficult; all Broadcom need do is to ask its programmers what documents they use in their ordinary course of work.

Instead of taking that simple step to locate relevant documents, Broadcom has stalled and pled ignorance as to what was requested. It has insisted that TQ Delta rely only on technical documents that Broadcom makes available to its customers via its docSAFE repository —even though ████████████████████████████████████████████████████████, as expected for documents made externally available. Documents in the docSAFE repository will

---

[2] Pursuant to D. Del. LR 7.1.1, TQ Delta made a reasonable effort to meet and confer with Broadcom on the production of engineering documents. However, Broadcom frustrated the meet and confer process by forbidding its Delaware counsel from partaking in meet and confers. *See, infra,* at 4.
[3] Broadcom received four subpoenas requesting production relating to the products of each defendant in the above-captioned cases. These near-identical subpoenas differed only in the identity of the defendant and the Broadcom chips in each defendant's products.

██████████████████████████████████████

████████████████████████

In unilaterally deciding what it will (or will not) produce in a timely fashion, Broadcom has gone out of its way to ignore the specific requests made in the subpoenas, and of the examples of the Engineering Documents described in the subpoenas. Now—three months after receiving the subpoenas that *it* asked for— Broadcom insists that it *still* needs time to investigate whether these documents exist, and where they might be located.

Broadcom has taken the tack of obstructing TQ Delta's access to the subpoenaed items. It has claimed that TQ Delta should work to minimize its discovery costs due to its non-party status in the litigation. But Broadcom almost certainly is no disinterested third party. Its customers are defendants in these actions, and, based on publicly available information, are very likely indemnified by Broadcom.[4] As Broadcom has explained to the Securities and Exchange Commission, "many of [Broadcom's] customer agreements . . . require [it] to indemnify [its] customers or purchasers for third-party IP infringement claims, including costs to defend those claims, and payment of damages in the case of adverse rulings." Ex. D [Broadcom 10-Q 2016 Q4 (excerpt)]. It has indemnified Motorola. *See* Ex. E [Broadcom–Motorola Supply Agmt Attached to 10-K (excerpt)] ("INTELLECTUAL PROPERTY RIGHTS INDEMNIFICATION"). It has indemnified D-Link defendants. *Pet'n for Inter Partes Review by Broadcom Corp.*, IPR2013-00601, Paper 23 at 4 (PTAB Jan. 24, 2014) ("Broadcom agreed to indemnify certain D-Link Defendants[.]"). And so it is almost certainly indemnifying defendants here—which is why it is asserting the common-interest doctrine over communications with them. *See* Ex. F [2017-

---

[4] Although Defendants have been explicitly asked whether Broadcom indemnifies them in connection with the chips accused in these cases, they have, to date, refused to answer that Interrogatory. *See* Exs. B, C (Rog 12 Response from 2Wire, ZyXEL).

03-16.Eml Banzhoff to Lukoff]. Thus, Broadcom has a financial stake in these cases as defendants' indemnifier, providing it a monetary incentive to frustrate discovery. It is no innocent third party that simply happens to have relevant information.

Broadcom also obstructs discovery by insisting that this Court is not the proper court for litigating disputes over its compliance with the very subpoenas it invited.[5] It has forbidden its Delaware counsel from participating in any meet and confers on this issue.[6] But Broadcom is mistaken. It has intervened and actively litigated these cases. D.I. 140. It appeared for the "purpose of protecting [its] highly confidential technical documents." D.I. 104, 106. It then requested that conflicts counsel handle the subpoenas. D.I. 134, Ex. E. Recently, it even objected to 2Wire's disclosure of an expert witness. Ex. I [Broadcom Objs to 2Wire Expert]. Having consented to this Court's jurisdiction for the purpose of subpoenas seeking Broadcom's information, Broadcom should now be compelled—by this Court[7]— to produce its highly confidential Engineering Documents.

---

[5] For example, Broadcom insists that any Broadcom-specific protective order entered by this Court contain a provision requiring disputes over that order, as well as over any discovery served on Broadcom, to be resolved in the Central District of California. *See* Ex. G [2017-05-16.Eml Banzhoff to Teng]. At a minimum, this proposal conflicts with Rule 26(c)'s provisions on proper venue for protective orders ("in the court where the action is pending").

[6] Broadcom's Delaware counsel had already appeared for the "purpose of protecting [Broadcom's] highly confidential technical documents." D.I. 104. Yet when TQ Delta tried to engage Broadcom's Delaware counsel on a meet-and-confer over the subpoena, Broadcom notified TQ Delta that its Delaware counsel was "not handling the Rule 45 subpoena" and requested that TQ Delta not "copy her on emails" or include her on calls relating to the subpoena. *See* Ex. H [Broadcom Eml Removing Local Counsel from Subpoena].

[7] TQ Delta respectfully submits that the Court's order appointing a Special Master to hear "the parties' discovery disputes" does not apply here because Broadcom is not a "party" under that order. D.I. 275 at 3. That order contemplates splitting the special master's fees and expenses between the "Plaintiff" and the "Defendant(s)." *Id.* at 5. Broadcom is neither. To the extent that the Court would like the Special Master to also handle discovery disputes involving third party Broadcom, TQ Delta will gladly bring this current dispute to the attention of the Special Master.

4

## II. BROADCOM ENGINEERING DOCUMENTS ARE UNDENIABLY RELEVANT

The Broadcom Engineering Documents are relevant to this litigation because they describe the structure, function, and history of the source code itself, which will be used to prove infringement by the defendants' DSL products that include Broadcom chips. The Engineering Documents will allow source-code review to proceed quickly and efficiently, saving thousands of dollars in review costs by allowing reviewers to more rapidly identify the relevant code, because these documents were drafted to serve precisely that same purpose for Broadcom's own engineers. Moreover, the Engineering Documents may also be used during the examination of witnesses, including expert witnesses, who are deposed regarding Broadcom's source code, to assess the accuracy of their testimony. Thus the Engineering Documents fall squarely within Rule 26(b)(1)'s definition of relevancy, and so are discoverable.

## III. BROADCOM CAN OFFER NO CREDIBLE REASON AS TO WHY IT HAS FAILED TO PRODUCE ITS ENGINEERING DOCUMENTS

The Engineering Documents are easily identified; Broadcom need only ask its engineers about the documents that they undoubtedly rely upon when they are writing, updating, or trouble shooting Broadcom's code. Yet, rather than do this, Broadcom has gone to great lengths to avoid production of these documents, from the time it injected itself into this litigation's document-collection issues nearly two years ago. *See* Ex. D.I. 104.

For one, Broadcom has feigned ignorance regarding the types of documents requested. But the subpoenas specifically explain that the requested documents include "Documents used by a programmer in developing software," with specific examples provided of "application guides, programmer reference guides, reference manuals, software specifications and requirements, software architecture guides, verification plans, hierarchical summaries, and simulation models for software, as well as all notes, comments, and read-me files relating to such

Software." Ex. A [Subpoena to Broadcom re: 2Wire Prods] at 3 (including these items in the term "Software"); *see also id*. at 12 (requesting Document Categories 7–9, seeking "Software" and documents describing or discussing the same).

Other requested Document Categories also encompass documents that are used by engineers while working on code:

- Category 4 asked for documents relating to DSL functionalities, including (but not limited to) functional, hardware, software, firmware, and architecture descriptions and/or specifications; board-level and reference design documents and/or specifications; and programmer's guides.

- Category 5 asked for documents describing compliance with technical standards.

- Category 6 asked for documents relating to specific DSL features at issue in this litigation.

- Category 8 asked for documents showing differences between source-code versions.

- Category 9 asked for documents relating to Software.

Despite these highly specific descriptions of the types of documents sought—for the twenty-five chips at issue that Broadcom itself designed—Broadcom initially (and unilaterally) decided to only produce documents from its docSAFE document repository, which it makes available to customers. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Worse, though Broadcom even promised that their "search for [technical documents] will not be limited to Broadcom's docSAFE system," they nonetheless decided to limit their production, to date, of Broadcom documents from that system.[8] Ex. J [2017-03-28.Eml Banzhoff to Lukoff]. It has not produced non-docSAFE, non-customer-facing, Broadcom-internal documents, even after TQ Delta repeatedly insisted on their production. Ex.

---

[8] Broadcom has produced a few Engineering Documents for two chips it acquired from 2Wire, which are the subject of ongoing correspondence between TQ Delta and Broadcom.

K [2017-03-17.Eml Lukoff to Banzhoff]; Ex. L [2017-04-20.Ltr Lukoff to Banzhoff] at 3; Ex. M [2017-04-21.Eml Lukoff to Banzhoff].

Even though the subpoenas provide explicit examples of the Engineering Documents TQ Delta seeks, Broadcom unilaterally chose to ignore them. For example, the subpoena plainly requests "architecture guides" and "architecture descriptions and/or specifications."[9] Yet Broadcom claims that "[o]n April 25, TQ Delta for the first time inquired about additional documents, such as . . . software architecture guides," and asserts that it was not until May 3 that "TQ Delta indicated it was interested in these additional types of documents." Ex. N [2017-05-11.Eml Banzhoff to Teng re Eng'g Docs]. These assertions are unsupportable. The subpoenas were explicit. If TQ Delta was not seeking these documents, why would there have been any reason to explicitly describe them in the subpoenas?[10]

Furthermore, Broadcom evidently did not even take the simple and obvious step of asking its engineers about the Engineering Documents for at least three months after it received the subpoenas seeking "Documents used by a programmer in developing software" on February 8, 2017. *See* Ex. P [2017-02-08.Ltr Prange to Tessar]; *supra* at 4 (requesting such documents, included in definition of "Software"). On May 9, 2017, it claimed that "we are still investigating whether these documents exist and can be located." Ex. Q [2017-05-09.Eml Banzhoff to Roberg-Perez (B)]. Worse, it even promised on March 10, 2017 that it would look for certain types of Engineering Documents and produce them a month later. *See* Ex. R [2017-03-10.Eml Banzhoff to Lukoff] (stating that Broadcom would produce "beginning by the end of the month all current . . . Hardware Data Modules, Programmer Register Reference Guides, Technical Information

---

[9] The former is specifically included as an example of a "Document[] used by a programmer in developing software," and the latter is specifically requested by Category 4. *Id.* at 6.
[10] Moreover, TQ Delta had explained that it needed Broadcom-internal technical documents more than a month earlier. Ex. O [2017-03-17.Eml Lukoff to Banzhoff] at 1.

Manuals, Technical Reference Manuals, User Guides, [and] User Manuals"). But it never did so, and has no credible explanation as to why it refused to talk to its engineers earlier about the types of Engineering Documents they use in their ordinary course of work.

Despite the three months Broadcom has had to investigate the subpoena requests, and the simple steps needed to find the Engineering Documents, it still refuses to firmly commit to produce all of them. Recently it claimed to "expect" to finish its investigation of only one type of Engineering Document, software architecture guides, "by early next week." Ex. S [2017-05-16.Eml Banzhoff to Teng]. Given the schedule in this case, and the upcoming source code review, Broadcom must be compelled to comply with TQ Delta's subpoena and produce its Engineering Documents in short order.

### IV. THE UPCOMING SOURCE-CODE REVIEW REQUIRES IMMEDIATE PRODUCTION OF BROADCOM'S ENGINEERING DOCUMENTS

The Engineering Documents will prove immensely helpful for source-code review by allowing reviewers to quickly identify relevant code. With twenty-seven Broadcom-owned chips-at-issue in this litigation, that review will take some time. Because of this, the Engineering Documents should be produced immediately. They should not be produced on a rolling basis, which would only impede source-code review.[11] Broadcom has known of the need for these documents since at least February, if not far earlier, when it first injected itself into this litigation in August 2015. It has had plenty of time to find them. Thus, it should be ordered to produce all Engineering Documents within seven calendar days of an order compelling production.

---

[11] Courts disfavor rolling production for specifically identified documents, as it is. *See, e.g.*, *Cusic v. Glass Mt. Capital LLC*, No. 12 C 6200, 2013 U.S. Dist. LEXIS 89508, at *4 (N.D. Ill. June 26, 2013) ("'Rolling' productions, which follow up on a cursory initial document review, are not appropriate."); *Tierno v. Rite Aid Corp.*, No. C 05-02520, 2008 U.S. Dist. LEXIS 58748, at *11 (N.D. Cal. July 31, 2008) ("[R]olling production is not satisfactory[.]").

Dated: May 19, 2017

Respectfully submitted,

**FARNAN LLP**

*/s/ Michael J. Farnan*
Michael J. Farnan (#5165)
Brian E. Farnan  (#4089)
919 North Market Street, 12th Floor
Wilmington, DE  19801
(302) 777-0300
(302) 777-0301 (Fax)
mfarnan@farnanlaw.com
bfarnan@farnanlaw.com


David Prange (admitted *pro hac vice*)
Sharon Roberg-Perez (admitted *pro hac vice*)
Kris Teng (admitted *pro hac vice*)
Ari Lukoff (admitted *pro hac vice*)
**ROBINS KAPLAN LLP**
800 LaSalle Avenue
2800 LaSalle Plaza
Minneapolis, MN 55402
(612) 349-8500
(612) 339-4181
dprange@robinskaplan.com
sroberg-perez@robinskaplan.com
kteng@robinskaplan.com
alukoff@robinskaplan.com

*ATTORNEYS FOR PLAINTIFF TQ DELTA, LLC*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| TQ DELTA, LLC,<br>       Plaintiff,<br>  v.<br>2WIRE, INC.,<br>       Defendant. | C.A. No. 13-cv-1835-RGA |
| TQ DELTA, LLC,<br>       Plaintiff,<br>  v.<br>ZHONE TECHNOLOGIES, INC.,<br>       Defendant. | C.A. No. 13-cv-1836-RGA |
| TQ DELTA, LLC,<br>       Plaintiff,<br>  v.<br>ZYXEL COMMUNICATIONS, INC.<br>and<br>ZYXEL COMMUNICATIONS CORPORATION,<br>       Defendants. | C.A. No. 13-cv-2013-RGA |
| TQ DELTA, LLC,<br>       Plaintiff,<br>  v.<br>ADTRAN, INC.,<br>       Defendant. | C.A. No. 14-cv-954-RGA |
| ADTRAN, INC.,<br>       Plaintiff,<br>  v.<br>TQ DELTA, LLC,<br>       Defendant. | C.A. No. 15-cv-121-RGA |

**[PROPOSED] ORDER COMPELLING PRODUCTION OF ENGINEERING
DOCUMENTS FROM THIRD-PARTY BROADCOM**

This ___ day of May, 2017, the Court having considered the issues raised in Plaintiff TQ

Delta's Motion to Compel Production of Engineering Documents from Third-party Broadcom

("Motion") and any response thereto:

IT IS HEREBY ORDERED that the Motion is GRANTED.  Broadcom is hereby ordered

2

to produce all documents used by a programmer in developing software within seven calendar days of this order. This includes all non-docSAFE technical documents identified in TQ Delta's subpoenas served on Broadcom.

_____
The Honorable Richard G. Andrews