

September 29, 2017

**VIA ELECTRONIC DELIVERY**

| | |
|---|---|
| Brian E. Farnan, Esq. | Peter J. McAndrews, Esq. |
| Michael J. Farnan, Esq. | Thomas J. Wimbescus, Esq. |
| Farnan LLP | McAndrews, Held & Malloy LTD. |
| 919 North Market Street, 12th Floor | 500 West Madison Street, 34th Street |
| Wilmington, DE 19801 | Chicago, IL  60661 |
| | |
| Colm F. Connolly, Esq. | Brett Schuman, Esq. |
| Jody Barillare, Esq. | Rachel M. Walsh, Esq. |
| Morgan Lewis & Bockius LLP | Goodwin Procter LLP |
| 1007 N. Orange Street, Suite 501 | Three Embarcadero Center, 24th Floor |
| Wilmington, DE  19801 | San Francisco, CA  94111 |

**Re:** *TQ Delta, LLC v. 2Wire, Inc.*
        Civil Action No. 13-1835-RGA

Dear Counsel:

This letter shall serve as my decision and order concerning (1) Plaintiff's Motion to Compel 2Wire to Produce Certain Documents (the "TQ Delta Motion") and (2) the Motion of 2Wire, Inc. to Compel TQ Delta, LLC to Produce Relevant Documents and Discovery (the "2Wire Motion", along with the TQ Delta Motion, collectively, the "Motions").

**BACKGROUND**

TQ Delta, LLC ("TQ Delta") has filed suit against 2Wire, Inc. ("2Wire") in the United States District Court for the District of Delaware (the "Lawsuit"), in which TQ Delta alleges that 2Wire infringed on no less than twenty-four (24) patents involving digital subscriber line technology (collectively, the "Patents").  TQ Delta seeks an order declaring that it has complied with any RAND obligations, a finding that 2Wire has infringed on its patents, the entry of a permanent injunction enjoining 2Wire from infringing on its patents, and an award of damages.

The parties propounded written document requests on each other which are the subject of the Motions.  The parties participated in several meet-and-confer sessions prior to filing the Motions and in advance of oral argument on the Motions at the Court's request.  While the meet-and-confer sessions resulted in a reduction of a few issues requiring the Court's attention, the parties are at an impasse and the remaining

David A. White
Partner
T. 302-984-6370
F. 302-691-1136
dwhite@mccarter.com

McCarter & English, LLP
Renaissance Centre
405 N. King Street, 8th Floor
Wilmington, DE  19801-3717
T. 302.984.6300
F. 302.984.6399
www.mccarter.com

BOSTON

HARTFORD

STAMFORD

NEW YORK

NEWARK

EAST BRUNSWICK

PHILADELPHIA

WILMINGTON

WASHINGTON, DC

September 29, 2017
Page 2

disputes necessitated a lengthy oral argument on September 20, 2017 (the "Hearing").[1]  The Hearing took the tone of an additional meet-and-confer, in which counsel admitted that it did not fully understand the types of documents sought in certain requests, failed to indicate those documents specifically sought through other requests, and finally expressed a willingness to limit the scope of certain requests.

Based on the arguments set forth in the papers and at the Hearing, the Court is prepared to rule on the Motions as follows.

## LEGAL ANALYSIS

### *Legal Standard*

Federal Rule of Civil Procedure 26(b)(1) permits a party to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case ..."  Fed. R. Civ. P. 26(b)(1). Proportionality is the standard, as mandated by the recent revisions to Federal Rule 26(b)(1), which require consideration of "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  *Id.*  The United States District Court for the District of Delaware has written on the topic of proportionality in recent years, and the Court has explained that it must "evaluate the parties' arguments for or against the requested production on the bases of the production sought, the other production to date, the degree of the requested production's relevance, and the burdens imposed on the party from whom the production is requested."  *AVM Tech., LLC v. Intel Corp.*, Civ. A 15-033-RGA-MPT, 2016 WL 1948872, at *2 (D. Del. May 3, 2016).  *See also Syngenta Corp. Protection, LLC v. Willowood, LLC*, Civ. No. 16-171-RGA, 2016 WL 4925099, at *2 (D. Del. Sept. 14, 2016).

Federal Rule of Civil Procedure 37 permits a party to "move for an order compelling disclosure or discovery."  Fed. R. Civ. P. 37(a).  "Generally, a party moving to compel discovery bears the burden of demonstrating the relevance of the requested information."  *Novanta Corp. v. Iradion Laser, Inc.,* Civ. A. 15-1033-SLR-SRF, 2016 WL 4987110, at *2 (D. Del. Sept. 16, 2016) (citing *Del. Display Grp LLC v. Lenovo Grp Ltd.,* Civ. A. 13-2108-RGA, 13-2109-RGA, 2016 WL 720977, at *2 (D. Del. Feb. 23, 2016)).  "It is [the moving party's] burden to show how discovery ... is proportional to the needs of the case."  *Id.*  at *4.  Further, "[t]he parties and the court

---

[1] A court reporter was present at the Hearing, and the Court has endeavored to cite to the transcript where possible.

September 29, 2017
Page 3

have a collective responsible to consider the proportionality of all discovery and consider it in resolving discovery disputes." *Novanta Corp. v. Iradion Laser, Inc.*, Civ. A. 15-1033-SLR-SRF, 2016 WL 4987110, at *2 (D. Del. Sept. 16, 2016).

## A.      The TQ Delta Motion

TQ Delta has sought an order compelling 2Wire to produce documents relative to the existence of any indemnification agreements between 2Wire and its customers concerning the use of the Patents as well as minutes from any meeting of 2Wire's board of directors relating to the Patents.

Request Nos. 88 and 132

These requests seek the production of documents related to the obligation of any third party to indemnify 2Wire for the use, sale, manufacture, or distribution of any products containing the Patents.  Through meet-and-confer discussions, the parties agreed that 2Wire will produce certain documents responsive to these requests, thereby rendering the issue moot.  *See AVM Tech., LLC*, 2016 WL 1948872, at *2.

Request No. 122

This request seeks the production of minutes from 2Wire's corporate board meetings and any notes generated at such meetings that reference the Patents.  TQ Delta maintains that the requested documents are relevant to infringement, and it has agreed to limit the scope of this request to meetings of officers and directors.  *See* Transcript at pp. 9:14-10:3, 14:11-15.  2Wire objects to this request as an improper fishing expedition.  *See id.* at pp. 12:1-16, 14:20-24.  Further, 2Wire maintains that any responsive documents might include confidential and/or privileged material that excuse disclosure.

Whether 2Wire's officers and directors discussed the use of the Patents at its board meetings is relevant to the issue of infringement.  2Wire did not dispute this point in its papers or at oral argument.  While 2Wire complains that this request is a speculative exercise, TQ Delta has agreed to limit the scope of its request to meetings of 2Wire's board of directors and/or officers, and thus, the Court does not find that this request is overbroad.  While there may be speculative elements to this request, the type of documents sought is customary in litigation, and the Court rules that 2Wire is compelled to produce minutes from any formal meeting of 2Wire's board of directors and/or officers concerning the use of the Patents during the period of Infringement.  The Court has addressed the issue of proportionality by limiting the scope of this request to formal meetings and excusing 2Wire from searching for and producing any handwritten or informal notetaking at such meetings.  *See* Fed. R. Civ.

September 29, 2017
Page 4

P. 26(b)(1).  To the extent that 2Wire claims that any responsive documents are privileged, 2Wire is required to produce a privilege log itemizing each document withheld from production on the basis of privilege.

**B.      The 2Wire Motion**

2Wire has sought an order compelling TQ Delta to produce documents relative to TQ Delta's corporate structure, allegations of infringement, and claim for damages.

**1.      TQ Delta's Corporate Structure**

Request No. 93

This request seeks the production of any documents "sufficient to show" TQ Delta's corporate structure.  2Wire asserts that the requested documents are necessary to evaluate witness bias, specifically whether a witness possesses a financial stake in the litigation.  *See* Transcript at pp. 23:15-24:8.  TQ Delta has agreed to produce corporate formation documents and an organizational chart to the extent it exists. *See id.* at pp. 24:15-25:22.  TQ Delta objects to the scope of this request, as it seeks information showing the relationship between TQ Delta's parent, subsidiaries, and affiliates.  *See id.*

TQ Delta does not object to this request on the basis of relevance.  Further, TQ Delta expressed a willingness to produce its formation documents and a corporate organizational chart to the extent that one exists.  TQ Delta finds this request objectionable based on the scope or breadth of the information sought.  The Court, however, does not find 2Wire's request for information concerning the relationship between TQ Delta's parents, subsidiaries, and affiliates unreasonable, overbroad, or disproportionate.  Accordingly, TQ Delta shall produce an organizational chart showing the relationship between TQ Delta and its parent, subsidiaries, and affiliates from the date of conception through the present day.  This Order shall not be construed as requiring TQ Delta to prepare an organizational chart if one does not exist, as the Federal Rules obligate a party to produce only those documents in its possession, custody, or control.  *See* Fed. R. Civ. P. 34(a)(1).

**2.      Infringement**

Request Nos. 23 and 25

These requests seek documents related to any litigation, arbitration, or proceeding, including foreign counterparts (Request 25) concerning the validity, enforceability and infringement of the Asserted TQ Delta Patents.  2Wire argues that such

September 29, 2017
Page 5

documents are relevant to allegations of infringement in the Lawsuit, and it has agreed to limit its request to non-public documents.  At oral argument, 2Wire further limited its request to deposition transcripts, expert reports, and documents filed under seal in other proceedings.  *See* Transcript at pp. 36-37.  TQ Delta objects to the scope of the request, but it has agreed to produce any non-public documents specifically requested by 2Wire in Request No. 23.  With respect to Request No. 25, TQ Delta objects to the relevance of documents produced in foreign proceedings based on the difference between American and international patent laws.  *See id.* at p. 45:10.

The requests seek documents relevant to the Lawsuit.  The requests, as initially written, were overbroad, but 2Wire's concession to limit the scope of the requests to deposition transcripts, expert reports, and documents filed under seal makes the request more reasonable.  Despite these concessions, the Court is still guided by the proportionality requirement set forth in Federal Rule 26(b)(1).  2Wire bears the burden of proving proportionality.  *See Novanta Corp.*, 2016 WL 4987110, at *4.  2Wire did not state in its papers or during oral argument that it was unable to identify the proceedings involving the validity, enforceability, and infringement of the Patents.[2]  Accordingly, 2Wire is capable of identifying the proceeding for which it seeks documents, and TQ Delta is compelled to produce the non-public deposition transcripts and its expert reports in each such proceeding – domestic or abroad – identified by 2Wire.[3]

The proportionality requirement involves consideration of the burden or expense of the proposed discovery and whether it exceeds the benefits of production.  *See* Fed. R. Civ. P. 26(b)(1).  Documents filed under seal in the proceedings identified by 2Wire do not have to be produced.  2Wire has not identified these documents; rather, it appears to request the document by virtue of the fact that it was filed under seal rather than any probative value.  2Wire also has failed to show why these documents are relevant, why these documents are not confidential or put the third parties on notice of its request.  The parties in the other proceedings did not have a role in negotiating or drafting the confidential order in the Lawsuit, and the confidentiality order does not entirely address the Court's concerns.  Overall, the Court is not convinced that 2Wire has satisfied its burden as to these specific documents, and thus, TQ Delta's objection is sustained as to the remainder of the requests.

---

[2] 2Wire stated that it was not aware of a foreign proceeding involving the validity, enforceability, or infringement the Patent.  *See* Transcript at p. 49:16-21.  At no time however did 2Wire argue that it was unable to identify a foreign proceeding.

[3] 2Wire shall identify the foreign and domestic proceedings within three (3) business days of the filing of this Order, in which 2Wire shall identify the parties, the forum or jurisdiction, and case/civil action number.

September 29, 2017
Page 6

Request No. 26

This request seeks documents related to the prosecution of the application for the Asserted TQ Delta Patents. TQ Delta produced its prosecution file for the Patents in April 2014. *See* Transcript at pp. 53:20-54:2. At oral argument, the Court questioned 2Wire why the prosecution file was not sufficient, and 2Wire referenced a number of documents to which TQ Delta asserts privilege. *See id.* at p. 54:8-17. Neither party, however, has produced a privilege log cataloguing the documents which are purportedly privileged. Thus, the Court orders the parties to confer regarding the documents produced in response to this request and whether any nonprivileged documents have been withheld. *See AVM Tech., LLC*, 2016 WL 1948872, at *2. To the extent that TQ Delta refuses to produce nonprivileged documents from its prosecution file for the Patents, 2Wire my file an application with the Court identifying the documents and its position on the asserted privilege.[4]

Request Nos. 83 and 89

These requests seek documents related to potential instances of infringement of the Asserted TQ Delta Patents. 2Wire maintains that the requested documents are relevant to infringement. TQ Delta objects to the requests as irrelevant, overbroad, and disproportionate. *See* Transcript at 68:14-17. The Court sustains TQ Delta's objections to Request Nos. 83 and 89. The information sought through these requests is duplicative of other requests for documents, including, but not limited to Request Nos. 23, 25, 26, 83, 96, 97, and 98. Further, these requests are incredibly broad. Federal Rule 26(b)(1) mandates proportional discovery, and a blanket request for all documents related to allegations of infringement by any party during any period of time does not comport with this requirement. In light of TQ Delta's allegations in the Lawsuit, the existing document production, and the documents ordered to be produced herein, the discovery sought through these requests is disproportionate to the burdens imposed on TQ Delta. *See* Fed. R. Civ. P. 26(b)(1). TQ Delta's objection to these requests is sustained.

Request Nos. 96, 97, and 98

These requests seek documents produced to third parties related to the Lawsuit, 2Wire, and the Patents. 2Wire argues that these requests seek information relevant to infringement and invalidity. TQ Delta objects to each of these requests as overbroad. 2Wire did not identify any documents which it believed were responsive

---

[4] The Court sustains TQ Delta's objection to the remainder of this request as overly broad and disproportionate in light of the publicly-available information as well as the burden of searching for and producing documents related to the other patents. *See* Fed. R. Civ. P. 26(b)(1).

September 29, 2017
Page 7

to these requests.   2Wire, rather, wants all documents concerning TQ Delta's communications with third parties.

These requests seek information that is relevant to TQ Delta's allegations of infringement.  The requests, however, are duplicative in nature.  *See, e.g.,* Transcript at p. 79:12-16.  In light of the breadth of the requests and nearly-identical scope, TQ Delta is ordered to produce all non-privileged communications between TQ Delta and third parties related to TQ Delta's allegations of infringement in the Lawsuit.  To the extent that TQ Delta withholds production of any documents on the basis of privilege, it must provide 2Wire with a privilege log.  The Court sustains TQ Delta's objections to the remainder of Request Nos. 96, 97, and 98 as overbroad, duplicative, and disproportionate.

### 3.   Damages

Request No. 35

This request seeks the production of all demand letters, claim charts, draft licenses, licenses, settlement agreements, and consent judgments that relate to the Asserted TQ Delta Patents.  2Wire maintains that these documents are relevant to the issues of damages.  TQ Delta objects to the production of such documents, particularly those documents that are subject to current or ongoing settlement negotiations.

After careful consideration, the Court orders TQ Delta to produce all claim charts, executed licenses, executed settlement agreements, and court-approved consent judgments related to the Patents.  TQ Delta is also ordered to produce demand letters exchanged in those matters that resulted in a fully-executed settlement agreement. These materials strike the appropriate balancing of interests necessitated by Federal Rule 26(b)(1).

For the avoidance of doubt, TQ Delta shall not be compelled to produce the drafts of any demand letters, claim charts, licenses, settlement agreements, or consent judgments.[5]  Both parties submitted limited case law concerning the discovery of materials related to settlement negotiations.  Neither side supplied precedent from the District of Delaware nor legal authority that post-dated the amendments to Federal Rule 26(b)(1).  The Court, however, found Magistrate Judge Thynge's memorandum order in *Block Drug Co., Inc. v. Sedona Labs., Inc., et al.*, No. Civ. A. 06-350, 2007 WL 1183828 (D. Del. Apr. 19, 2007), which denied, in large part, the movant's request for the production of two (2) fully-executed settlement agreements.

---

[5] The demand letters exchanged in those matters that have not yet resulted in a fully-executed settlement agreement are also excluded from production.

September 29, 2017
Page 8

*See id.* at *2.  While Magistrate Judge Thynge acknowledged the broad scope of Federal Rule 26(b), she implicitly recognized a heightened standard for the discovery of settlement materials that reflected "the strong public policy favoring settlement and to promote that policy." *Id.* at *1 ("The court does not find that that showing has been made by [the movant].").  If the Court was not willing to order the production of fully-executed settlement agreements prior to the amendments to Federal Rule 26(b), it does not now conclude that evidence of settlement negotiations, including draft agreements, would be discoverable in the current era of discovery.  Moreover, 2Wire has not put forth a persuasive argument to demonstrate its right to such documents.  Finally, the Court finds the legal authority cited in support of TQ Delta's position more credible.  *See U.S. v. Am. Soc. of Composers, Authors & Publishers*, No. 13-95, 1996 WL 157523, at * (S.D.N.Y. Apr. 3, 1996) ("We also note that undesirable damage to prospects for voluntary resolution of disputes may occur not merely from receipt into evidence of negotiating statements made by the opposing party ..., but also by disclosure settlement discussions and analyses. ... The potential for such damaging disclosures may ... discourage the parties from venturing into such talks.").  Accordingly, the Court sustains TQ Delta's objection as to the remainder of the request.

Request No. 36

This request seeks the production of documents "sufficient to show" any "business considerations or strategy" regarding purchase, license, or assertion of Asserted TQ Delta Patents or any related patents or applications.  2Wire maintains that that these documents, from 2008 forward, are relevant to the issues of infringement damages, the value TQ Delta believes it can obtain for its patents, and what their strategy is related to it.  TQ Delta objects to the production of any such documents as being overly broad, vague and "nebulous." *See* Transcript at p. 111:8-112:14.  When pressed at the Hearing, counsel for 2Wire sharpened the request to any "analyses," "memos," "presentations," "valuations," or "projections" on what the potential value of "TQ Delta's IT [was] or asserting it against other entities." *Id.* at p. 112:19-113:10.

Having now carefully reflected on this request, the Court will require TQ Delta to produce any memos, presentations, or business plans on what it believed the potential value it could obtain in purchasing, asserting, and/or licensing the Asserted TQ Delta Patents during the relevant damages period.

September 29, 2017
Page 9

Request No. 38

This request seeks the production of documents showing the amount of royalties paid or offered to be paid. 2Wire argues that these documents are relevant to the issue of damages, and the Court agrees in part. *See Georgia Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970) ("The royalties received by the patentee for the licensing of the patent in suit ..."). TQ Delta shall produce documents showing royalties received by TQ Delta for the Patents. *See* Transcript at p. 115:13-16. TQ Delta's objection to the remainder of the request seeking information on offers to pay royalties is sustained. The Court views the latter portion of this request as a backdoor attempt to obtain information on settlement negotiations, which the Court has previously rejected. Further, the final agreement on the amount to be paid is the best indication of market value. *See id.* at pp. 115:21-116:4.

Request No. 44

This request seeks documents concerning consideration to license or sell the Asserted TQ Delta Patents. TQ Delta objects to the request as vague, ambiguous, overbroad, and disproportionate. The Court sustains TQ Delta's objection to the request as vague and overbroad. Further, the Court finds that the request is duplicative of the materials sought to be obtained through other requests, for example, Request Nos. 36, 57, and 66. Finally, to the extent that this request is another attempt to obtain information on settlement negotiations, the objection is sustained.

Request Nos. 46 and 47

These requests seek documents identifying the licensors (Request 46) and licensees (Request 47) of the Asserted TQ Delta Patents. TQ Delta has agreed to produce all licenses covering the Patents, and thus, the issue is moot. *See* Transcript at p. 122:2-17.

Request No. 54

This request seeks TQ Delta's financial statements from January 2008 through December 2016. 2Wire maintains that the requested information is relevant to the value of the Patents. *See id.* at pp. 80:22-81:5. TQ Delta objects to this request as overbroad and unreasonable. *See id.* at p. 82:2. TQ Delta has offered to produce its valuation of the Patents and the portfolios that encompass the Patents. *See id.* at p 82:5-7. 2Wire contends that TQ Delta's offer will prevent them from "interrogat[ing] that valuation and draw [its] own conclusion ..." *Id.* at 84:17-20.

September 29, 2017
Page 10

While the requested documents likely include information concerning the value of the Patents, the request encompasses information of marginal relevance to damages, if any. *See Georgia Pacific Corp.*, 318 F. Supp. at 1120.  TQ Delta has produced its valuation of the Patents and the Portfolios that include the Patents. *See id.* at 83:21-22.  This information is directly responsive to the request and excludes much of the irrelevant information found in financial statements that have no bearing on this litigation. *See AVM Tech., LLC*, 2016 WL 1948872, at *2.  The Federal Rule's emphasis on proportionality was intended to address requests of this type, particularly in light of 2Wire's numerous requests for documents concerning damages.  2Wire bears the burden of proving that the requested discovery is proportional. *See Novanta Corp.*, 2016 WL 4987110, at *4.  The Court finds that 2Wire has failed to satisfy its burden in light of TQ Delta's existing production and the opportunity to take other discovery. *See* Fed. R. Civ. P. 26(b)(1) (listing "the parties' access to relevant information" and "whether the burden or expense of the proposed discovery outweighs its likely benefit" as considerations for determining proportionality).

Request Nos. 55 and 56

These requests seek documents "sufficient to show" the value of TQ Delta prior to and following its acquisition of the Patents.  2Wire maintains that it can determine the value of the Patents by calculating the difference in figures. *See id.* at p. 92:6-8.  TQ Delta objects to these requests based on relevance and undue burden.

Again, the requests seek documents that might be relevant to the calculation of damages in the Lawsuit.  The Court finds that the information sought in the requests is far more speculative than probative on the issue of damages.  Any number of extracurricular events following the acquisition of the Patents would render the 'A minus B' calculation endorsed by 2Wire speculative, incomplete, and/or inaccurate.  2Wire's position is far too simplistic, and the burden of producing documents responsive to these requests substantially outweighs its speculative value and the burden of production. *See* Fed. R. Civ. P. 26(b)(1).  Accordingly, the Court sustains TQ Delta's objection to these requests as unduly burdensome and disproportionate.

Request No. 57

This request seeks documents regarding TQ Delta's marketing strategy after its acquisition of the Asserted TQ Delta Patents.  2Wire asserts that the requested documents are indicative of the value of the Patents.  The Court fails to see how a party's marketing strategy establishes a product's value.  As drafted, the request is neither specific nor limited in temporal proximity.  The vaguely-worded request, in fact, hinders the Court from understanding the type of information sought. *See*

September 29, 2017
Page 11

Transcript at pp. 125:22-126:8.  Finally, the requests overlap the documents sought and ordered to be produced in response to Request No. 66 herein.  *See id.* at p. 123:6.  Accordingly, the Court sustains TQ Delta's objection to the request as vague and overbroad.

Request Nos. 58 and 59

These requests seek draft licenses arising out settlements with third parties of TQ Delta's claim of infringement.  TQ Delta objects to the requests, because they seek documents that may have a chilling effect on settlement negotiations.  The Court agrees.  These requests represent another attempt to obtain documents arising out of settlement discussions.  The Court previously found that TQ Delta will not be required to produce drafts prepared in the context of settlement discussions.  TQ Delta has agreed to produce fully-executed licenses involving the Patents, and the Court finds that the actual terms of a fully-executed agreement more accurately reflect the market value of the Patents.  Thus, the Court sustains TQ Delta's objection to these requests.

Request No. 66

This request seeks documents provided to investors or potential investors in the Asserted TQ Delta Patents, the Litigation, or 2Wire's alleged infringement of the Asserted TQ Delta Patents.  2Wire maintains that the requested information is relevant to the issue of valuation and damages, but TQ Delta disputes this point.  Oral argument demonstrated a difference of opinion as to the type of documents sought through this request, in which TQ Delta erroneously believed that 2Wire sought information on investors' financial returns.  *See* Transcript at pp. 94-95.  2Wire is interested in receiving those documents shared with investors or potential investors concerning the value of the Patents, and TQ Delta's admissions to investors is relevant to the value of the Patents.  *See Georgia Pacific Corp.*, 318 F. Supp. at 1120 ("The portion of the profit ...that may be customary in the particular business ...").  The Court will order TQ Delta to produce any materials used to market, promote, or solicit investment in the Patents and the portfolios including the Patents in its possession, custody or control.  *See id.* ("The effect of selling the patented specialty in promoting sales of other products of the licensee ...").

IT IS SO ORDERED,

/s/ David A. White
David A. White