**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| TQ DELTA, LLC,<br>                    Plaintiff<br><br>               v.<br><br>2WIRE, INC.,<br>                    Defendant. | Civil Action No. 13-cv-1835-RGA<br><br><br>**FILED UNDER SEAL** |
| TQ DELTA, LLC,<br>                    Plaintiff,<br><br>               v.<br><br>ZYXEL COMMUNICATIONS, INC., and<br>ZXEL COMMUNICATIONS<br>CORPORATION,<br>                    Defendants. | Civil Action No. 13-cv-2013-RGA<br><br>**FILED UNDER SEAL** |
| TQ DELTA, LLC,<br>                    Plaintiff,<br><br>               v.<br><br>ADTRAN, INC.,<br>                    Defendant. | Civil Action No. 14-cv-954-RGA<br><br>**FILED UNDER SEAL** |
| ADTRAN, INC.,<br>                    Plaintiff,<br><br>               v.<br><br>TQ DELTA, LLC,<br>                    Defendant. | Civil Action No. 15-cv-121-RGA<br><br>**FILED UNDER SEAL** |

**PLAINTIFF TQ DELTA, LLC'S WRITTEN OBJECTIONS**
**TO A PORTION OF THE SPECIAL MASTER'S DEPOSITION DISPUTE RULING**

**I.     INTRODUCTION**

Plaintiff TQ Delta LLC ("TQ Delta") hereby provides its written objections to a mid-deposition ruling by Special Master White allowing the Defendants to proceed with a line of questions relating to the owners of the owners of TQ Delta (i.e. shareholders of the owners of TQ Delta).   More particularly, in denying an application for a protective order, the ruling allowed

Defendants to ask for the identities of the members of the corporate entity members of TQ Delta. For the reasons set forth below, TQ Delta submits that such subject matter is improper and otherwise beyond that allowed by the Court in ruling on the appropriate scope of discovery relating to any "affiliates" of TQ Delta.  By way of example, the Court ruled that Rule 30(b)(6) discovery may be appropriate regarding certain related entities involved in ownership or control of TQ Delta, but not the "shareholders" (i.e., owners) of such entities.  And, the Court has already rejected similar arguments by Defendants that discovery regarding funding related matters is relevant to jury voir dire or juror bias.  Notably, TQ Delta allowed deposition discovery on the issue of how the witnesses may or may not be benefitted by any outcome in this case.

## II.     STANDARD OF REVIEW

Consistent with Federal Rule of Civil Procedure, the "Court must decide de novo all objections to conclusions of law made or recommended by a master."  Fed. R. Civ. P. 53(f)(4).

## III.     DISCUSSION

**Application for Protective Order.**  TQ Delta allowed Defendants to ask questions about the organizational structure of TQ Delta, ███████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ███████.  Consistent with prior Court orders, TQ Delta objected to questions about ████████ ███████████████████████████████████████████████████████ TQ Delta timely

moved for a protective order, and the issue was presented to the Special Master during a break in the deposition.  The Special Master rendered an oral ruling.[1]

During a telephonic hearing with the Special Master, counsel for Defendants (ADTRAN and ZyXEL) summed up the nature of the information sought as follows: ████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████  Counsel for ADTRAN had argued that such information is relevant to witness bias, potential juror bias, and standing—arguments, which had already been rejected by the Court as bases to seek highly sensitive investor-related information.[2]

**Prior Orders of the Court.**  With respect to similar requests relating to litigation funding and TQ Delta's financial condition, the Court overruled ADTRAN's objection to the Special Master's order, ruling that litigation funding is irrelevant:

> As for witness bias, I believe that is already being addressed in a more focused way, that is, in connection with people identified as witnesses. (D.1. 361, p.5). As for bias of potential jurors, voir dire at trial will smoke it out. And recusal appears to be nothing more than a "Hail Mary." As TQ Delta points out in response (D.I. 377, pp.4-6), I have previously held in other cases that litigation funding agreements are in themselves irrelevant. I continue to believe that that is generally so, and that, in cases such as this, providing Adtran with the details of TQ Delta's financing provides an unfair and unwarranted advantage to Adtran.

C.A. 14-cv-954-RGA, D.I. 419, at p. 2.

In the same order, this Court added that a limited scope of Rule 30(b)(6) as to certain affiliated entities involved in TQ Delta—"other than 'shareholders'" of those entities—might be appropriate discovery:

---

[1] See *TQ Delta LLC v. ADTRAN, Inc.*, C.A. No. 14-cv-954-RGA, Sept. 12, 2018 Hearing Transcript (attached to the Appendix filed contemporaneously herewith as Exhibit 1).
[2] ADTRAN sought litigation funding agreements during a prior discovery dispute, stating at the time that "ADTRAN cannot identify witnesses having bias, potential jurors who may be partial, or grounds for recusal."  D.I. 372, at p. 3.

> I take it from the Special Master's discussion that he would uphold Adtran' s ability to explore some of these topics (particularly the subject of RFP # 10, other than "shareholders") in a Rule 30(b)(6) deposition. I take it from TQ Delta's submission that inquiry into who or what makes up "TQCAP GP, LLC" is fair game.

*Id.*, D.I. 419, at p. 2. (Request for production no. 10 reads "All documents sufficient to identify TQ Delta's predecessors, past and present affiliates, including parent companies, subsidiaries, partnerships, joint ventures, divisions, and shareholders.")

Defendants had previously challenged TQ Delta's ability to redact the names of its owners from a corporate document.  After finding redaction inappropriate and ordering TQ Delta to provide a document in unredacted form that would disclose the names and ownership interests of member-owners of TQ Delta, the Court cautioned Defendants as follows:

> I have one addition to the Special Master's order, which addresses the concern that ADTRAN will 'chill funding by harassing passive third party investors with third party discovery proceedings.'  I doubt this is a realistic possibility, but, just in case, absent my express approval, the third party investors which will be disclosed in the unredacted documents are not to be the subject of any discovery efforts.

C.A. No. 14-cv-954-RGA D.I 449 at 3.

Consistent with the case law and orders from these cases, this Court also ruled in related litigation that litigation funding is "off limits."  *TQ Delta LLC v. Comcast Cable Communications LLC, et al.*, C.A. No. 13-cv-2013-RGA, Oct. 11, 2016 Hrg Tr., at p. 34.[3] Specifically, this Court ruled, "I don't think the entities that are providing the funding, or the amount of the funding are relevant, or likely to lead to relevant information. And what's more, I think they are – I think really they should be off limits unless they are really necessary, and I don't think they are necessary."  *Id.* Likewise, other courts have concluded that discovery relating to third-party investors and funding is off limits. *See Evolved Wireless, LLC v. Apple*

---

[3] The *TQ Delta LLC v. Comcast Cable Comms.* Oct. 11, 2016 Hearing transcript, Appendix at Exhibit 2.

*Inc.*, C.A. No. 15-00542-SLR, Mar. 23, 2016 Hrg. Tr. (granting protective order prohibiting defendants from questioning witnesses regarding the identities of third-party investors and investor designated board members stating that the request was "somewhat of a fishing expedition....");[4] *Blast Motion, Inc. v. Zepp Labs, Inc.*, No. 315CV00700JLSNLS, 2015 WL 12564315, at *3 (S.D. Cal. Dec. 2, 2015) ("The Court agrees … that Blast Motion's desire to learn who has a financial interest in this litigation is not relevant to the case . . . .").[5]

In short, the Court has already ruled that there is no legitimate basis for the two-steps removed discovery of shareholder/members of the owners of TQ Delta.  The Court further ruled that discovery of litigation funding is off limits because such irrelevant information would give rise to unfair litigation advantage.  Finally, this Court and other courts have repeatedly denied requests for such intrusive and irrelevant funding information.

**Deposition Testimony about corporate structure and beneficiaries.**[6]    TQ Delta's Rule 30(b)(6) designees provided a broad range of information about TQ Delta and any related entities involved in its management, ownership, or control.  This included testimony about the

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

---

[4] *Evolved Wireless, LLC v. Apple Inc*., March 23, 2016 Hearing Transcript, Appendix at Exhibit 3.
[5] TQ Delta submits that the matter of naked litigation funding was not pursued by Defendants, as they did not follow the Special Master's meet and confer protocol for that wider subject matter.
[6] The rough September 12, 2018 deposition transcript of TQ Delta's corporate designee ██████████ is attached to the Appendix as Exhibit 4.



TQ Delta moved for a protective order when Defendants counsel inquired about information that has been previously deemed squarely off limits in numerous Court orders, namely the specific names of owners of members of TQ Delta, LLC:



In other words, TQ Delta provided testimony about anything remotely relevant to the underlying patent infringement lawsuit, standing, witness bias, etc. Defendants' overreaching examination into owners of the owners of TQ Delta was simply a fishing expedition into the sources of funding and financial health of TQ Delta—areas that the Court has repeatedly ruled are completely "off limits" because such information is simply irrelevant and would serve to provide an unfair litigation advantage.

Tacitly recognizing that the discovery sought is in no way relevant to any issue in this case, Defendants were left to argue that such investor/funding information is somehow relevant to juror bias or matters of voir dire. Not so. (In fact, Defendants have not even shown that any of the entities have any connection to the state of Delaware, where the jury trial and jury pool is located.) The Court should therefore reject Defendants' continued attempts to seek discovery on matters that should remain "off-limits" in this case. Notably, nothing in the Special Master's

ruling provided any basis to depart from the Court's ruling that litigation funding and discovery of shareholder/members of TQ Delta's owner entities (owners of owners) are properly a subject of discovery.[7] [8]

## IV.    CONCLUSION

Shareholders and other owners, members, beneficiaries of TQ Delta's owner-members should remain "off-limits" for discovery.  TQ Delta therefore respectfully requests that the Court sustain TQ Delta's objections to the ruling denying its application for a protective order.   The deposition should be closed as it relates to the issue of the identities of owners of TQ Delta's owners and any litigation funding.

Dated:  September 18, 2018                    Respectfully submitted,

                                              FARNAN LLP

                                              /s/ Michael J. Farnan
                                              Brian E. Farnan (Bar No. 4089)
                                              Michael J. Farnan (Bar No. 5165)
                                              919 North Market Street, 12th Floor
                                              Wilmington, Delaware  19801
                                              (302) 777-0300
                                              (302) 777-0301 (Fax)
                                              bfarnan@farnanlaw.com
                                              mfarnan@farnanlaw.com

                                              Peter J. McAndrews (admitted *pro hac vice*)
                                              Timothy J. Malloy (admitted *pro hac vice*)

---

[7] Likewise, there is no basis to justify discovery of any "beneficiary" owners of any of the identified member trusts outside of perhaps the witness (which TQ Delta allowed).

[8] The Special Master reasoned that the nature of the examination remained unknown, as the Defendants pushed this issue during a deposition and handcuffed the Special Master into making a split decision on a teleconference, a procedure they insisted be set up just prior to this deposition occurring, without giving the Special Master the benefit of reading the context of the Defendants' questions.  Appendix, Ex. 1, Hearing Tr. at p. 52 (A43) ("[Special Master White:] Look, I don't know what the line of questions are going to be.  I just know that I'm going to authorize the questioning.")

Thomas J. Wimbiscus (admitted *pro hac vice*)
Sharon A. Hwang (admitted *pro hac vice*)
Paul W. McAndrews (admitted *pro hac vice*)
Anna M. Targowska (admitted *pro hac vice*)
MCANDREWS, HELD & MALLOY, LTD.
500 West Madison Street, 34th Floor
Chicago, Illinois  60661
(312) 775-8000
(312) 775-8100 (Fax)
pmcandrews@mcandrews-ip.com

*Counsel for Plaintiff TQ Delta, LLC*