**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

TQ DELTA, LLC,

           Plaintiff,

    v.

2WIRE, INC.,

           Defendant.

C.A. No. 13-cv-1835-RGA

**FILED UNDER SEAL**

---

**MEMORANDUM IN SUPPORT OF TQ DELTA'S MOTION FOR SUMMARY
JUDGMENT OF NO INVALIDITY OF FAMILY 2 PATENT CLAIMS
<u>UNDER 35 U.S.C. §§ 101 & 112</u>**

Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
FARNAN LLP
919 North Market Street, 12th Floor
Wilmington, Delaware 19801
(302) 777-0300
(302) 777-0301 (Fax)
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Peter J. McAndrews (admitted *pro hac vice*)
Thomas J. Wimbiscus (admitted *pro hac vice*)
James P. Murphy (admitted *pro hac vice*)
Paul W. McAndrews (admitted *pro hac vice*)
Anna M. Targowska (admitted *pro hac vice*)
Rajendra Chiplunkar (admitted *pro hac vice*)
MCANDREWS, HELD & MALLOY, LTD.
500 West Madison Street, 34th Floor
Chicago, Illinois  60661
(312) 775-8000
(312) 775-8100 (Fax)
pmcandrews@mcandrews-ip.com

Counsel for Plaintiff TQ Delta, LLC

# TABLE OF CONTENTS

I.    **NATURE AND STAGE OF PROCEEDINGS**................................................... 1

II.   LEGAL STANDARD.......................................................................................... 1

    A.    Patentable Subject Matter – 35 U.S.C. § 101 ...........................................3

    B.    Written Description and Enablement – 35 U.S.C. § 112 ...........................3

III.  '881 PATENT, ASSERTED CLAIMS, AND CLAIM CONSTRUCTION ..................... 3

    A.    '881 Patent .................................................................................................3

    B.    Asserted Claims .........................................................................................5

    C.    Claim Construction ...................................................................................5

IV.  ARGUMENT ....................................................................................................... 6

    D.    Summary Judgment Should Be Granted That Claims 17 and 18 Of The '881 Patent Are Directed To Patent-Eligible Subject Matter .................................6

        1.    The Family 2 Patent Claims are Not Directed to an Abstract Idea.............7

        2.    The Family 2 Patent Claims Include Additional Transformative Inventive Concepts.......................................................................................9

    E.    Summary Judgment Should Be Granted That 2Wire Cannot Prove That Claims 17 and 18 are Invalid Under Any Paragraph of 35 U.S.C. § 112 .............10

        1.    Claims 17 and 18 are not indefinite under 35 U.S.C. § 112, ¶ 2 ..............11

        2.    Claims 17 and 18 are enabled .................................................................15

        3.    Claims 17 and 18 have written description support...................................16

V.   CONCLUSION.................................................................................................. 17

# TABLE OF AUTHORITIES

**Cases**

*Alcon Research Ltd. v. Barr Labs., Inc.*,
    745 F.3d 1180 (Fed. Cir. 2014). ........................................................................ 15

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
    573 U.S. 208 (2014) ............................................................................................... 3

*Ancora Techs., Inc. v. HTC Am., Inc.*,
    908 F.3d 1343 (Fed. Cir. 2018) ............................................................................ 3

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ............................................................................................... 1

*Ariad Pharm., Inc. v. Eli Lilly & Co.*,
    598 F.3d 1336 (Fed. Cir. 2010) .......................................................................... 16

*ART+COM Innovationpool GmbH v. Google Inc.*,
    183 F. Supp. 3d 552 (D. Del. 2016) ..................................................................... 7

*Avia Grp. Int'l, Inc. v. L.A. Gear Cal., Inc.*,
    853 F.2d 1557 (Fed. Cir. 1988) ............................................................................ 2

*Bilski v. Kappos*,
    561 U.S. 593 (2010) ............................................................................................... 6

*Crown Operations Int'l Ltd. v. Solutia Inc.*,
    289 F.3d 1367 (Fed. Cir. 2002) ............................................................................ 2

*DDR Holdings, LLC v. Hotels.com, L.P.*,
    773 F.3d 1245 (Fed. Cir. 2014) ............................................................................ 7

*Diamond v. Diehr*,
    450 U.S. 175 (1980) ............................................................................................... 6

*Eli Lilly & Co. v. Barr Lab. Inc.*,
    251 F.3d 955 (Fed. Cir. 2001) .............................................................................. 2

*Enfish, LLC v. Microsoft Corp.*,
    822 F.3d 1327 (Fed. Cir. 2016) ............................................................................ 6

*Genetic Techs., Ltd. v. Merial L.L.C.*,
    2016 WL 1393573, at *5 (Fed. Cir. Apr. 8, 2016) ............................................. 8

*Gottschalk v. Benson*,
    409 U.S. 63 (1972) ................................................................................................. 7

*In re Wands*,
    858 F.2d 731 (Fed.Cir.1988) .............................................................................. 15

*MagSil Corp. v. Hitachi Glob. Storage Techs., Inc.*,
    687 F.3d 1377 (Fed. Cir. 2012). ........................................................................ 15

*MagSil Corp. v. Seagate Tech.*,
   764 F. Supp. 2d 674 (D. Del. 2011) ................................................................. 15

*Massey v. Del Labs., Inc.*,
   118 F.3d 1568 (Fed. Cir. 1997) ....................................................................... 2

*N. Telecom Ltd. v. Samsung Elecs. Co., Ltd.*,
   1996 WL 532122 (N.D. Cal. 1996) ................................................................. 2

*National Presto Indus., Inc. v. West Bend Co.*,
   76 F.3d 1185 (Fed. Cir. 1996) ....................................................................... 1

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
   572 U.S. 898 (2014) ....................................................................................... 12

*OIP Techs., Inc. v. Amazon.com, Inc.*,
   788 F.3d 1359 (Fed. Cir. 2015) ...................................................................... 3

*Olympus Corp. v. Maxwell, Ltd.*,
   No. 18-cv-216-MN, 2018 WL 5962471 (D. Del. Nov. 14, 2018) ....................... 8

*PowerOasis, Inc. v. T–Mobile USA, Inc.*,
   522 F.3d 1299 (Fed. Cir. 2008) ...................................................................... 17

*SAP America, Inc. v. InvestPic, LLC*,
   898 F.3d 1161 (Fed. Cir. 2018) ...................................................................... 3

*ScriptPro LLC v. Innovation Assocs., Inc.*,
   833 F.3d 1336 (Fed. Cir. 2016) ...................................................................... 16

*SRI Int'l, Inc. v. Cisco Sys., Inc.*,
   179 F. Supp. 3d 339 (D. Del. 2016) ................................................................ 7

*Tobinick v. Olmarker*,
   753 F.3d 1220 (Fed. Cir. 2014) ...................................................................... 16

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
   2016 WL 4373698, at *4 (D. Del. Aug. 15, 2016) ........................................... 9

**Statutes**

35 U.S.C. § 101 .................................................................................................. 3

35 U.S.C. § 112 .................................................................................................. 3

**Rules**

Fed. R. Civ. P. 56 ............................................................................................... 1

Pursuant to Federal Rule of Civil Procedure 56 and this Court's April 10, 2018 Scheduling Order (D.I. 513),[1] Plaintiff TQ Delta moves for summary judgment that claims 17 and 18 of its U.S. Patent No. 7,453,881 ("the '881 patent") have not been, and cannot be, shown by clear and convincing evidence to be invalid by Defendant 2Wire, Inc. ("2Wire").

## I.   NATURE AND STAGE OF PROCEEDINGS

This patent infringement case was filed on November 4, 2013. Fact discovery closed on October 1, 2018.  Expert discovery for the Family 2 patents closed on February 8, 2019.  *See* D.I. 628.  The asserted patents relate to digital subscriber line ("DSL") technology, which is used to provide, *e.g.*, high-speed broadband Internet access and video services via copper wires of a local telephone network.  This case as it relates only to TQ Delta's "Family 2 Patents" is scheduled to go to trial on April 29, 2019.  D.I. 513.

## II.   LEGAL STANDARD

Summary judgment "shall [be] grant[ed]" where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "[When] ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986). 2Wire has the burden of proving invalidity by clear and convincing evidence, because a patent is presumed to be valid, and the presumption may be overcome only by clear and convincing evidence. *See* 35 U.S.C. § 282(a); *National Presto Indus., Inc. v. West Bend Co.*, 76 F.3d 1185, 1189 (Fed. Cir. 1996); *Microsoft Corp. v. i4i Ltd. Partnership,* 564 U.S. 91, 112-13 (2011).  Further, the Federal Circuit "has repeatedly emphasized that 'summary judgment is as appropriate in a patent case as in any other.'"  *Avia Grp. Int'l, Inc. v. L.A. Gear,*

---

[1] All cites to "D.I. ___" are to Case No. C.A. No. 13-cv-1835-RGA, unless otherwise noted.

*Cal. Inc.*, 853 F.2d 1557, 1562 (Fed. Cir. 1988) (affirming summary judgment of no invalidity). In light of the clear and convincing burden of proof that 2Wire must sustain, the issue of invalidity of a patent is particularly susceptible to summary judgment. *See Anderson,* 477 U.S. at 254.

TQ Delta, as the party moving for summary judgment that the '881 patent is not invalid, "must show that [2Wire], who bears the burden of proof at trial, failed to produce clear and convincing evidence on an essential element of a defense upon which a reasonable jury could invalidate the patent." *Eli Lilly & Co. v. Barr Lab., Inc.*, 251 F.3d 955, 962 (Fed. Cir. 2001); *see also Crown Operations Int'l Ltd. v. Solutia Inc.*, 289 F.3d 1367, 1377 (Fed. Cir. 2002). TQ Delta thus carries the burden of "identifying those portions of the record which demonstrate the absence of a genuine issue of material fact . . .  [H]owever, [TQ Delta] is not required to 'support its motion with affidavits or other similar material *negating* the opponent's claim.'" *N. Telecom Ltd. v. Samsung Elecs. Co., Ltd.*, No. C-95-449, 1996 WL 532122, at *3-4 (N.D. Cal. Sept. 16, 1996) (emphasis in original) (internal citations omitted). In order to prevail on this motion for summary judgment, TQ Delta need not present any factual evidence. *Massey v. Del Labs., Inc.*, 118 F.3d 1568, 1573 (Fed. Cir. 1997). Rather, TQ Delta need only offer evidence that 2Wire has not demonstrated specific factual allegations that a genuine issue of material fact exists for trial. *Crown Operations*, 289 F.3d at 1377-78. Therefore, TQ Delta discharges its burden merely by "pointing out to the district court. . . that there is an absence of evidence to support [2Wire's] case." *Avia Grp.*, 853 F.2d at 1560. Once TQ Delta has discharged this burden, 2Wire must affirmatively demonstrate by specific factual allegations that a genuine issue of material fact exists for trial.  *Crown Operations*, 289 F.3d at 1377.  If 2Wire cannot do so, the Court must grant summary judgment that claims 17 and 18 of the '881 patent are not invalid.

### A.     Patentable Subject Matter – 35 U.S.C. § 101

Patents may be issued to any "new and useful process, machine, manufacture or composition of matter or any new and useful improvement thereof."  35 U.S.C. § 101.  A claimed invention is invalid as unpatentable if it is not directed to one of these things, but instead is deemed to be directed to only "an abstract idea."  *See Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 217-18 (2014).  A patent claim is NOT "directed to an abstract idea" as a matter of law where, for example, the invention comprises a "computer-functionality improvement. . . done by a specific technique that departs from earlier approaches. . . ."  *Ancora Techs., Inc. v. HTC Am., Inc.*, 908 F.3d 1343, 1347-48 (Fed. Cir. 2018). "Eligibility under 35 U.S.C. § 101 is a question of law, based on underlying facts." *Id.* (citing *SAP America, Inc. v. InvestPic, LLC,* 898 F.3d 1161, 1166 (Fed. Cir. 2018)); *see also OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1362 (Fed. Cir. 2015) ("Patent eligibility under 35 U.S.C. § 101 is an issue of law reviewed de novo.").

### B.     Written Description and Enablement – 35 U.S.C. § 112

Patents must sufficiently describe the subject matter that is claimed as the invention(s) therein to (1) demonstrate, to a POSITA, that the inventors were in possession at the time of the filing of the patent application of the claimed invention, and (2) enable a POSITA to make and use the claimed invention(s).  *See* 35 U.S.C. § 112.

## III.     '881 PATENT, ASSERTED CLAIMS, AND CLAIM CONSTRUCTION

### A.     '881 Patent

The '881 patent describes a better way to implemented "bonding" of communication links, e.g., a group of two or more DSL transceivers each creating a respective DSL link over a separate telephone line.  Bonding allows a data stream to be split (de-multiplexed) into substreams where each substream is transmitted over a respective one of the links in a bonded

group.  After reception at the far-end transceiver, the substreams are recombined (multiplexed) back into a single data stream.  Bonding increases the overall data rate by combining the data carrying capacity of multiple DSL transceivers.

The '881 patent provides for bonded DSL transceivers that can have different individual data rates.  Certain prior art bonding schemes did not allow the links in a bonded group to have different data rates and, thus, all links in a group would be forced to use the data rate of the slowest link in the group, thereby wasting capacity of faster links in the group.  The '881 patent advantageously allows the faster links to use their full capacity.  The '881 patent, however, also recognizes that, due to different data rates and other reasons, the individual links that are part of a bonded group might have different latencies (i.e., delays): "[f]or example, some of the exemplary reasons for having different delays over different DSL PHYs include, but are not limited [to], configuration latency which is based on the configuration of the DSL transmission parameters. Specifically, these parameters include the data rate, coding parameters, such as the coding method, codeword size, interleaving parameters, framing parameters, or the like."  Ex. 1[2] ('881 Patent), at 6:10-16.

The '881 patent identifies problems that might arise due to different latencies among the bonded links: "[t]his potential latency difference between bonded PHYs places implementation requirements on the multi-pair multiplexer. In particular, the multi-pair multiplexer receiver must be able to reconstruct the ATM stream even if the ATM cells are not being received in the same order as they [were] transmitted." *Id.* at 6:4-9. One way to compensate for a large difference in latency between bonded transceivers is for the multiplexing receiver to use a large receiver

---

[2] All citations to "Ex. ___" herein are to the Declaration of Rajendra A. Chiplunkar dated February 19, 2019 filed herewith. The numbers do not necessarily begin with "Ex. 1" herein and are not necessarily sequential because other motions filed by TQ Delta on this same date also utilize this Declaration, to avoid redundancy of exhibit filings.

buffer while waiting for all packets to be received. This is disadvantageous, however, at least because a larger buffer increases the required memory size and complexity and, therefore, the cost of DSL equipment.

In an example embodiment, the '881 Patent teaches that an "effective method of reducing the difference in latency between DSL PHYs is mandate that all DSL PHYs are configured with transmission parameters in order to provide the same configuration latency. An exemplary method of accomplishing the same configuration latency is by configuring the exact same data rate, coding parameters, interleaving parameters, etc. on all DSL PHYs. Alternatively, different PHYs can have, for example, different data rates but use the appropriate coding or interleaving parameters to have the same latency on all the bonded PHYs." *Id.* at 6:56-65.

### B.     Asserted Claims

Claim 17 recites:

> A plurality of bonded transceivers,
>
> each bonded transceiver utilizing at least one transmission parameter value to reduce a difference in latency between the bonded transceivers,
>
> wherein a data rate for a first of the bonded transceivers is different than a data rate for a second of the bonded transceivers.

Claim 18 depends from claim 17. Claim 18 recites:

> The transceivers of claim 17, wherein the at least one transmission parameter value is a Reed Solomon Coding parameter value, an interleaving parameter value, a coding parameter value, a codeword size value or a framing parameter value.

### C.     Claim Construction

The Court issued a claim construction for the '881 patent. *See* D.I. 486 (Memorandum Opinion) and D.I. 492 (Claim Construction Order for Family 2 Patents ("CCO")). The CCO provides the following constructions for claim terms in the asserted claims of the '881 patent:

"transceiver" – "communications device capable of transmitting and receiving data wherein the transmitter portion and receiver portion share at least some common circuitry."

"plurality of bonded transceivers" – "two or more transceivers located on the same side of two or more physical links where each transceiver is configurable to transmit or receive a different portion of the same bit stream via a different one of the physical links, wherein 'configurable to' precludes rebuilding, recording, or redesigning any of the components in a 'plurality of bonded transceivers'"

"utilizing at least one transmission parameter value to reduce a difference in latency between the bonded transceivers" – "utilizing at least one transmission parameter value to reduce a difference in configuration latency between the bonded transceivers"

D.I. 492 at 2.

## IV.    ARGUMENT

Defendant 2Wire cannot prove by clear and convincing evidence that claims 17 and 18 are invalid under § 112 as indefinite, for lack of enablement or for lack of sufficient written description.  For each reason, this Court should grant summary judgment that 2Wire has failed to show, and cannot show as a matter of law, that claims 17 and 18 of the '881 patent are invalid.

### D.    Summary Judgment Should Be Granted That Claims 17 and 18 Of The '881 Patent Are Directed To Patent-Eligible Subject Matter

In *Alice*, the Supreme Court endorsed a two-step "framework for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." *Alice,* 573 U.S. at 217.  At step one, the court must determine if the claims at issue, "considered as a whole," are directed to an abstract idea. *Id.; see also Diamond v. Diehr*, 450 U.S. 175, 188 (1980) ("It is inappropriate to dissect the claims into old and new elements and then to ignore the presence of the old elements in the analysis."); *Bilski v. Kappos*, 561 U.S. 593, 611 (2010).  In computer-related technologies, a claim passes step one of Alice if "the focus of the claims is on the specific asserted improvement in computer capabilities." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335-36 (Fed. Cir. 2016).  If a

claim passes step one, that ends the matter, and the defendant's assertion that the claim is directed to patent-ineligible subject matter must be rejected.  *See, e.g., id.* at 1337.

If, however, the court determines that the claims are directed to an abstract idea, then the court must "determine whether the additional elements transform the nature of the claim into a patent-eligible application."  *Alice*, 573 U.S. at 217.  "Step two" includes "determining. . . whether the claims are directed to 'a problem specifically arising in the realm of computer technology' and the claimed solution specifies how computer technology should be manipulated to overcome the problem."  *SRI Int'l, Inc. v. Cisco Sys., Inc.*, 179 F. Supp. 3d 339, 351 (D. Del. 2016) (citing *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1257 (Fed. Cir. 2014)).

### 1.  The Family 2 Patent Claims are Not Directed to an Abstract Idea

"The Supreme Court has recognized. . . that fundamental economic practice[s]. . . method[s] of organizing human activity. . . and mathematical algorithms. . . are abstract ideas." *ART+COM Innovationpool GmbH v. Google Inc.*, 183 F. Supp. 3d 552, 556 (D. Del. 2016) (citing *Bilski,* 561 U.S. at 611, *Alice,* 573 U.S. at 219, and *Gottschalk v. Benson,* 409 U.S. 63, 64 (1972), respectively).  Importantly, however, 2Wire does not allege that the claimed inventions fall within the scope of these proscribed categories.

Apparently recognizing that the asserted claims are not directed to subject matter anything like the abstract ideas addressed in *Bilski, Alice, or Benson*, Dr. Jacobsen over-simplifies the Asserted Claims, describing them as "cover[ing] nothing more than the abstract concept of delaying traffic on one route, while speeding it up on another."  Ex. 5 (Jacobsen Op. Rpt.), at ¶ 119.  This is improper.  As the Federal Circuit stated in *Enfish*:

> Microsoft urges the court to view the claims as being directed to "the concepts of organizing data into a logical table with identified columns and rows where one or more rows are used to store an index or

information defining columns." Appellee's Br. 17. However, <u>describing the claims at such a high level of abstraction and untethered from the language of the claims all but ensures that the exceptions to § 101 swallow the rule</u>. *See Alice*, 134 S. Ct. at 2354 (noting that "we tread carefully in construing this exclusionary principle [of laws of nature, natural phenomena, and abstract ideas] lest it swallow all of patent law"); *cf. Diamond v. Diehr*, 450 U.S. 175, 189 n.12 (1981) (cautioning that overgeneralizing claims, "if carried to its extreme, make[s] all inventions unpatentable because all inventions can be reduced to underlying principles of nature which, once known, make their implementation obvious").

*Enfish*, 822 F.3d at 1337 (emphasis added).

Dr. Jacobsen ignores "the claimed advance over the prior art" multicarrier transceiver, namely, a specific method of reducing the difference in configuration latency between two bonded transceivers. *See Genetic Techs., Ltd. v. Merial L.L.C.*, 818 F.3d 1369, 1375-76 (Fed. Cir. 2016) (assessing "the focus of the claimed advance over the prior art" in the step one inquiry). 2Wire would have this Court disregard the specifically claimed improvement to bonded transceivers, including bonded transceivers that are capable of utilizing transmission parameter values to reduce differential latency ("utilizing at least one transmission parameter value to reduce a difference in latency between the bonded transceivers"), where the transceivers operate at different data rates (data rate for a first of the bonded transceivers is different than a data rate for a second of the bonded transceivers), and use certain specific transmission parameters to achieve the result (a Reed Solomon Coding parameter value, an interleaving parameter value, a coding parameter value, a codeword size value or a framing parameter value). This Court, however, has warned against using such a high level of abstraction. *See Olympus Corp. v. Maxwell, Ltd.,* No. 18-cv-216-MN, 2018 WL 5962471, at *6 n. 3 (D. Del. Nov. 14, 2018) (citing *Enfish* stating that "describing the claims at such a high level of abstraction and untethered from the language of the claims all but ensures that the exceptions to § 101 swallow the rule."). The level of abstraction that 2Wire urges this Court to adopt is plainly not consonant

with the level of abstraction or lack thereof expressed in the claims.  The Court should decline 2Wire's invitation to improperly "describe[e] the claims at such a high level of abstraction and untethered from the language of the claims." *See Enfish*, 822 F.3d at 1337.

Dr. Jacobsen's compares the asserted claims to air traffic control. Ex. 5 (Jacobsen Op. Rpt.), at ¶ 119.  This is irrelevant to any invalidity question because air traffic control is not analogous art.  But in any event, whether the claims are directed to patent-eligible subject matter does not turn on anticipation or obviousness. *See, e.g., Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, No. 14-cv-1006-RGA, 2016 WL 4373698, at *4 (D. Del. Aug. 15, 2016) (stating that "[t]he novelty and nonobviousness of the claims under §§ 102 and 103 does not bear on whether the claims are directed to patent-eligible subject matter under § 101."); *Diamond*, 450 U.S. at 190 ("[T]he question of whether a particular invention is novel is wholly apart from whether the invention falls into a category of statutory subject matter.").

Based on the foregoing, claims 17 and 18 are not directed to an abstract idea.

## 2. The Family 2 Patent Claims Include Additional Transformative Inventive Concepts

Step two of *Alice* should not even be reached because 2Wire failed to satisfy step one. *See Enfish* 822 F.3d at 1339.  Nevertheless, even if 2Wire had shown that the asserted claims were directed to an abstract idea, the claims are still patent-eligible under step two of the *Alice* test.  Step two of *Alice* requires that the Court uphold patent-eligibility if the limitations of the subject claims "taken together as an ordered combination. . . recite an invention that is not merely the routine or conventional use of the [underlying technology]" and that is sufficiently specific so as to negate the risk of preemption. *DDR Holdings, LLC*, 773 F.3d at 1259.

As an initial matter, instead of considering the asserted claims as an ordered combination, as commanded by the Federal Circuit, Dr. Jacobsen picks the limitations apart and analyzes each

of them in isolation.  Presumably, Dr. Jacobsen does this because, when considered as an ordered combination, it is apparent that the claims do not recite "merely the routine or conventional use of" a multicarrier transceiver, which is to transmit and receive data.  Instead, the claims recite improvements to bonded transceivers.

Dr. Jacobsen contends that "selecting settings for a transceiver is a conventional task" (Ex. 5 (Jacobsen Op. Rpt.), at ¶ 126) and that "claims 17 and 18 of the '881 patent. . . do not solve any specific problem with respect to the operation of the bonded transceivers simply because each bonded transceiver employs a different rate." *Id.* at ¶ 127. To the contrary, bonded transceivers that utilize transmission parameter values to reduce the difference in their configuration latencies, reduce the buffering required at the transmitter and/or the receiver to account for otherwise potentially large differences in the latencies of the bonded lines.  This results in reduced buffering complexity and reduced memory size, which are both improvements to bonded transceivers.

The asserted claims therefore recite additional inventive limitations that cover significantly more than "the use of settings such as 'transmission parameters' to set or adjust delay," as Dr. Jacobsen contends.  *Id.* at ¶ 128.   Accordingly, the asserted claims are not patent ineligible under Section 101.

### E.    Summary Judgment Should Be Granted That 2Wire Cannot Prove That Claims 17 and 18 are Invalid Under Any Paragraph of 35 U.S.C. § 112

Claim 17 of the '881 patent recites *inter alia* "each bonded transceiver utilizing a transmission parameter to reduce a difference in latency between the bonded transceiver."  And although 2Wire's Expert argues that this element of claim 17 renders claim 17 invalid under separate provisions of 35 U.S.C. § 112 (*see* Ex. 5 (Jacobsen Op. Rpt.), at ¶¶ 132-148), every one of Dr. Jacobsen's arguments boils down to one argument:  that the '881 patent does not disclose

any way to reduce a difference in configuration latency other than by configuring all transmission parameters so that all transceivers have the same configuration latencies, thereby eliminating entirely any difference in configuration latency between the bonded transceivers. The Court has heard this argument before during the *Markman* hearing, when 2Wire sought to constrain the meaning of "reducing" to "minimizing." *See* D.I. 399 ("Markman Tr."), at pp. 53-57. The Court rejected the argument then and it should reject the various § 112 incarnations of that argument now.

### 1. Claims 17 and 18 are not indefinite under 35 U.S.C. § 112, ¶ 2

As an initial matter, 2Wire did not allege indefiniteness of this term during the 10-months-long claim construction process for Family 2.  On April 26, 2017, 2Wire's proposed construction of this term was as follows:

| "utilizing at least one transmission parameter value to reduce a difference in latency" / "utilizing at least one transmission parameter value . . . to reduce a difference in latency" | '881 patent, claim 17, 18; '706 patent, claim 2; '028 patent, claim 1 | "configuring at least one transmission parameter value to decrease a known difference in latency" |
|---|---|---|

Ex. 13 (Family 2 – Defendants' Disclosure of Claim Terms for Construction and Proposed Definitions) at p. 4.  By the time the parties submitted their Family 2 Patents Joint Claim Construction Chart on May 18, 2017, 2Wire had abandoned its attempt to construe the claim to require reduction of a known difference in latency.  But its new proposed construction also did not allege indefiniteness.  D.I. 294-1 at 3 of 5.  When the Court issued its opinion on claim construction for the '881 patent on February 7, 2018 (D.I. 486), 2Wire did not seek reconsideration.  In view of the foregoing, 2Wire has waived any assertion of indefiniteness.

To the extent the Court allows 2Wire's late indefiniteness assertion, it should find that 2Wire has not proven the claim to be indefinite by clear and convincing evidence.

The Supreme Court has "read § 112, ¶ 2 to require that a patent's claims, viewed in light of the specification and prosecution history, inform those skilled in the art about the scope of the invention with reasonable certainty." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 910 (2014).

As an initial matter, it is irrefutable that claims 17 and 18 present no "zone of uncertainty." Claim 17 recites *inter alia* "each bonded transceiver utilizing at least one transmission parameter to reduce a difference in latency between the bonded transceivers," which was construed to mean "[each bonded transceiver] utilizing at least one transmission parameter value to reduce a difference in configuration latency between the bonded transceivers." Ex. 1 ('881 Patent), at claim 17. Accordingly, this claim limitation is infringed if a product is configurable to bond transceivers where each transceiver uses at least one transmission parameter value that reduces a difference in configuration latency between the bonded transceivers. If a product with bonded transceivers, however, allows its transceivers to use any transmission parameter values irrespective of the difference in latency that may result, the claim would not be infringed.

Dr. Jacobsen makes two arguments with regards to indefiniteness. First, Dr. Jacobsen contends that "[t]o 'reduce a difference in latency' necessarily requires a comparison of the reduced latency difference against some baseline latency difference" and "there is no configuration latency difference between two transceivers than can be known or determined until those two transceivers have been configured, i.e., until the initialization procedure has been substantially completed. . . " Ex. 5 (Jacobsen Op. Rpt.), at ¶¶ 133-134. This is an attempted

repackaging of 2Wire's April 26, 2017 initial proposed claim construction for this term, which was "configuration at least one transmission parameter value to decrease a *known* difference in latency." Ex. 13 (Family 2 – Defendants' Disclosure of Claim Terms for Construction and Proposed Definitions) at p. 4 (emphasis added). But, as discussed above, this position was abandoned. *Compare id. with* D.I. 294-1 at 3 of 5. This abandoned construction was intended to require exactly what Dr. Jacobsen is currently arguing – that the transceivers each must substantially complete an initialization process using a first set of transmission parameters at which point a known difference in configuration latency can be observed and then this known difference has to be subsequently reduced by selecting and using a second set of transmission parameters. Ex. 5 (Jacobsen Op. Rpt.), at ¶ 134. The reason this proposed construction had to be abandoned is because the example embodiment does not operate this way. Rather, in the example embodiment, the bonded transceivers are first initialized using transmission parameters that are selected to reduce a difference in configuration latency.

Dr. Jacobsen does not dispute that the example embodiment uses transmission parameters in the first instance that are selected to reduce the difference in latency. She argues, instead, that it is only by reducing differential latency to zero that one would know that the difference has been reduced.[3] Ex. 5 (Jacobsen Op. Rpt.), at ¶ 135 (Dr. Jacobsen arguing that "[t]he specification of the '881 patent does not disclose any way to reduce a difference in configuration latency other than by configuring all transceivers' transmission parameters so that all transceivers have the <u>same</u> configuration latencies, thereby eliminating entirely any difference in configuration latency between the bonded transceivers." (emphasis in original)). Based on her

---

[3] This is a repackaging of the proposed claim construction 2Wire argued and lost. The Court rejected 2Wire's proposal to construe this element as requiring minimization of the difference in latencies between bonded transceivers. *See* D.I. 486 at 16-17.

earlier assertion that "[t]o 'reduce a difference in latency' necessarily requires a comparison of the reduced latency difference against some baseline latency difference" (*id.* at ¶ 133), her logic must be that one knows that zero differential latency is a reduced latency because the differential latency could have been greater than zero but for the reduction.  And therein lies the "baseline latency difference" Dr. Jacobsen is looking for – the claim only requires that a difference in latency is reduced with respect to what it could have been.  It does not require that a difference in latency is reduced with respect to what it was once known to be.  The claim does not recite "to reduce a [known] difference in [already-existing] latency"; rather, the claim in view of the example embodiment is broad enough to include reducing the potential difference in latency.

Dr. Jacobsen recognizes that the specification discloses equations for determining transmission parameter that reduce the potential difference in configuration latency between the bonded transceivers to zero.  One such equation is:  $N1*D1/R1 = N2*D2/R2$, where N, D, and R are transmission parameters that impact configuration latency and "1" indicates that the parameter is for the first bonded transceiver in a group and "2" indicates that the parameter is for the second bonded transceiver in the group.  Ex. 1 ('881 patent) at 7:14.

Dr. Jacobsen nevertheless complains that "the patent does not disclose how to configure the transmission parameters in order to provide configuration latencies that are not identical." *See* Ex. 5 (Jacobsen Op. Rpt.), at ¶ 135.  Dr. Jacobsen's argument is without merit.  Dr. Jacobsen's POSITA – someone with a Ph.D in electrical engineering – will recognize that non-identical configuration latencies can be realized by adding an offset value to one side of the equation.  For example, in view of the teachings of the '881 specification, one of skill in the art would readily recognize that the difference in latency could be reduced to no more than 2 milliseconds by rewriting the equation above as $N1*D1/R1 = N2*D2/R2$ +/- (plus or minus) 2

milliseconds.  2Wire cannot prevail on its indefiniteness argument by ignoring the skillset of a POSITA.  *See Nautilus,* 572 U.S. at 908 ("Definiteness is measured from the viewpoint of a person skilled in [the] art at the time the patent was filed.")

The Court should grant TQ Delta's motion that the claims are not indefinite under 35 U.S.C. § 112, ¶ 2.

### 2.      Claims 17 and 18 are enabled

"To prove that a claim is invalid for lack of enablement, [2Wire] must show by clear and convincing evidence that a person of ordinary skill in the art would not be able to practice the claimed invention without 'undue experimentation.'" *Alcon Research Ltd. v. Barr Labs., Inc.,* 745 F.3d 1180, 1188 (Fed. Cir. 2014). "To evaluate whether the patent enables a person of ordinary skill in the art to practice the invention without undue experimentation, courts consider a non-exclusive list of items, often referred to as the *Wands* factors: '(1) the quantity of experimentation necessary, (2) the amount of direction or guidance presented, (3) the presence or absence of working examples, (4) the nature of the invention, (5) the state of the prior art, (6) the relative skill of those in the art, (7) the predictability or unpredictability of the art, and (8) the breadth of the claims.'" *MagSil Corp. v. Seagate Tech.*, 764 F. Supp. 2d 674, 678 (D. Del. 2011) (citing *In re Wands*, 858 F.2d 731 (Fed.Cir.1988)), *aff'd sub nom.*, *MagSil Corp. v. Hitachi Glob. Storage Techs., Inc.*, 687 F.3d 1377 (Fed. Cir. 2012).

Dr. Jacobsen complains that "the '881 patent does not disclose any way to reduce a difference in configuration latency other than by configuring all transceivers' transmission parameters so that all transceivers will have the same configuration latency."  *See* Ex. 5 (Jacobsen Op. Rpt.), at ¶ 146.  Dr. Jacobsen's threadbare analysis, that is contained in three paragraphs of her Opening Report, is insufficient to demonstrate that "a person of ordinary skill in the art would not be able to practice the claimed invention without 'undue experimentation.'"

*See Alcon,* 745 F.3d at 1188.  Specifically, Dr. Jacobsen has not explained why a POSITA – someone with a Ph.D in electrical engineering – will be unable to realize non-identical configuration latencies by adding an offset value to one side of the disclosed equation, as discussed in the prior section.

### 3.    Claims 17 and 18 have written description support

"In determining whether the written description requirement is met, [the court considers] 'whether the disclosure of the application relied upon reasonably conveys to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date.'" *ScriptPro LLC v. Innovation Assocs., Inc.*, 833 F.3d 1336, 1340 (Fed. Cir. 2016) (citing *Ariad Pharm., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (en banc)).

Dr. Jacobsen complains that "[t]he written description and drawings do not disclose and do not provide any guidance regarding how to reduce, without eliminating entirely, a difference in configuration latency between the bonded transceivers."  *See* Ex. 5 (Jacobsen Op. Rpt.), at ¶ 141.  A specification "need only reasonably convey to one skilled in the art that [the inventor] had possession of *at least one* embodiment that meet the [claim construction]." *Tobinick v. Olmarker,* 753 F.3d 1220, 1227 (Fed. Cir. 2014) (emphasis in original). There is no question that the specification of the '881 patent describes an exemplary embodiment where transmission parameters are selected to reduce a difference in configuration latency.  2Wire's complaint is really that all possible embodiments are not explicitly described.  But, the provided equation is "a definite way" to reduce differential latency and, as explained in the prior sections, one skilled in the art will immediately recognize that transmission parameters can be selected such that differences in latencies can be reduced using the teachings of the disclosure without reducing the difference to zero.

Summary judgment should be entered in favor of TQ Delta. *See PowerOasis, Inc. v. T–Mobile USA, Inc.*, 522 F.3d 1299, 1307 (Fed. Cir. 2008) ("Compliance with the written description requirement is a question of fact but is amenable to summary judgment in cases where no reasonable fact finder could return a verdict for the nonmoving party.").

## V.    CONCLUSION

For all the stated reasons, this Court should grant summary judgment that 2Wire cannot, as a matter of law, demonstrate that claims 17 and 18 of the '881 patent are invalid.


DATED:  February 19, 2019                    Respectfully submitted,

                                             FARNAN LLP

                                             /s/ Michael J. Farnan
                                             Brian E. Farnan (Bar No. 4089)
                                             Michael J. Farnan (Bar No. 5165)
                                             919 North Market Street, 12th Floor
                                             Wilmington, Delaware  19801
                                             (302) 777-0300
                                             (302) 777-0301 (Fax)
                                             bfarnan@farnanlaw.com

                                             Peter J. McAndrews (admitted *pro hac vice*)
                                             Thomas J. Wimbiscus (admitted *pro hac vice*)
                                             James P. Murphy (admitted *pro hac vice*)
                                             Paul W. McAndrews (admitted *pro hac vice*)
                                             Anna M. Targowska (admitted *pro hac vice*)
                                             Rajendra Chiplunkar (admitted *pro hac vice*)
                                             MCANDREWS, HELD & MALLOY, LTD.
                                             500 West Madison Street, 34th Floor
                                             Chicago, Illinois  60661
                                             (312) 775-8000
                                             (312) 775-8100 (Fax)
                                             pmcandrews@mcandrews-ip.com

                                             *Counsel for Plaintiff TQ Delta, LLC*