**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| TQ DELTA, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No.  13-cv-1835-RGA |
| | ) | |
| v. | ) | |
| | ) | |
| 2WIRE, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**TQ DELTA'S MOTION FOR RECONSIDERATION OR CERTIFICATION FOR
INTERLOCUTORY APPEAL UNDER 28 U.S.C. §1292(b) OF
THE COURT'S APRIL 25, 2019 MEMORANDUM OPINION**

Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
FARNAN LLP
919 North Market Street, 12th Floor
Wilmington, Delaware 19801
(302) 777-0300
(302) 777-0301 (Fax)
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Peter J. McAndrews (admitted *pro hac vice*)
Thomas J. Wimbiscus (admitted *pro hac vice*)
James P. Murphy (admitted *pro hac vice*)
Paul W. McAndrews (admitted *pro hac vice*)
Anna M. Targowska (admitted *pro hac vice*)
Rajendra Chiplunkar (admitted *pro hac vice*)
MCANDREWS, HELD & MALLOY, LTD.
500 West Madison Street, 34th Floor
Chicago, Illinois  60661
(312) 775-8000
(312) 775-8100 (Fax)
pmcandrews@mcandrews-ip.com

*Counsel for Plaintiff TQ Delta, LLC*

# TABLE OF CONTENTS

I. INTRODUCTION .......... 1

II. LEGAL STANDARD .......... 2

III. ARGUMENT .......... 3

A. The Court's Construction Improperly Recasts Claim 19 As A Method Claim .......... 3

B. The Court's Ruling That Infringement Of Claim 19 Requires Use Of The Device Lacks Support In The Law .......... 5

C. The Court's New Construction Contradicts The Court's Previous Order During Claim Construction .......... 7

IV. IN THE ALTERNATIVE, TQ DELTA REQUESTS CERTIFICATION OF THE ORDER FOR ITNERLOCUTORY APPEAL .......... 10

V. CONCLUSION .......... 10

**TABLE OF AUTHORITIES**

**Cases**

*Ball Aerosol & Specialty Container, Inc. v. Ltd Brands, Inc.*,
   555 F.3d 984 (Fed. Cir. 2009) ............................................................................................... 6

*Fantasy Sports Props., Inc. v. Sportsline.com, Inc.*,
   287 F.3d 1108 (Fed.Cir.2002) ............................................................................................... 3

*Finjan, Inc. v. Secure Computing Corp.*,
   626 F.3d 1197 Fed. Cir. 2010) ........................................................................................... 2, 7

*Fujitsu Ltd. v. Netgear Inc.*,
   620 F.3d 1321 (Fed. Cir. 2010) ............................................................................................. 6

*Hewlett-Packard Co. v. Bausch & Lomb, Inc., Inc.*,
   909 F.2d 1464 (Fed. Cir. 1990) ............................................................................................. 2

*HTC Corp. v. IPCom GmbH & Co., KG*,
   667 F.3d 1270 (Fed. Cir. 2016) ............................................................................................. 2

*Intel Corp. v. U.S. Int'l Trade Comm'n*,
   946 F.2d 821 (Fed. Cir. 1991) ........................................................................................... 2, 7

*M2M Solutions LLC v. Motorola Solutions, Inc.*,
   No. 12-CV-00033-RGA, 2016 WL 70814 (D. Del. Jan. 6, 2016)........................................... 7

*Mastermine Software, Inc. v. Microsoft Corp.*,
   874 F.3d 1307 (Fed. Cir. 2017) ..................................................................................... passim

*Max's Seafood Cafe by LouAnn, Inc. v. Quinteros*,
   176 F.3d 669 (3d Cir. 1999) .................................................................................................. 1

*Microprocessor Enhancement Corp. v. Texas Instruments Inc.*,
   520 F.3d 1367 (Fed. Cir. 2008) ..................................................................................... 2, 5, 7

*Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*,
   563 F.3d 1358 (Fed. Cir. 2009) ............................................................................................. 7

*Silicon Graphics, Inc. v. ATI Techs., Inc.*,
   607 F.3d 784 (Fed. Cir. 2010) ............................................................................................ 3, 4

*St. Clair Intellectual Property Consultants Inc. v. LG Electronics Inc., et al.*,
   No. 1:06-CV-00404-JJF-LPS (D. Del. March 28, 2010)...................................................... 10

**Statutes**

28 U.S.C. §1292(b) .................................................................................................................. 1, 10

35 U.S.C. §271 ............................................................................................................................. 3

**Rules**

Fed. R. Civ. P. 59(a) ..................................................................................................................... 1

Fed. R. Civ. P. 59(e) ..................................................................................................................... 1

**I.    INTRODUCTION**

Pursuant to D. Del. LR 7.1.5 and Fed. R. Civ. P. 59(a) and (e), Plaintiff TQ Delta, LLC ("TQ Delta") moves for reconsideration of the Court's April 25, 2019 Memorandum Opinion on 2Wire's Motion for Summary Judgment ("April 2019 Opinion") (D.I. 1106).[1] A court may alter or amend a judgment if the movant demonstrates a need to correct a clear error of law or fact or to prevent manifest injustice. *See Max's Seafood Cafe by LouAnn, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999). The Court should reconsider and amend its April 2019 Opinion because the Court made clear errors of law or apprehension when construing claim 19 of the '473 patent. In the alternative, TQ Delta requests that the Court certify the April 2019 Opinion and its Order (D.I. 1108) for interlocutory appeal pursuant to 28 U.S.C. §1292(b). Certification is appropriate in this case because the Court's new claim construction is a "controlling question of law" about which there is a "substantial ground for difference of opinion" and appeal of the Order may "materially advance the ultimate termination of the litigation." 28 U.S.C. §1292(b).

The Court ruled that "the 'multicarrier communication transceiver' clause of claim 19 requires only that the apparatus is configured in a certain way," but that "[t]he 'memory' clause. . . requires that the memory has been allocated in accordance with a message received during initialization." D.I. 1106 at p. 16. The Court then concluded that "[i]t is undisputed that such an allocation does not occur until the accused devices are in the hands of an end user." *Id.* Based on this reasoning, the Court concluded that "the accused products do not directly infringe claim 19 of the '473 Patent when they are made or sold by Defendant." *Id.* TQ Delta respectfully submits that, by holding that direct infringement only occurs when the allocation of memory is actually <u>performed</u>, the Court improperly recast claim 19 as a method claim. That was a clear error

---

[1] All citations herein to Docket Items (D.I.) are to Case No. 13-cv-01835-RGA.

1

of law because claim 19 is an apparatus claim, and apparatus claims – including those with functional language - do not require use before direct infringement occurs. Neither 2Wire nor the April 2019 Opinion cite any law to the contrary.

The April 2019 Opinion is also directly contrary to, and thus the Court may have overlooked, its prior holdings in this case that (1) claim 19 is not indefinite as a mixed apparatus and method claim; (2) "[t]he parties agree that the claims at issue do not 'claim activities performed by the user'"; and (3) "the claims at issue use 'functional language' that describes the transceiver structure's memory allocating capabilities." *See* D.I. 445 (Memorandum Opinion on F3 Claim Construction, "CCO") at pp. 15-20. TQ Delta respectfully submits that the Court's new construction is incorrect.

## II.  LEGAL STANDARD

"[A]pparatus claims cover what a device *is,* not what a device *does.*" *Hewlett-Packard Co. v. Bausch & Lomb, Inc., Inc.,* 909 F.2d 1464, 1468 (Fed. Cir. 1990). "[T]o infringe a claim that recites capability and not actual operation, an accused device 'need only be capable of operating' in the described mode." *Finjan, Inc. v. Secure Computing Corp.,* 626 F.3d 1197, 1204 Fed. Cir. 2010) (citing *Intel Corp. v. U.S. Int'l Trade Comm'n,* 946 F.2d 821, 832 (Fed. Cir. 1991)). When "the claims merely use permissible functional language to describe the capabilities of the claimed system, it is clear that infringement occurs when one makes, uses, offers to sell, or sells the claims system." *Mastermine Software, Inc. v. Microsoft Corp.,* 874 F.3d 1307 (Fed. Cir. 2017); *see also HTC Corp. v. IPCom GmbH & Co., KG,* 667 F.3d 1270 (Fed. Cir. 2016). In contrast, direct infringement of a method claim "is clearly limited to practicing the claimed method." *See MEC v. Texas Instruments Inc.,* 520 F.3d 1367, 1370-71, 1375 (Fed. Cir. 2008).

"In addition to the actual use of the product described, infringement of an apparatus claim occurs when the invention is, among other things, made or sold in the United States." *Silicon*

*Graphics, Inc. v. ATI Techs., Inc.,* 607 F.3d 784, 794 (Fed. Cir. 2010) (*citing* 35 U.S.C. §271). "Thus, even absent its use (or performance), this court has held that an apparatus claim directed to a computer that is claimed in functional terms is nonetheless infringed so long as the product is designed 'in such a way as to enable a user of that [product] to utilize the function. . . without having to modify [the product].'" *Id.* (*citing Fantasy Sports Props., Inc. v. Sportsline.com, Inc.,* 287 F.3d 1108, 1118 (Fed.Cir.2002)).

**III.    ARGUMENT**

**A.    The Court's Construction Improperly Recasts Claim 19 As A Method Claim**

Claim 19 of the '473 patent reads as follows:

19. An apparatus comprising:

> a multicarrier communications transceiver that is configured to perform an interleaving function associated with the first latency path and perform a deinterleaving function associated with a second latency path, the multicarrier communications transceiver being associated with a memory,
>
> wherein the memory is allocated between the interleaving function and the deinterleaving function in accordance with a message received during an initialization of the transceiver and wherein at least a portion of the memory may be allocated to the interleaving function or the deinterleaving function at any one particular time depending on the message.

It is undisputed that claim 19 is an apparatus claim. But, in its April 2019 Opinion, the Court incorrectly transformed claim 19 such that, rather than covering an apparatus, it now covers structures and method steps that must be performed by a user of the product. The Court distinguished claim 19's "multicarrier communications transceiver" clause from its "wherein" clause, stating that the former "requires only that the apparatus is *configured in a certain way*," whereas the latter "requires that the memory *has been allocated* in accordance with a message received during initialization." D.I. 1106 at p. 16. But this distinction is not grounded in the claim language. The term "wherein" means "in which," and thus in context "wherein the memory is

allocated. . ." is clearly associated with and understood to describe permissible functional terms of the transceiver and its associated memory.

The Court's new construction, nevertheless, treats the "wherein" clause as a method step and requires the claimed apparatus to actually have performed the recited functionality rather than requiring that the apparatus be capable of performing the functionality. Such a construction is a clear error of law. Claim 19 is not a method claim (nor does the Court state that it is a method claim). As such, the claim does not require that the functional language "wherein the memory is allocated between the interleaving function and the deinterleaving function in accordance with a message received during initialization of the transceiver" actually be performed for infringement.

Claim 19 is an apparatus claim with permissible functional limitations, and as such, an accused product infringes claim 19 if its transceiver is configured with the necessary hardware and software to make it capable of "allocating memory between the interleaving function and the deinterleaving function in accordance with a message received during an initialization." Direct infringement of claim 19 "occurs when one makes, uses, offers to sell, **or** sells the claimed system." *Mastermine,* 874 F.3d at 1316 (emphasis added). "In addition to the actual use of the product described, infringement of [claim 19] occurs when the invention is, among other things, made or sold in the United States." *Silicon Graphics,* 607 F.3d at 794. "Thus, even absent its use (or performance). . . claim [19] directed to a [transceiver] that is claimed in functional terms is nonetheless infringed so long as the product is designed 'in such a way as to enable a user of that [product] to utilize the function. . . without having to modify [the product].'" *Id.* TQ Delta has pointed to overwhelming evidence that each accused product, as sold and offered for sale by 2Wire, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

4

██████████████ The fact that the accused products are so configured alone establishes that they are covered by claim 19. Direct infringement therefore occurs (at least) when 2Wire sells or offers to sell the accused products.

As TQ Delta explained in its April 15, 2019 Letter to the Court, there is a significant difference between direct infringement of a *method* claim and direct infringement of an *apparatus* claim. *See* D.I. 1081 at p. 2 (citing *MEC,* 520 F.3d at 1370-71, 1375). In *MEC,* the Federal Circuit examined the scope of direct infringement of two claims, one of which was a method claim and the other an apparatus claim. Regarding the <u>method claim</u>, the Federal Circuit stated that "[d]irect infringement of claim 1 is clearly limited to *practicing* the claimed method in a pipelined processor possessing the requisite structure." *Id.* In contrast, regarding the <u>apparatus claim</u>, the Federal Circuit stated that infringement "is clearly limited to a pipelined processor possessing the recited structure and capable of performing the recited functions . . . ." *Id*. The April 2019 Opinion does not address this distinction.

Since the Court has already ruled that claim 19 is not indefinite as a mixed method and apparatus claim (D.I. 445 at pp. 15-20), it is clear error for the Court to now hold that claim 19, *an apparatus claim,* is only infringed when the functional language is actually performed by the device or a user. Notably, neither 2Wire nor the Court point to any law that would require that an accused device actually perform the claimed functionality of which it is capable before direct infringement of an apparatus claim is found to have occurred.

**B.    The Court's Ruling That Infringement Of Claim 19 Requires Use Of The Device Lacks Support In The Law**

In its April 2019 Opinion, the Court states that "[i]t is undisputed that such an allocation [of memory] does not occur until the accused devices are in the hands of an end user." D.I. 1106 at p. 16 (*citing* D.I. 754 (2Wire's Op. SJ Non-Infringement) at p. 18, D.I. 893 (TQ Delta's Oppn.

5

SJ Non-Infringement) at pp. 18-20). But as TQ Delta explained, it does not matter *when* the allocation of memory occurs because all that is required to show infringement is that the products are configured such that they are capable of performing the recited functionality. The Court seems to rely exclusively on 2Wire's argument that "[a] person of ordinary skill in the art. . . would understand that the memory cannot be allocated as recited in claim 19 until after the transceiver has received the O-PMS message, which requires the transceiver to be connected to a subscriber line with a VTU-O on the service provider's end of the line." D.I. 754 at p. 18 (*citing* D.I. 775 (Jacobsen Decl. at ¶¶250-251, 317)). But again, this is irrelevant for purposes of infringement. 2Wire does not and cannot deny that the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

2Wire has not cited a single case where a court found that infringement of an apparatus claim required actual performance of recited functional limitations by an accused product. In connection with the Family 2 claims, 2Wire tried to do just that, but failed to identify such a case. *See* D.I. 853 (2Wire Oppn. SJ Infringement F2) at pp. 8-9 (citing *Fujitsu Ltd. v. Netgear Inc.,* 620 F.3d 1321, 1329 (Fed. Cir. 2010); and *Ball Aerosol & Specialty Container, Inc. v. Ltd Brands, Inc.,* 555 F.3d 984, 994 (Fed. Cir. 2009)). As TQ Delta explained then, 2Wire's cited cases are inapposite and 2Wire's argument mischaracterizes the Federal Circuit precedent regarding infringement of apparatus claims. *See* D.I. 925 (TQ Delta's Reply Memorandum ISO Summary Judgment Infringement) at p. 9. First, the claims at issue in *Fujitsu* and *Ball Aerosol* were <u>method claims</u> not <u>apparatus claims</u> and therefore, both of these cases are inapplicable to claim 19, an apparatus claim. As this Court has explained in an analogous case, when the patent-in-suit

"contains apparatus claims with functional limitations. . . reliance on *Fujitsu* and *Ball Aerosol*, where the courts made initial determinations that the language at issue claimed method steps and an apparatus claim without any functional limitations, respectively, is unpersuasive." *M2M Solutions LLC v. Motorola Solutions, Inc.,* No. 12-CV-00033-RGA, 2016 WL 70814, at *6-*7 (D. Del. Jan. 6, 2016). This Court has never stated that claim 19 "claimed method steps and an apparatus claim without functional limitations," and in fact, this Court said quite the opposite, *i.e.,* that claim 19 claim "use[s] 'functional language' that describes the transceiver structure's memory allocating capabilities." *See* D.I. 445 at p. 20. Second, 2Wire's argument wholly ignores the long line of Federal Circuit cases which considered the functional language in an apparatus claim and required only that an accused product possess the capability of performing the recited function for purposes of infringement. *See Mastermine,* 874 F.3d at 1316; *Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*, 563 F.3d 1358, 1369-70 (Fed. Cir. 2009); *MEC*, 520 F.3d at 1375; *Finjan,* 626 F.3d at 1204-05; *Intel,* 946 F.2d at 832.

Apparently recognizing the flaw in its Family 2 strategy, 2Wire does not cite to single case that would explain why actual operation of the accused product is required for infringement of claim 19, an apparatus claim. *See* D.I. 754 (2Wire Op. SJ Non-Infringement) at pp. 17-18; D.I. 880 (2Wire Oppn. SJ Infringement) at pp. 8-9; D.I. 961 (2Wire Reply SJ Non-Infringement) at p. 7. Moreover, the Court's Memorandum Opinion does not address any of the law that TQ Delta cited in its April 15, 2019 letter addressing this issue. Thus, the Court's conclusion in its April 2019 Opinion that "the accused products do not directly infringe claim 19 of the '473 Patent when they are made or sold by Defendant," is unsupported by the law.

    **C.**    **The Court's New Construction Contradicts The Court's Previous Order During Claim Construction**

In its Family 3 CCO, the Court held that claim 19 of the '473 patent was not indefinite as

7

a mixed apparatus and method claim. D.I. 445 at p. 20. In so holding, the Court stated:

> [T]wo types of system and apparatus claims [that] are indefinite under *IPXL Holdings*. First, system and apparatus claims are indefinite if they also 'claim activities performed by the user.' *Mastermine Software, Inc. v. Microsoft Corp.*, 874 F.3d 1307, 1316 (Fed. Cir. 2017). Even if a claim 'make[s] reference to user' action, it is indefinite only if it 'explicitly claim[s] the user's act,' and not if it claims only 'the system's capability to receive and respond to user' action. *Id.* Second, system and apparatus claims are indefinite if they use 'functional language' that is not 'specifically tied to structure,' but instead 'appear[s] in isolation.' *Id.*
>
> The parties agree that the claims at issue do not 'claim activities performed by the user.' (Tr. at 117:1-8). They dispute only whether the claims' 'functional language' appears 'in isolation' or 'is specifically tied to structure.' *Id.*

D.I. 445 at pp. 17-18. The Court's CCO elucidates two important points: (1) "that the claims at issue do not 'claim activities performed by the user,'" and (2) that the claims are not indefinite for claiming functional language because the functional language "describes the transceiver structure's memory allocating abilities." *Id.* These findings were dispositive of the present dispute.

The Court's CCO is contradicted by its April 2019 Opinion, which states:

> The memory clause. . . requires that the memory has been allocated in accordance with a message received during initialization. A device does not meet every limitation of the claim, and is therefore noninfringing, until that point. It is undisputed that such an allocation [of memory] does not occur until the accused devices are in the hands of an end user. [ ] Thus, the accused products do not directly infringe claim 19 of the '473 Patent when they are made or sold by Defendant.

D.I. 1106 at p. 16. This suggests that the Court has changed its prior finding and now believes that claim 19 *claims activities performed by, or depend upon, a user.* This is not only incorrect and contrary to 2Wire's concession, but it also eliminates the infringement theory TQ Delta pursued.

TQ Delta developed its case to show that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Testing of the accused products show that ▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████ There is nothing required of a user that gives the accused products the necessary capability to infringe. Nevertheless, the Court is now requiring TQ Delta to prove that the accused products are used (which case law says can be implied), turning a clear case of direct infringement into a far more difficult case of indirect infringement where intent must be proven. Having prepared a direct infringement case for claim 19 of the '473 patent, TQ Delta cannot now proceed to trial on an indirect infringement theory.

The Court's new construction reverts back to 2Wire's claim construction position that it already rejected.[2] As the Court originally (and correctly) explained, claim 19 uses "functional language that describes the transceiver structure's memory allocating capabilities." D.I. 445 at p. 20 (underlining added). A transceiver and associated memory that are capable of allocating memory in accordance with a message as claimed infringes claim 19 regardless of whether the transceiver is used in a particular way. Therefore, direct infringement of claim 19 at least occurs when 2Wire sells the accused products. The Court's April 2019 ruling that claim 19 requires that the transceiver actually perform memory allocation before direct infringement occurs is legally erroneous and contrary to the Court's prior opinion.

---

[2] During claim construction, 2Wire argued that "the claim language requires a step to be performed after a message is received, an 'element of sequence' which indicates a method is claimed in conjunction with the claimed transceiver." D.I. 445 at pp. 19-20 (citing Tr. at 115:6-11).

### IV. IN THE ALTERNATIVE, TQ DELTA REQUESTS CERTIFICATION OF THE ORDER FOR ITNERLOCUTORY APPEAL

In the alternative, the TQ Delta requests certification of the claim construction issue for interlocutory appeal under 28 U.S.C. §1292(b). Certification is appropriate when the order involves a "controlling question of law" about which there is a "substantial ground for difference of opinion" and the appeal may "materially advance the ultimate termination of the litigation." 28 U.S.C. §1292(b). Claim construction is a controlling question of law and, because existing case law does not support finding that an apparatus claim is only directly infringed through use of the apparatus, there is a substantial ground for difference of opinion. *See St. Clair Intellectual Property Consultants Inc. v. LG Electronics Inc., et al.,* No. 06-CV-00404-JJF-LPS, D.I. 528 (D. Del. March 29, 2010) ("The proper construction of the disputed terms in the. . . patents is a controlling question of law as to which there is a substantial ground for difference of opinion."). Direct infringement of claim 19 rises and falls based on the Court's new claim construction. As such, the appeal will materially advance the ultimate termination of the litigation.

### V. CONCLUSION

TQ Delta respectfully requests that the Court reconsider the portions of its April 19 Opinion directed to claim 19 of the '473 patent that construed the "wherein the memory is allocated. . ." clause, granted summary judgment of no direct infringement, and denied TQ Delta's motion for summary judgment of infringement. Alternatively, TQ Delta requests that the Court certify these issues for appeal.

Dated: May 3, 2019

Respectfully submitted,

FARNAN LLP

 /s/ Brian E. Farnan
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 North Market Street, 12th Floor
Wilmington, Delaware 19801
(302) 777-0300
(302) 777-0301 (Fax)
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Peter J. McAndrews (admitted *pro hac vice*)
Thomas J. Wimbiscus (admitted *pro hac vice*)
Paul W. McAndrews (admitted *pro hac vice*)
Anna M. Targowska (admitted *pro hac vice*)
Rajendra A. Chiplunkar (admitted *pro hac vice)*
MCANDREWS, HELD & MALLOY, LTD.
500 West Madison Street, 34th Floor
Chicago, Illinois 60661
(312) 775-8000
(312) 775-8100 (Fax)
pmcandrews@mcandrews-ip.com

*Counsel for Plaintiff TQ Delta, LLC*