

March 8, 2021

<u>VIA E-File</u>
The Honorable Richard G. Andrews
United States District Judge
J. Caleb Boggs Federal Building
844 N. King Street
Wilmington, DE 19801-3555

   **Re:** *TQ Delta, LLC v. 2Wire, Inc.*
      <u>C.A. No. 13-cv-1835-RGA</u>

Dear Judge Andrews:

TQ Delta respectfully submits this letter to request an order regarding two important issues that will facilitate the ultimate resolution of the present case against 2Wire.   TQ Delta recently requested that 2Wire agree to provide (1) supplemental unit and dollar sales information for the accused products through current and (2) 2Wire's contention regarding whether any new versions of the accused products were sold that are materially different from the accused products that were adjudicated to infringe in the May 2019 and January 2020 trials (e.g., due to a firmware update that includes a substantial change to infringing functionality).  This information will advance the present case by using available time to complete inevitable discovery, provide a more fulsome view of 2Wire's damages, identify whether any new triable liability issues exist for updated products, and facilitate potential settlement.  The parties met and conferred on February 18, 2021 and were unable to reach agreement on these matters.

**<u>Updating Sales of Accused Products (last done through Q2 2017)</u>**

First, TQ Delta asks for an order that 2Wire update its unit and dollar sales information for the accused products.  2Wire last updated its sales through the second quarter of 2017—over three and one half years ago.

Given the long passage of time, TQ Delta does not have a full understanding of the amount of potential damages or the current mix of accused products.  Nor are projections necessarily helpful, as particular models of accused products may or may not include functionality relevant to a particular patent family, and the mix of accused products has changed over time.[1]

---

[1] One additional reason why projections are not helpful in the present case is that, on January 1, 2017, 2Wire was acquired and merged into another entity. *See* D.I. 1125 (2Wire corporate disclosure statement). The acquiring entity (or an affiliate of which) had already been selling its own line of DSL products under the ARRIS brand.  TQ Delta understands that 2Wire's accused products and the ARRIS-progeny line of DSL products were sold for a period of time in parallel but that the accused products may have been phased out down to zero in favor of the ARRIS-progeny DSL products.  Market research projections are unhelpful because they estimate total sales for the ultimate parent entity and do not distinguish between the accused products and ARRIS-progeny products.

2Wire argues that production of sales information for accused products sold after the second quarter of 2017 should be put-off indefinitely because no damages trial has been scheduled. But 2Wire's position fails to recognize that discovery of this information is inevitable because the accused products have already been adjudicated to infringe two of the asserted patent families (Families 2 and 3). Further delay will only serve to delay the ultimate resolution of the case. Providing this information now will also provide a fulsome view of potential damages for the 2Wire accused products, and thereby facilitate potential settlement.

Finally, the burden on 2Wire to update its unit and dollar sales information for the accused products is minimal, as it requires little more that running a report from a computer database and supplementing its response to a single interrogatory (TQ Delta Interrogatory No. 6).

TQ Delta therefore respectfully requests an order that 2Wire (1) produce supplemental sales information for the accused products at least through the end of the most recently completed fiscal quarter and (2) state whether there will be any additional sales of the accused products thereafter.

**Limited Contention Discovery Regarding Material Differences With The Adjudicated Infringing Accused Products**

Second, TQ Delta requests limited contention discovery regarding any purported material differences between the accused products sold through the second quarter of 2017 and those sold thereafter. This information is at least relevant to whether any post-Q2 2017 versions of the accused products (e.g., accused products with updated firmware) are, or are not, colorably different from the accused products already found to infringe the Family 2 and Family 3 patents ("Adjudicated Infringing Products"). (*See* D.I. 1186 (Family 3 verdict) and D.I. 1270 (Family 2 Verdict).) Precedent allows for damages for products that are not colorably different than products adjudicated to infringe. *See, e.*g., *XpertUniverse, Inc. v. Cisco Sys., Inc*., Case No. 09-cv-157, 2013 WL 6118447 at *10 (D. Del., Nov. 20, 2013) (applying a "not more than colorably different" test for new products not previously found to infringe); *cf. Apple Inc. v. Samsung Elecs. Co*., No. 12-CV- 00630-LHK, 2018 WL 905943, at *4 (N.D. Cal. Feb. 15, 2018) (applying two part test to newly accused products to assess the issue of ongoing royalties).

In view of the respective Family 2 and Family 3 jury verdicts *already* having found infringement and validity, the requested discovery is inevitable. *See, e.g., Creative Internet Advertising Corp. v. Yahoo! Inc.,*674 F.Supp.2d 847 (E.D. Tex. 2009) (holding that non-adjudicated products were properly included in the royalty base where those products used the same "logic" as the adjudicated infringing products); *see also Beijing Choice Elec. Tech. Co. v. Contec Med. Sys. USA Inc.*, No. 18 C 0825, 2020 WL 1701861 (N.D. Ill. Apr. 8, 2020) (allowing additional, post-claim construction discovery regarding supplemental damages claims including identifying additional model numbers of products using the infringing technology).

Limited discovery on the issue of colorable differences is best conducted now, during this available time window, as the Court has yet to set a schedule for the damages trial(s). This would allow for efficient use of the open schedule for the 2Wire case, as the Family 4 and 6 liability trials have been taken off calendar in view of concerns over COVID-19 and the damages trial is not yet on calendar. To the extent 2Wire contends that any post-Q2 2017 accused products are colorably

different, the parties can then analyze any factual support for such contention, attempt to resolve any dispute, and, if necessary, raise the dispute with the Court to determine whether it can be summarily resolved.

2Wire does not argue that the requested discovery is not necessary. Rather, 2Wire argues that the parties should put off this discovery until some unknown future date because the damages trial(s) are not yet scheduled. But 2Wire provides no reason why delaying this inevitable discovery would result in any efficiency. To the contrary, delaying this discovery would only serve to further delay the ultimate resolution of this long-pending case.

At bottom, there is no good reason to delay any dispute over the issue of colorable differences.

TQ Delta therefore seeks limited contention discovery as to (a) whether there are any new versions of the Accused Products (i.e., comprising any hardware/software/firmware/source code changes), (b) whether 2Wire contends that any such new versions of Accused Products are colorably different from the versions of the Accused Products that were found to infringe in the May 2019 and January 2020 trials, and, if so, (c) the bases for any contention that the new version does not infringe the asserted Family 2 and/or Family 3 patents as a result of any asserted colorable differences. In particular, TQ Delta respectfully requests that the Court order 2Wire to provide the following:

(1) supplementation of 2Wire's responses to Interrogatory Nos. 10 and 18 to identify any "Release Version" and "Modem Firmware Version" for the 5168N, 5168NV, 5268AC, 5031NV, i3812V, and 3801HGV beyond those identified in the table provided in 2Wire's current response to Interrogatory No. 18;

(2) identification of any material change to the hardware/software/firmware/source code of any of the Accused Products and/or their DSL chipsets and an explanation of how any such change amounts to a colorable difference when compared to the Accused Products adjudicated to infringe;

(3) documents and things showing any asserted material change to the hardware/software/firmware/source code of any of the Accused Products and/or their DSL chipsets; and

(4) identification of the 2Wire employees and other individuals (other than legal counsel) most knowledgeable regarding the foregoing.

Respectfully submitted,

/s/ Michael J. Farnan

Michael J. Farnan

cc: Counsel of Record (Via E-Filing)