IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

TQ DELTA, LLC,

               Plaintiff;

      v.                              Civil Action No. 13-1835-RGA

2WIRE, INC.,

               Defendant.

MEMORANDUM OPINION

Brian E. Farnan, Michael J. Farnan, FARNAN LLP, Wilmington, DE; Peter J. McAndrews, Paul
W. McAndrews, Rajendra A. Chiplunkar, Ashley M. Ratycz, MCANDREWS, HELD &
MALLOY, LTD., Chicago, IL,

Attorneys for Plaintiff.

Jody C. Barillare, MORGAN LEWIS & BOCKIUS LLP, Wilmington, DE; Brett Schuman,
Rachel M. Walsh, GOODWIN PROCTER LLP, San Francisco, CA; Douglas J. Kline,
GOODWIN PROCTER LLP, Boston, MA; Andrew S. Ong, GOODWIN PROCTER LLP,
Redwood City, CA; Cindy Chang, GOODWIN PROCTER LLP, New York, NY,

Attorneys for Defendant.

July 14, 2021

/s/ Richard G. Andrews
**ANDREWS, U.S. DISTRICT JUDGE:**

Before the Court is Defendant's motion to exclude the expert testimony of Dr. Todor Cooklev for Family 4. (D.I. 1464). I have considered the parties' briefing. (D.I. 1465, 1517, 1528).

## I.    BACKGROUND

Plaintiff TQ Delta filed suit against Defendant 2Wire alleging infringement of twenty-four patents that span six different patent families. (D.I. 6). The Court divided the case into separate trials based on the patent families. (D.I. 280). This motion concerns the Family 4 Patents, U.S. Patent Nos. 7,292,627 ("the '627 Patent"), 8,090,008 ("the '008 Patent"), and 8,073,041 ("the '041 Patent"). Plaintiff alleges infringement of Claim 26 of the '627 Patent, Claim 14 of the '008 Patent, and Claim 14 of the '041 Patent. The patents-at-issue are directed to a system and method for scrambling the phase characteristics of carrier signals.

## II.    LEGAL STANDARD

Federal Rule of Evidence 702 sets out the requirements for expert witness testimony and states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The trial court has the "task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharms. Inc.*, 509 U.S. 579, 597 (1993).

The Third Circuit has explained:

> Rule 702 embodies a trilogy of restrictions on expert testimony: qualification, reliability and fit. Qualification refers to the requirement that the witness possess specialized expertise. We have interpreted this requirement liberally, holding that "a broad range of knowledge, skills, and training qualify an expert." Secondly, the testimony must be reliable; it "must be based on the 'methods and procedures of science' rather than on 'subjective belief or unsupported speculation'; the expert must have 'good grounds' for his o[r] her belief. In sum, *Daubert* holds that an inquiry into the reliability of scientific evidence under Rule 702 requires a determination as to its scientific validity." Finally, Rule 702 requires that the expert testimony must fit the issues in the case. In other words, the expert's testimony must be relevant for the purposes of the case and must assist the trier of fact. The Supreme Court explained in *Daubert* that "Rule 702's 'helpfulness' standard requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility."

> By means of a so-called "*Daubert* hearing," the district court acts as a gatekeeper, preventing opinion testimony that does not meet the requirements of qualification, reliability and fit from reaching the jury.

*Schneider ex rel. Estate of Schneider v. Fried*, 320 F.3d 396, 404–05 (3d Cir. 2003) (footnote and internal citations omitted).[1] At base, "the question of whether the expert is credible or the opinion is correct is generally a question for the fact finder, not the court." *Summit 6, LLC v. Samsung Elecs. Co., Ltd.*, 802 F.3d 1283, 1296 (Fed. Cir. 2015). Indeed, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

---

[1] The Court of Appeals wrote under an earlier version of Rule 702, but the subsequent amendments to it were not intended to make any substantive change.

3

## III. ANALYSIS

Defendant moves to exclude Plaintiff's expert Dr. Cooklev's testimony and opinions relating to the testing of the Accused Products for two reasons: (1) Dr. Cooklev's tests are irrelevant to the question of infringement as the test results do not show how the Accused Products process a bit stream, and (2) Dr. Cooklev's opinions on the testing are unreliable because he did not perform or observe the tests. (D.I. 1465 at 1-2). [2]

### A. Dr. Cooklev's Tests Are Relevant

Defendant argues that Dr. Cooklev's opinions are not probative of infringement, and are therefore not relevant, because the tests on which the opinions are based do not show how the Accused Products process a bit stream. (*Id.* at 14).

Defendant argues that "at most" the tests "show that the Accused 2Wire CPE Products generate a signal during initialization that meets the requirements of the VDSL2 standard for that signal." (*Id.*). Defendant asserts that the tests "say nothing about **how** the Accused 2Wire CPE Products process the bit stream in the specific way set forth in the Asserted Claims, or in some other way." (*Id.*). Because the tests do not show this, Defendant maintains that "the Accused 2Wire CPE Products (and any other VDSL2-compliant CPE product) can produce the signal in any number of ways – including ways that do not infringe the Asserted Claims – as long as the output matches the phase-shifted coordinates set forth in Table 12-70." (*Id.* at 15). In other words, Defendant moves to exclude Dr. Cooklev's opinions as the "tests speak only to whether

---

[2] Defendant's motion requests exclusion of Dr. Cooklev's opinions "related to testing of 2Wire products TQ Delta accuses of infringing the [A]sserted [C]laims of the Family 4 Patents." (D.I. 1465 at 1). Upon review of his report, it appears that all of Dr. Cooklev's opinions relate to the testing of the Accused Products. (*See* D.I. 1476-5, Exh. U at 7 of 115). Thus, the Court understands Defendant's motion to move for exclusion of all of Dr. Cooklev's testimony and opinions.

4

the Accused 2Wire CPE Products comply with VDSL2 and not whether they process a bit stream in the specific manner claimed by the Asserted Claims." (*Id.* at 16).

Defendant also argues that Dr. Cooklev's testimony will confuse the jury and prejudice 2Wire. (*Id.*). Defendant maintains, "Given the extremely technical subject matter, the jury is highly likely to be confused by Dr. Cooklev's testimony and think he is saying the signal was created in a way that infringes the Asserted Claims." (*Id.*).

Plaintiff counters that Dr. Cooklev's opinions are relevant as "they provide evidence demonstrating that the Accused Products implement the mandatory quadrant scrambling operation specified in the VDSL2 standard and upon which the asserted claims read." (D.I. 1517 at 9). In Plaintiff's view, "Dr. Cooklev's Testing Opinions provide proof that the Accused Products in fact implement the quadrant scrambling operations of VDSL2." (*Id.* at 10).

It is undisputed that Dr. Cooklev is not testifying as to the infringement of the Accused Products. (D.I. 1479-3, Exh. C at 12 of 28; D.I. 1476-5, Exh. U at 6 of 115). Instead, Dr. Cooklev was tasked with determining the Accused Products' compliance with the VDSL2 standard. (*See* D.I. 1476-5, Exh. U at 40 of 115).

Dr. Cooklev performed a Phase Scrambling Test and a Phase Descrambling Test on each of the representative Accused Products. (*Id.* at 37 of 115). The purpose of these tests "was to collect data and analyze the data to determine whether or not the Accused Products perform phase scrambling, and phase descrambling, as set forth in the VDSL2 standard." (*Id.* at 40 of 115).

Based on the test results, Dr. Cooklev concluded that the Accused Products "perform phase scrambling in accordance with the VDSL2 standard," (*id.* at 52-57 of 115, 85-90 of 115) and that the Accused Products "descramble[] the . . . message in accordance with the VDSL2

5

standard." (*Id.* at 66-75 of 115, 101-06 of 115). These conclusions are relevant to Plaintiff's infringement theory that is based on the Accused Products' compliance with VDSL2.

Plaintiff's infringement expert, Dr. Vijay Madisetti, opines "the Asserted Claims cover the specific quadrant scrambler operations mandated by the VDSL2 standard and such coverage does not depend on minor implementation details such as the manner in which the computed amount of phase adjustment is represented internally by a device." (D.I. 1476-3, Exh. S at 33 of 99). Dr. Cooklev's test results and opinions are relevant to this theory of infringement as his tests "examined whether or not the Accused Products transmit and/or receive certain initialization messages by scrambling and/or descrambling the phases of each carrier signal using the quadrant scrambler in accordance with the VDSL2 standard." (D.I. 1476-5, Exh. U at 40 of 115).

Defendant's arguments for exclusion focus on the relevance of Dr. Cooklev's opinions, not their scientific validity. I conclude that Dr. Cooklev's opinions are relevant to the issues at hand as he opines that the Accused Products perform phase scrambling in compliance with the VDSL2 standard, which supports one of Plaintiff's infringement theories.

Defendant also puts forth an argument that admitting Dr. Cooklev's expert testimony will confuse the jury because of its "extremely technical subject matter." (D.I. 1465 at 16). However, it is not unusual for jurors, particularly in patent cases, to grapple with complicated and highly technical issues. *See SenoRx, Inc. v. Hologic, Inc.*, 920 F. Supp. 2d 565, 571 (D. Del. 2013). Therefore, this argument is not grounds for exclusion of Dr. Cooklev's opinions. "[T]he [C]ourt will not pre-judge the yet-unnamed jurors by assuming they are unable to digest the facts and law in this case." *Synopsys, Inc. v. Magma Design Automation*, 2006 WL 1452803, at * 4 (D. Del. May 25, 2006).

As Dr. Cooklev's testing and opinions are relevant to Plaintiff's infringement case, Defendant's motion to exclude for irrelevancy is denied.

## B. The Reliability of Dr. Cooklev's Opinions Can be Tested at Trial

Defendant contends that Dr. Cooklev's opinions on the testing of the Accused Products should be excluded because of his "general lack of knowledge surrounding the tests." (D.I. 1465 at 17). Defendant argues that because the tests were performed by TracGlobal, a laboratory in England, and because Dr. Cooklev had "almost no involvement in performing the tests," his opinions on the tests will be unreliable. (*Id.* at 17-19).

Plaintiff counters that Dr. Cooklev's opinions on the testing are reliable as he "provided every essential and necessary detail required to properly execute the testing in the detailed plans that he wrote." (D.I. 1517 at 15). Plaintiff argues that Dr. Cooklev provided detailed plans for the tests, visited TracGlobal prior to the testing to observe the test setup, and performed quality checks on the testing setup. (*Id.* at 14-15). Plaintiff asserts that Defendant's "criticisms regarding Dr. Cooklev's involvement in the testing . . . are, at best, an issue for cross examination, not a basis for exclusion." (*Id.* at 17).

I agree with Plaintiff. The fact that Dr. Cooklev did not perform the tests himself does not make his opinions on the test results inherently unreliable. Dr. Cooklev's report and testimony at his deposition indicate that he planned the testing, visited the testing site, and provided some oversight for the testing. (D.I. 1476-5. Exh. U at 6-7 of 115; D.I. 1520-10, Exh. 10 at 42:2-51:25).[3] Defendant can use cross examination to probe Dr. Cooklev's knowledge of and

---

[3] In support of their arguments, both parties cite Dr. Cooklev's deposition testimony on the Family 6 patents. According to Defendant, because Dr. Cooklev's procedures for interacting with TracGlobal has been the same for each family of patents, it "did not spend much additional time at Dr. Cooklev's Family 4 deposition exploring the high-level procedures for Dr. Cooklev's

oversight of the tests. *See Daubert*, 509 U.S. at 596. For that reason, Defendant's motion to exclude Dr. Cooklev's testimony for being unreliable is denied.

## IV.    CONCLUSION

For the foregoing reasons, Defendant's motion to exclude Dr. Todor Cooklev's testimony for Family 4 (D.I. 1464) is denied. A separate order will be entered.

---

interactions with Tra[c]Global." (D.I. 1465 at 18 fn.1). I too cite Dr. Cooklev's Family 6 deposition testimony in this opinion.