IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

TQ DELTA, LLC,

                Plaintiff;

    v.

2WIRE, INC.,

                Defendant.

Civil Action No. 13-1835-RGA

## MEMORANDUM OPINION

Brian E. Farnan, Michael J. Farnan, FARNAN LLP, Wilmington, DE; Peter J. McAndrews, Paul W. McAndrews, Rajendra A. Chiplunkar, Ashley M. Ratycz, MCANDREWS, HELD & MALLOY, LTD., Chicago, IL,

Attorneys for Plaintiff.

Jody C. Barillare, MORGAN LEWIS & BOCKIUS LLP, Wilmington, DE; Brett Schuman, Rachel M. Walsh, GOODWIN PROCTER LLP, San Francisco, CA; Douglas J. Kline, GOODWIN PROCTER LLP, Boston, MA; Andrew S. Ong, GOODWIN PROCTER LLP, Redwood City, CA; Cindy Chang, GOODWIN PROCTER LLP, New York, NY,

Attorneys for Defendant.

July 28, 2021

**ANDREWS, U.S. DISTRICT JUDGE:**

Before the Court are two motions: Defendant's motion to strike portions of the Second Amended Madisetti Report for Family 4 (D.I. 1534), and Plaintiff's cross-motion to strike portions of the Cimini Rebuttal Report for Family 4. (D.I. 1544). I have considered the parties' briefing. (D.I. 1535, 1545, 1555, 1560).

## I.  BACKGROUND

Plaintiff TQ Delta filed suit against Defendant 2Wire alleging infringement of twenty-four patents that span six different patent families. (D.I. 6). The Court divided the case into separate trials based on the patent families. (D.I. 280). This motion concerns the Family 4 Patents, U.S. Patent Nos. 7,292,627 ("the '627 Patent"), 8,090,008 ("the '008 Patent"), and 8,073,041 ("the '041 Patent"). Plaintiff alleges infringement of Claim 26 of the '627 Patent, Claim 14 of the '008 Patent, and Claim 14 of the '041 Patent. The patents-at-issue are directed to a system and method for scrambling the phase characteristics of carrier signals.

Plaintiff served its final infringement contentions on July 2, 2018. Fact discovery ended on October 1, 2018. (D.I. 513 at 2). Opening expert reports were due on May 1, 2020. (D.I. 1315 at 1). A later Scheduling Order permitted supplementation of opening expert reports "relating to source code issues" through July 31, 2020. (D.I. 1321 at 1). The parties reserved their rights to seek further schedule modifications upon a showing of good cause. (*Id.* at 2). Plaintiff served its Second Amended Expert Report of Vijay Madisetti on July 31, 2020. (D.I. 1325). In this report, Dr. Madisetti, Plaintiff's expert, argued for the first time that the Accused Products meet the elements of the Asserted Claims under a doctrine of equivalents ("DOE") theory. (D.I. 1536-8, Exh. H at 108-09, 117 of 163).

## II.  LEGAL STANDARD

Under Federal Rule of Civil Procedure 37(c)(1), "If a party fails to provide information ... as required by Rule 26(a) or (e), the party is not allowed to use that information ... to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

Courts in the Third Circuit consider the *Pennypack* factors to determine whether a failure to disclose was harmless: "(1) the prejudice or surprise to the party against whom the evidence is offered; (2) the possibility of curing the prejudice; (3) the potential disruption of an orderly and efficient trial; (4) the presence of bad faith or willfulness in failing to disclose the evidence; and (5) the importance of the information withheld." *TQ Delta, LLC v. ADTRAN, Inc.*, 2019 WL 4346530, at *1 (D. Del. Sept. 12, 2019) (citing *Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710, 719 (3d Cir. 1997)). "[T]he exclusion of critical evidence is an 'extreme' sanction, not normally to be imposed absent a showing of willful deception or 'flagrant disregard' of a court order by the proponent of the evidence." *Konstantopoulos*, 112 F.3d at 719. The determination of whether to exclude evidence is within the discretion of the district court. *Id.*

## III.  ANALYSIS

### A.  Dr. Madisetti's Doctrine of Equivalents Opinions

Defendant moves to strike portions of the Second Amended Madisetti Report for Family 4 as that report identified a doctrine of equivalents infringement theory for the first time. (D.I. 1535 at 4). Defendant contends that this disclosure was not timely and violated the Court's scheduling order. (*Id.* at 5).

Defendant argues that the *Pennypack* factors weigh in favor of striking these doctrine of equivalents opinions. (*Id.* at 4). Defendant argues that (1) it is prejudiced by Plaintiff's failure to

3

raise a doctrine of equivalents infringement theory earlier because it was unable to conduct any discovery relating to it; (2) this prejudice is incurable as trial is approaching and a substantial amount of time and discovery are required to investigate this new theory; (3) the addition of this infringement theory would disrupt the order and efficiency of trial because it would cause further discovery and time delays; (4) Plaintiff acted willfully in not disclosing this theory as it was aware that such disclosures are necessary; and (5) this theory is unimportant to the case as Plaintiff maintains that the Accused Products literally infringe the Asserted Claims. (*Id.* at 7-9).

Plaintiff counters that Dr. Madisetti's doctrine of equivalents opinions were properly disclosed prior to the deadline for submission of opening expert reports. (D.I. 1545 at 4). Plaintiff maintains that there was an extended deadline that permitted supplementation of expert reports relating to source code and that Dr. Madisetti's report was submitted in accordance with that timeline. (*Id.* at 5). Plaintiff argues that the "only reason that Dr. Madisetti included his DOE opinions in his opening report was to preempt any new, additional non-infringement and/or claim construction arguments that 2Wire's expert might raise in his rebuttal report." (*Id.* at 11).

Plaintiff contends that the *Pennypack* factors weigh against exclusion of Dr. Madisetti's doctrine of equivalents opinions. (*Id.* at 12). Plaintiff argues that (1) Defendant has not suffered any undue prejudice or surprise because Dr. Madisetti's DOE opinions are limited in scope and Plaintiff has had years to pursue discovery of prior art and related defenses; (2) there is no prejudice to be cured as Defendant's expert had the opportunity to and did respond to Dr. Madisetti's DOE opinions; (3) the trial schedule will not be disrupted as Dr. Madisetti's DOE opinions are short and Plaintiff had the opportunity to depose Dr. Madisetti about the opinions; (4) Plaintiff did not act willfully or in bad faith; and (5) the DOE opinions are important as they relate to issues in the case. (*Id.* at 12-17).

I will first address whether Plaintiff's DOE opinions were disclosed in a timely manner. The Court's scheduling order permitted supplementation of opening expert reports "relating to source code issues" through July 31, 2020. (D.I. 1321 at 1). Plaintiff served the Second Amended Expert Report of Vijay Madisetti on this date. (D.I. 1325). While Plaintiff contends that this was a permissible supplementation of an expert report under the Scheduling Order, that is not the case. Supplementation of opening expert reports relating to source code issues was permitted through July 31, 2020, but that does not justify the introduction of a new infringement theory during that time frame. The belated introduction of a new infringement theory is "not a mere correction of information, but instead, creates a new ballgame." *Hochstein v. Microsoft Corp.*, 2009 WL 2498481, at *6 (E.D. Mich. Aug. 17, 2009).

Further, Plaintiff justifies the inclusion of the doctrine of equivalents infringement theory in Dr. Madisetti's Second Amended Opening Report by stating that it was intended to "preempt any new, additional non-infringement and/or claim construction arguments that 2Wire's expert might raise in his rebuttal report." (D.I. 1545 at 11). Plaintiff cites no cases in support of this theory. "Plaintiff cannot point to Defendant's later filings to justify the absence of a DOE theory in its own [filings]." *See TQ Delta, LLC v. ADTRAN, Inc.*, 2020 WL 4529865, at *2 (D. Del. July 31, 2020). Plaintiff should have disclosed its doctrine of equivalents theory earlier, and not in its opening expert report.

I now turn to the *Pennypack* factors to determine whether this untimely disclosure is harmless. I note that in "sophisticated, complex litigation involving parties represented by competent counsel," courts have "been less indulgent in applying the *Pennypack* factors and "more willing to exclude evidence without a strict showing that each of the *Pennypack* factors has been satisfied." *Bridgestone Sports Co. v. Acushnet Co.*, 2007 WL 521894, at *4 (D. Del.

Feb. 15, 2007). There is little doubt that this litigation, which has already spanned the better part of a decade, is "complex" and that the parties have been represented by "competent counsel."

The first *Pennypack* factor, prejudice or surprise to the party against whom the evidence is offered, favors exclusion. Defendant was unaware of Plaintiff's doctrine of equivalents theory until it received Dr. Madisetti's Second Amended Opening Report. Defendant did not know of this infringement theory during discovery and, therefore, was deprived of the opportunity to discover information pertaining to this theory and to prepare appropriate defenses.

The second and third factors weigh against exclusion. No trial is currently scheduled. Any prejudice Defendant suffered is curable or has already been cured. Plaintiff's doctrine of equivalents theory was raised in Dr. Madisetti's opening expert report. Defendant's expert had the opportunity to, and did, respond to Dr. Madisetti's doctrine of equivalents opinions in his own expert report. (D.I. 1546-2, Exh. 2 at 19, 45-47, 52 of 58). Further, as Dr. Madisetti's Second Amended Opening Report was filed on July 31, 2020 and his deposition was on October 20, 2020 (D.I. 1370), Defendant had the opportunity to depose Dr. Madisetti about these opinions. Dr. Cimini also was deposed after the submission of Dr. Madisetti's Second Amended Opening Report, so he too would have had the opportunity to opine on Plaintiff's doctrine of equivalents theories at his deposition. (D.I. 1368). Defendant had the opportunity to cure any prejudice that it faced in both its rebuttal expert report and in deposing Dr. Madisetti.

Further, Defendant's main argument that it suffered prejudice is that it "did not have the opportunity to search for and identify prior art or conduct other discovery regarding any defenses relevant to TQ Delta's new DOE theory, including, for example, an ensnarement defense." (D.I. 1535 at 7). During discovery, Defendant searched prior art, which forms the basis for their motion for summary judgment of invalidity. (*See* D.I. 1461). Therefore, it would not need

substantial time or discovery to prepare a defense for the doctrine of equivalents opinions, as it has already performed such discovery.

Additionally, "ensnarement, like prosecution history estoppel, is a legal limitation on the doctrine of equivalents to be decided by the court, not a jury." *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1322 (Fed. Cir. 2019). In that sense, as a legal issue, ensnarement could be framed in the expert reports and Defendant would have had the opportunity to do that after learning of Plaintiff's doctrine of equivalents theory. Therefore, any prejudice faced by Defendant was or is curable through expert reports and depositions.

For the fourth factor, whether there has been the presence of bad faith or willfulness in withholding information, I do not believe that Plaintiff acted in bad faith. However, Plaintiff knew that it had an obligation to disclose its doctrine of equivalent theories earlier, as it has done with the other families in this case. (*See* D.I. 1536-4, Exh. 9 at 5, 13, 16, 18 of 19 (examples of Plaintiff disclosing doctrine of equivalents theories in infringement contentions)); *see also TQ Delta*, 2020 WL 4529865, at *2. In that sense, Plaintiff acted willfully by not disclosing its doctrine of equivalents theory for the Family 4 Patents prior to its Second Amended Opening Expert Report. This factor is, at best for Plaintiff, neutral.

Lastly, the fifth factor weighs against exclusion. Dr. Madisetti's doctrine of equivalents opinions are important evidence in support of Plaintiff's infringement case. Beyond this, "the exclusion of critical evidence is an 'extreme' sanction," *Konstantopoulos*, 112 F.3d at 719, and I do not find it warranted in this situation. Any prejudice Defendant suffered can be or has been remedied and the doctrine of equivalents opinions are important to Plaintiff's infringement case. Therefore, Defendant's motion to strike is denied.

### B. Dr. Cimini's Rebuttal Report

Plaintiff filed a cross-motion to strike Dr. Cimini's response to Dr. Madisetti's doctrine of equivalents opinions, in the event that the Court excludes Dr. Madisetti's doctrine of equivalents opinions. (D.I. 1545 at 18). This motion is dismissed as moot as Dr. Madisetti's doctrine of equivalents opinions are not excluded.

## IV.   CONCLUSION

For the foregoing reasons, Defendant's motion to strike portions of the Second Amended Madisetti Report for Family 4 (D.I. 1534) is denied, and Plaintiff's cross-motion to strike portions of the Cimini Rebuttal Report for Family 4 (D.I. 1544) is dismissed as moot.

A separate order will be entered.